# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **YOUNG CONSERVATIVES OF TEXAS FOUNDATION** | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **CIVIL ACTION NO. 4:20-cv-00973** |
| **v.** | § | |
| | § | |
| **THE UNIVERSITY OF NORTH TEXAS, THE UNIVESITY OF NORTH TEXAS SYSTEM, NEAL SMATRESK, PRESIDENT OF THE UNIVERSITY OF NORTH TEXAS and SHANNON GOODMAN, VICE PRESIDENT FOR ENROLLMENT OF THE UNIVERSITY OF NORTH TEXAS,** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

---

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) and (6)

---

Defendants, the University of North Texas; the University of North Texas System; Neal Smatresk, President of the University of North Texas; and Shannon Goodman, Vice President for Enrollment of the University of North Texas (collectively "UNT"), move to dismiss the complaint of Plaintiff Young Conservatives of Texas Foundation ("YCTF")[1] for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1) and (6).

---

[1] Dkt. No. 2. Plaintiff filed this action in Texas state court, the 442nd District Court of Denton County, on November 16, 2020. The UNT Defendants timely removed this claim to this Court on December 23, 2020, within 30 days of service. Dkt. No. 1.

<div align="center">STATEMENT OF ISSUES TO BE DECIDED BY THE COURT</div>

Whether 8 U.S.C. § 1623 of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") confers a private right of action to Plaintiff YCTF, despite the fact that § 1003(a)(1) provides that the IIRIRA  may only be enforced by the Secretary of the Department of Homeland Security, and despite the fact that no court has found that a private right of action exists.

<div align="center">INTRODUCTION</div>

YCTF argues that 8 U.S.C. § 1623 preempts Texas statutes that govern the tuition rates the University of North Texas and other Texas public universities can charge residents of the State.[2] Other courts have considered YCTF's argument and rejected it on the ground that section 1623 does not support a private right of action. *E.g.*, *Day v. Bond*, 500 F.3d 1127, 1139 (10th Cir. 2007). Instead, the Secretary of the United States Department of Homeland Security has the sole right to bring suit under section 1623. *Id.*; *see* 8 U.S.C. § 1103(a)(1).

## I.      Background.

UNT provides the following overview of the relevant statutes to provide context and to assist the Court in its analysis.

### A.      YCTF challenges a section of the Texas Education Code that permits UNT to charge higher tuition to non-residents of Texas.

Like every other public higher education institution in Texas, Defendants charge two tuition levels—a lower resident rate and a higher non-resident rate. TEX. EDUC. CODE §§ 54.051(c), (d).

---

[2] The challenged statutes affect all public university systems and public universities in the State of Texas, including The University of Texas System, Texas A&M System, Texas Tech University System, University of Houston System, Texas State University System and their component campuses; and Texas Southern University, Texas Woman's University, Stephen F. Austin University and Midwestern State University.

The Texas Education Code defines three different ways in which any student may qualify for resident tuition: (1) for the student to establish a Texas domicile for one year before enrolling; (2) for the student's parents to establish a Texas domicile for one year before the student's enrolling; or (3) for the student to graduate from a Texas high school and continuously reside in Texas for three years before graduating high school and for one year before enrolling. *Id.* § 54.052(a). For any students who are not citizens or permanent residents of the United States, they must submit an affidavit stating that they will apply to become a permanent resident of the United States as soon as they become eligible to apply. *Id.* § 54.053(3)(B).

The stated purpose of these provisions was to clarify residency requirements "by tying them to the census residency regulations and eligibility for classification as a dependent based on federal income tax reports" and to "streamline the process for determining resident and non-resident tuition . . . throughout the state."  Author's/Sponsor's Statement of Intent, Tex. S.B. 1528, 79th Leg., R.S. (2005).[3]

**B.     YCTF alleges that section 51.051(d) of the Texas Education Code is preempted by 8 U.S.C. § 1623.**

YCTF is a "youth organization" that states it is "committed to advancing conservative values" to "shape public policy in Texas." Dkt. No. 2, ¶ 1. YCTF purports to state a cause of action challenging the state statute under 8 U.S.C. § 1623, a provision of the Illegal Immigration Reform and Immigrant Responsibility Act (the "IIRIRA"). *See* 8 U.S.C. § 1623. YCTF alleges that section 51.051(d) of the Texas Education Code is preempted by IIRIRA, which provides:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount,

---

[3] Available at: https://capitol.texas.gov/tlodocs/79R/analysis/pdf/SB01528F.pdf#navpanes=0.

duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).[4]

Specifically, YCTF asserts that Texas Education Code section 54.051(d), which provides that non-resident students may be required to pay higher tuition rates than resident students, is preempted by 8 U.S.C. § 1623. Dkt. No. 2 at ¶¶ 25–35, 38. YCTF seeks a declaratory judgment and permanent injunction based on § 54.051(d)'s alleged unconstitutionality, *id.*, claiming that "some" of its unidentified members "are United States citizens that are attending Texas public universities and being charged nonresident tuition because they do not qualify as resident students." *Id.* at ¶ 16.[5] YCTF contends that "[t]hese higher payments constitute injuries that are a direct result of Defendants' actions applying Section 54.051(d) . . . and would be redressed by this Court declaring that provision to violate the Supremacy clause of the United States Constitution and enjoining its further application." *Id.* at ¶ 18.[6]

Under its plain terms, however, IIRIRA does not provide a private right of action under 8 U.S.C. § 1623(a). Instead, Congress has given sole responsibility for enforcing immigration laws to the Secretary of Homeland Security:

> The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, the

---

[4] Section 51.051(d) mirrors very similar laws in other states. On their merits, similar laws have withstood preemption challenges based on 8 U.S.C. § 1623. *See, e.g.*, *Martinez v. Regents of Univ. of California*, 241 P.3d 855 (Cal. 2010).

[5] UNT denies that YCTF has organizational or associational standing to pursue this action, but that issue likely requires factual development that should be unnecessary, because no private right of action exists under 8 U.S.C. § 1623. UNT specifically reserves its right to challenge YCTF's standing on these additional grounds, after the facts are ascertained through discovery or otherwise.

[6] This allegation is baseless because YCTF fails to allege a causal connection between the Texas statute and its alleged injury. Regardless of the provisions of section 54.051(d) of the Texas Education Code, YCTF's alleged (and unidentified)  non-resident members are not entitled to resident tuition, and would not benefit from a declaration that section 54.051(d) is unconstitutional.

Secretary of State, the officers of the Department of State, or diplomatic or consular officers.

8 U.S.C. § 1103(a)(1). The Illegal *Immigration* Reform and *Immigrant* Responsibility Act (emphasis added), of which 8 U.S.C. § 1623 is part, does not explicitly give individuals a remedy to enforce immigration laws.

## II.     Argument and Authorities.

Because IIRIRA does not provide a private right of action, YCTF lacks standing to bring this lawsuit, and its complaint fails to state a claim on which relief can be granted. Therefore, this action must be dismissed under Rules 12(b)(1) and (6).

### A.     Governing legal principles.

To maintain federal jurisdiction, YCTF bears the burden of showing: (1) injury in fact, an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct that fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, so that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative. *Ne. Fla. Chapter of Assoc. Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 663 (1993). Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B.     YCTF's claims must be dismissed because 8 U.S.C. § 1623 does not create a private right of action.

By seeking to invalidate Section 54.051(d), it appears YCTF positions itself as a private attorney general on a mission to enforce federal immigration laws. But a judicially-developed

doctrine bars YCTF from pursuing its claims. This doctrine requires a party seeking to enforce federal laws to establish Congress' intent to grant it the status of a plaintiff holding a private right of action. *See Day v. Bond*, 500 F.3d 1127, 1139–40 (10th Cir. 2007) (holding there is no private right of action under IIRIRA). Thus, a party must first establish it has a private right of action before it can pursue claims to enforce federal law.

### 1.      YCTF fails to identify an express or implied right of action to state a claim.

The United States Supreme Court has established the requirements for a private party to bring a lawsuit grounded on federal statutes. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (holding that plaintiff had no private right of action to enforce disparate impact discrimination regulations) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979) (holding that remedies available are only those that Congress enacted into law)). The Supreme Court has explained:

> The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Alexander*, 532 U.S. at 286–87 (citations and quotations omitted).

The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person. *Touche*, 442 U.S. at 568. The dispositive question remains whether Congress *intended* to create any such remedy. *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 24 (1979). The question of whether a statute creates a cause of action, either expressly or by implication, is a matter of statutory construction to determine whether Congress intended to create the private remedy asserted. *Id.* at

15 (citing *Touche*, 442 U.S. at 568, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979), and *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974)).

As the Supreme Court explained in *Gonzaga University v. Doe*, "discerning whether personal rights exist in the implied right of action context . . . . simply require[s] a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries." 536 U.S. 273, 285–286 (2002) (citations omitted). To meet this test, YCTF must show "an unambiguously conferred right," because "it is rights, not the broader or vaguer 'benefits' or 'interests'" that can be enforced. *Gonzaga*, 536 U.S. at 283 (finding Federal Education Rights and Privacy Act created no private right of action). "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefitted.'" *Id.* at 284 (quoting *Cannon*, 441 U.S. at 692, n. 13). "But even where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Id.* (quoting *Alexander*, 532 U.S. at 286). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit." *Id.* at 286.

No indication exists that Congress intended to confer on YCTF a direct cause of action to enforce the nation's immigration laws. While 8 U.S.C. Section 1623(a) mandates states to treat similarly-situated citizens and aliens alike, "the question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." *California v. Sierra Club*, 451 U.S. 287, 294 (1981). For example, in *Alexander v. Sandoval*, the Court ruled that Congress had to expressly authorize a private right of action to enforce an anti-discrimination regulation promulgated under 42 U.S.C. § 2000(d) (Title VI) in the underlying statute—even when the regulation created a private right of action. 532 U.S. 275, 279 (2001).

## 2.    YCTF cannot establish a private right of action under the IIRIRA.

YCTF bases its claim for relief on IIRIRA. Congress, however, has not expressly granted individuals a right to enforce its federal immigration laws, the enforcement of which are historically entrusted to the U.S. Attorney General and, in section 1623's case, explicitly assigned to the Secretary of Homeland Security.  8 U.S.C. § 1103(a)(1).  This express provision mandating the federal government's enforcement of the statute "suggests that Congress intended to preclude others." *See Alexander*, 532 U.S. at 290.

Section 1623 also does not contain any rights-creating language to YCTF (or others); its focus is aliens, not citizens. The alien is the person who Section 1623 "regulates." *See* 8 U.S.C. § 1623(a) ("[A]n *alien* who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit . . . .") (emphasis added). "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of person.'" *Alexander*, 532 U.S. at 289 (quoting *Sierra Club*, 451 U.S. at 294). Section 1623's plain text concerns the regulation of "aliens," not unidentified out-of-state college students or "youth organizations." Because Section 1623's text and structure fails to create either a right or remedy for YCTF, it has no private right of action, and its claims should be dismissed.

Every jurisdiction faced with the question of whether Section 1623 creates a private right of action has explicitly held it does not. In *Day v. Bond*, the Tenth Circuit considered whether Section 1623 granted out-of-state students and their parents a private right of action to challenge a Kansas statute. 500 F.3d at 1139. Like the Texas statute at issue here, the Kansas statute provided in-state tuition to certain aliens who had completed three years of high school in the State of Kansas, while it denied in-state tuition to out-of-state students. As the Tenth Circuit explained:

> The statute at issue in this case, 8 U.S.C. § 1623, has significant aspects of text and structure that foreclose the Plaintiffs' argument that it vests in them private rights. Its text "entirely lack[s] the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights." *Gonzaga Univ.*, 536 U.S. at 287. Section 1623 does not provide that "No nonresident citizen shall be denied a benefit" afforded to an illegal alien, but rather imposes a limit on the authority of postsecondary educational institutions. *Cf. id.* (quoting the rights-creating language of Titles VI and IX).

*Id*. at 1139. The district court in *Day* thus concluded: "[T]he focus of § 1623 is illegal aliens, not citizens. This focus on aliens, rather than plaintiffs or citizens in general, 'creates no implication of an intent to confer rights on [the plaintiffs].'" *Day v. Sebelius*, 376 F. Supp. 2d 1022, 1036–37 (D. Kan. 2005), *aff'd sub nom.*, *Day v. Bond*, 500 F.3d 1127 (10th Cir. 2007) (quoting *Alexander*, 532 U.S. at 290). Accordingly, the court held that the claim that the Kansas statute violates § 1623 "must be dismissed . . . because 8 U.S.C. § 1623 does not create a private right of action." *Id.*

Similarly, an Arizona appeals court analyzing the same issue also dismissed the plaintiff's complaint, noting: "Section 1623 never mentions, much less creates and confers, any enforceable private right for individual, non-resident students. The Tenth Circuit captured the point in *Day v. Bond*, when it explained: "Section 1623 does not provide that 'No nonresident citizen shall be denied a benefit' afforded to an illegal alien, but rather imposes a limit on the authority of postsecondary educational institutions.'" *Foss v. Arizona Bd. of Regents*, 1 CA-CV 18-0781, 2019 WL 5801690, at *3 (Ariz. Ct. App. Nov. 7, 2019) (quoting *Day*, 500 F.3d at 1139).

Here, as in *Day* and *Foss*, "it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action" in Section 1623. *See Transamerica*, 444 U.S. at 20 (quoting *Cannon*, 441 U.S. at 742) (Powell, J. dissenting)). As such, all claims YCTF asserts in its Petition must be dismissed.

Section 1623 is enforced by the federal government and creates no rights in YCTF, which owns no legal right under § 1623 to assert preemption. Thus, YCTF's claim of such an individual

legal right under § 1623 to support standing is legally invalid and the organization lacks standing to assert a preemption claim based on such a supposed individual right. Because YCTF lacks standing to bring its claims, this Court lacks subject-matter jurisdiction to hear them. *Day*, 500 F.3d at 1140; *see also Ne. Fla. Chapter of Associated Gen. Contractors*, 508 U.S at 663 (quoting *Lujan*, 504 U.S. at 560). Furthermore, because YCTF has no right to enforce this statute, it has failed to state a claim. *See Touche*, 442 U.S. at 566.

## CONCLUSION AND PRAYER

YCTF cannot use preemption claims by way of 8 U.S.C § 1623 to challenge Texas Education Code § 51.051(d) because Section 1623 does not grant YCTF a private right of action. Thus, YCTF's claims premised on its preemption theory, including preemption, declaratory judgment, and request for injunction, should be dismissed under Rules 12(b)(1) and (6).

Defendants respectfully pray for all relief to which they are justly entitled.

Date: January 12, 2021

<div style="margin-left: 40%;">

Respectfully submitted,

By: */s/ Andy Taylor*
Andy Taylor
**ANDY TAYLOR & ASSOCIATES, P.C.**
Designated Lead Counsel
State Bar No. 19727600
ataylor@andytaylorlaw.com
2628 Highway 36 South #288
Brenham, Texas 77833
(713) 222-1817 – telephone
(713) 222-1855 – facsimile

-and-

**HUSCH BLACKWELL LLP**

By: */s/ Sandy Hellums-Gomez*
Sandy Hellums-Gomez
State Bar No. 2403670
Sandy.Gomez@HuschBlackwell.com

</div>

Jeff Nobles
State Bar No. 15053050
Jeff.Nobles@HuschBlackwell.com
600 Travis Street, Suite 2350
Houston, Texas 77002
(713) 647-6800 – main telephone
(713) 647-6884 – general facsimile

-and-

Scott Schneider
State Bar No. 24054023
Scott.Schneider@HuschBlackwell.com
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456 – main telephone
(512) 479-1101 – general facsimile

**ATTORNEYS FOR THE DEFENDANTS UNIVERSITY OF NORTH TEXAS, THE UNIVERSITY OF NORTH TEXAS SYSTEM, NEAL SMATRESK, PRESIDENT OF THE UNIVERSITY OF NORTH TEXAS, AND SHANNON GOODMAN, VICE PRESIDENT FOR ENROLLMENT OF THE UNIVERSITY OF NORTH TEXAS**

## CERTIFICATE OF SERVICE

I certify that a copy of this motion has been served upon the following on this the 12th day of January, 2021:

Robert Henneke
rhenneke@texaspolicy.com
Chance Weldon
cweldon@texaspolicy.com
Joseph Aaron Barnes, Sr.
abarnes@texaspolicy.com
Texas Public Policy Foundation
901 Congress Avenue
Austin, Texas 78701
***Attorneys for Plaintiff***

By: */s/ Sandy Hellums-Gomez*
    Sandy Hellums-Gomez