IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| YOUNG CONSERVATIVES OF TEXAS FOUNDATION<br>*Plaintiff*,<br><br>v.<br><br>THE UNIVERSITY OF NORTH TEXAS, THE UNIVERSITY OF NORTH TEXAS SYSTEM, NEAL SMATRESK, PRESIDENT OF THE UNIVERSITY OF NORTH TEXAS and SHANNON GOODMAN, VICE PRESIDENT FOR ENROLLMENT OF THE UNIVERSITY OF NORTH TEXAS;<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:20-CV-973<br><br>JUDGE SEAN D. JORDAN |

**PLAINTIFF'S MOTION TO REMAND AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

TO THE HONORABLE SEAN D. JORDAN:

Plaintiff Young Conservatives of Texas Foundation ("Plaintiff" or "YCT") responds in opposition to Defendants' Motion to Dismiss, *see* Dkt. 7, and seeks to remand this action to state court. Plaintiff indisputably possesses a valid cause of action in state court, which Defendants' motion fails to even address. Instead, Defendants' argument for dismissal is based solely on attacking a cause of action that Plaintiff has not relied upon in any way. Because the proper forum for Plaintiff's cause of action lies in state court, dismissal would be inappropriate. Furthermore, given that this Court lacks original jurisdiction and should decline to exercise supplemental jurisdiction, remanding this case to a state court that does have jurisdiction presents a far superior alternative to outright dismissal.

Contrary to Defendants' assertions, this case is based entirely on a single, straightforward question of the construction and validity of a state law. Plaintiff originally brought suit in Texas

state district court under the Texas Uniform Declaratory Judgment Act ("UDJA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001 et seq., which provides a stand-alone cause of action to construe the constitutionality of state statutes. Upon information and belief, Defendants' response amounts to little more than lobbing the first volley in a game of "gotcha," as it appears that they removed to federal court for the sole purpose of converting a viable state declaratory judgment action into a potentially ill-fated claim under the federal Declaratory Judgment Act ("DJA"). The next step is likely to come in reply to this Response, with Defendants then likely arguing in their reply to seek dismissal on the grounds that the federal DJA provides no independent cause of action. This Court should reject any such attempt to circumvent the clearly expressed will of the Texas Legislature and to deny Plaintiff the valid cause of action to which it is entitled.

## RESPONSE TO DEFENDANTS' STATEMENT OF ISSUES

1.  While 8 U.S.C. § 1623 confers no private right of action, the Texas statutory cause of action through which Plaintiff brought this suit—the state's Uniform Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001 et seq.—provides an independent cause of action in state court for a person to "have determined any question of construction or validity" of a state statute. *See* Tex. Civ. Prac. & Rem. Code § 37.004.

## STANDARD OF REVIEW

Defendants brought their Motion to Dismiss under both Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6). Dkt. 7, pp. 1, 5, 10. However, Defendants' basis for invoking 12 (b)(1) is, at best, unclear, especially when read in conjunction with their Notice of Removal. While Rule 12(b)(1) pertains to a "lack of subject-matter jurisdiction," Defendants affirmatively argued elsewhere that this Court possesses both original and supplemental jurisdiction. Dkt. 1, ¶¶ 5-6.

And Defendants' Motion to Dismiss offers no clarification, as it fails to make any explicit argument as to why this Court would lack subject matter jurisdiction in this case.[1]

The sole basis of Defendants' motion is that Plaintiff has allegedly failed to state a cause of action. However, "the absence of a valid (as opposed to arguable) cause of action ***does not implicate subject-matter jurisdiction***." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis added). Thus, "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Id.* at 118 n. 7 (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)); *Bond v. United States*, 131 S. Ct. 2355, 2362 (2011) ("the question [of] whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute.") Accordingly, Defendants' motion is better construed as alleging a "failure to state a claim" under Fed. R. Civ. P. 12(b)(6) and will be addressed under that standard.

To prevail on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff need only present sufficient, facially plausible facts to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. In construing the complaint, the court must "accept[] as true all well-pleaded factual allegations and draw[] all

---

[1] Defendants briefly broach the topics of organizational and associational standing in one footnote and then traceability and redressability in another, Dkt. 7, p. 4 n. 5 & 6, but then fail to develop any argument on those aspects of constitutional standing in the remainder of their Motion to Dismiss. In fact, with regard to constitutional standing, the only thing included within the body of Defendants' motion is a rote recitation of the *Lujan* factors, Dkt. 7, p. 5, followed by a lengthy discussion of Plaintiff's supposed lack of a private right of action that is irrelevant to determining jurisdiction, Dkt. 7, pp. 5-9, and then finally two conclusory sentences that Plaintiff "lacks standing to bring its claims," which Defendants conclude means that "this Court lacks subject-matter jurisdiction to hear them," Dkt. 7, p. 10.

reasonable inferences in plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

While a civil case brought in state court may be removed to federal district if the case could have been brought there originally, 28 U.S.C. § 1441, "the case shall be remanded" if the federal court lacks jurisdiction, § 1447(c). When faced with a motion to remand, the removing party "bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). Thus, "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Vantage Drilling Co. v. Su*, 741 F.3d 535, 537 (5th Cir. 2014) (internal quotation marks omitted). This includes both "[c]onstruing the jurisdictional statutes narrowly in favor of remand and resolving any ambiguity in fact or state law in favor of remand." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 795 (5th Cir. 2014). In most circumstances, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." *See* 28 U.S.C. § 1447(d).

## ARGUMENT AND AUTHORITIES

**I. DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF POSSESSES A VALID CAUSE OF ACTION UNDER THE TEXAS UDJA.**

Plaintiff brought suit in state court to construe the validity of applying Section 54.051(d) of the Texas Education Code to United States citizens that do not qualify as Texas residents. In doing so, Plaintiff relied upon the Texas UDJA, which unequivocally provides a cause of action:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise ***may have determined any question of construction or validity*** arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

4

Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (emphasis added). The instant case clearly falls well within the parameters of this statutory cause of action. Specifically, Plaintiff is "a person"[2] whose "legal relations are affected" by Defendants' application of Section 54.051(d),[3] and thus Plaintiff is entitled to have the "construction or validity" of that state statute decided and to "obtain a declaration" of its "status" or "other legal relations thereunder."

The UDJA's provision of an independent cause of action is not only obvious on the face of the statute but has also been recognized by state courts throughout Texas, including the state's Supreme Court. *See, e.g.*, *In re Hous. Specialty Ins. Co.*, 569 S.W.3d 138, 139 (Tex. 2019) (characterizing the "sole cause of action" pled by plaintiff as "a request for declaratory relief under the Uniform Declaratory Judgments Act"); *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 911 n.3 (Tex. 2017) (stating that "[o]ne of [the claimant's] causes of action [was] brought under the Texas Declaratory Judgments Act"); *Thomas v. Long*, 207 S.W.3d 334, 337 (Tex. 2006) (referring to declaratory judgment as one of a party's "causes of action"); *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 842 (Tex. 1990) (holding that the defendant stated a "cause of action" via its

---

[2]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.001 (including in the definition of "person" a "corporation of any character").

[3]  Further, Defendants' statement that "Section 51.051(d) mirrors laws in other states" that "[o]n their merits . . . have withstood preemption challenges based on 8 U.S.C. § 1623" is inaccurate. *See* Dkt. 7, p. 4 n. 4. Defendants sole support for that proposition is a citation to *Martinez v. Regents of Univ. of California*, 241 P.3d 855 (Cal. 2010). However, that court's decision focused on whether California had extended postsecondary education benefits "on the basis of residence within a State," finding that the state statute's "exemption from paying out-of-state tuition [was not] based on residence." *Id.* at 863. In other words, California's statute did not classify anyone as a "resident," but instead exempted nonresidents that met certain statutory criteria—including illegal immigrants—from the general requirement to pay nonresident tuition. *Id.* at 859. Thus, even after the state statute's enactment, it was still the law of California that "unlawful aliens cannot be deemed California residents for purposes of paying resident tuition." *Id.* at 863. By contrast, Section 54.052 of the Texas Education Code is explicitly titled "Determination of Resident Status," and it forthrightly states that "the following persons are considered residents of this state for purposes of this title."

UDJA counterclaim); *Hunt v. City of Diboll*, 574 S.W.3d 406, 426-27 (Tex. App.—Tyler 2017) (referring to "an action under the UDJA for interpretation of a statute" as a "statutory cause of action"); *Cont'l Homes of Tex., L.P. v. City of San Antonio*, 275 S.W.3d 9, 21 (Tex. App.—San Antonio 2008) (holding that defendant's "declaratory judgment counterclaim [was] an independent cause of action for affirmative relief"); *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 700-02 (Tex. App.—Houston [1st Dist.] 2007) (holding that defendants' counterclaim under the UDJA "stated a cause of action on which they could recover benefits, compensation, or relief"); *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 88, 91 (Tex. App.—Austin 2004) (holding that "suits under the UDJA are not limited to cases where the parties have a cause of action separate and apart from the UDJA" as well as that appellees had "a cause of action under the UDJA").

Tellingly, in the only other lawsuit to be brought in Texas state court that alleged preemption of a state statute by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), the Fourteenth Court of Appeals implicitly recognized that the UDJA did in fact provide a cause of action. In *Lone Star College System v. Immigration Reform Coalition of Texas* ("IRCOT"), the plaintiff was "seek[ing] declarations and injunctive relief under the Uniform Declaratory Judgments Act (UDJA)." 418 S.W.3d 263, 267 (Tex. App.—Houston [14th Dist.] 2013). In that decision, the court denied a plea to the jurisdiction by defendants that was "based on the proposition that the federal statutes, which [plaintiff] alleges have preemptive effect, do not provide for a private right of action." *Id*. at 275. In fact, that determination was so clear that the court felt the "need [to] touch on [defendants' argument] only briefly" by pointing out that the suit was not brought "under the federal provisions," but instead presented "state law claims." *Id*. That is precisely the same circumstance as the instant case.

6

However, Defendants fail to even mention the UDJA in their Motion to Dismiss. Instead, they spend the majority of their motion setting fire to a strawman and dancing about the flames. Indeed, Defendants' entire basis to move for dismissal is that Plaintiff brought suit under 8 U.S.C. § 1623 of IIRIRA, which does not provide a private right of action. *See* Dkt. 7, p. 2 (citing *Day v. Bond*, 500 F.3d 1127, 1139 (10th Cir. 2007), for the proposition that "section 1623 does not support a private right of action"); p. 3 ("YCTF purports to state a cause of action challenging the state statute under 8 U.S.C. § 1623"); p. 4 ("IIRIRA does not provide a private right of action under 8 U.S.C. § 1623(a)"); p. 5 ("YCTF positions itself as a private attorney general on a mission to enforce federal immigration laws"); p. 6 ("YCTF fails to identify an express or implied right of action to state a claim."); p. 7 ("No indication exists that Congress intended to confer on YCTF a direct cause of action to enforce the nation's immigration laws."); p. 8 ("YCTF bases its claim for relief on IIRIRA.").

Defendants' repetition of its mistaken argument at least presents Plaintiff with the opportunity to respond succinctly: Plaintiff does not seek to enforce federal immigration law, which is why Plaintiff did not sue under Section 1623 of IIRIRA. As explained above, Plaintiff instead invoked the independent cause of action provided by the Texas UDJA. Needless to say, arguing against a legal theory never actually advanced by Plaintiff is insufficient to support dismissal.

Although not raised in their Motion to Dismiss, Plaintiff suspects that Defendants' real motivation for seeking removal is to argue in their forthcoming reply to this Response that the state's UDJA cannot provide a valid cause of action in federal court, regardless of its application in state court. Precedent on that point is mixed. The Fifth Circuit has applied the state's UDJA in some cases. *See Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 158 (5th Cir. 2007) (stating that while

7

the "case was brought initially in Dallas county state court pursuant to the Texas Declaratory Judgment Act," the defendants had "timely removed the case to federal district court"); *id*. at 158 n.11 (discussing the state UDJA's waiver of immunity). In fact, in at least one instance the Texas UDJA has supplied the sole cause of action for a suit arguing federal preemption. *See Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006) (describing procedural history where the plaintiffs had "sought relief under the Texas Declaratory Judgment Act," the defendants then successfully "removed to federal court, asserting federal question jurisdiction," and the federal court eventually "invalidated the [Texas Workforce Commission] rules at issue, holding that they were contrary to the plain meaning of the Medicaid statute").

However, conflicting Fifth Circuit authority holds that when a plaintiff's "complaint seeks declaratory relief pursuant to the Texas Declaratory Judgment Act, the removal to federal court causes the claim to be viewed as brought under the [federal] Declaratory Judgment Act." *Edionwe v. Bailey*, 860 F.3d 287, 294 n.2 (5th Cir. 2017) (internal quotation marks omitted). And unlike the Texas UDJA, the federal DJA does not create an independent cause of action. *See Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001) ("[T]he law makes clear that—although the [federal] Declaratory Judgment Act provides a remedy different from an injunction—it does not provide an additional cause of action with respect to the underlying claim."). However, such conflicting authority and lack of clarity does not warrant dismissal of this case. Instead, as explained below, this Court should remand the case back to the state district court where it originated.

**II.  REMAND IS PROPER BECAUSE THIS COURT LACKS JURISDICTION OVER THE SINGLE STATE LAW CLAIM PRESENT IN THIS CASE.**

In their Motion to Dismiss, Defendants proclaim that "this Court lacks subject-matter jurisdiction to hear" Plaintiff's claims. Dkt. 7, p. 10. Plaintiff agrees with that conclusion, although

8

for much different reasons than those asserted by Defendants. In particular, Plaintiff disputes Defendants' unsupported assertions that this Court possesses "original jurisdiction over Plaintiff's claims arising under the IIRIRA pursuant to 28 U.S.C. § 1331," Dkt. 1, ¶ 5, as well as "supplemental jurisdiction over [Plaintiff's] state law claims under 28 U.S.C. § 1367," Dkt. 1, ¶ 6. However, Plaintiff's single state law claim does not "arise under" federal law, nor is supplemental jurisdiction even relevant in a case that does not feature multiple claims. And even if this Court were to treat Plaintiff's suit as raising more than one claim, it should exercise its discretion to decline to exercise supplemental jurisdiction in this case. In either instance, the proper course for this Court to take would be to remand the case to state district court.

First, this Court does not possess original jurisdiction to hear this case. "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). As a result, in most circumstances, "a district court has no business deciding issues of state law." *See Hagans v. Lavine*, 415 U.S. 528, 552 (1974). Federal court jurisdiction is limited not only by the Constitution, but by statute as well. As relevant here, Section 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. However, while "Section 1331 executes Article III, § 2, of the Constitution, which grants the federal courts the power to hear cases 'arising under' the Constitution and federal statutes," the phrase "arising under" "does not have the same meaning in these different contexts." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). Indeed, the phrase's meaning in Section 1331 is "more limited" than its use in the constitutional context. *Id*. While the constitutional test provides that "the case arises under federal law whenever a federal question is an 'ingredient' of the cause of action," *id*., "the mere presence of a federal issue in a

9

state cause of action does not automatically confer federal-question jurisdiction" under Section 1331," *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).

Under Section 1331, a case "arises under" federal law in one of two ways. The first and most direct situation is "when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). However, despite Defendants' repeated arguments to the contrary, Plaintiff here did not rely on any federal cause of action, instead utilizing the state cause of action provided by the UDJA to bring suit in state court. Thus, this case does not implicate the "arising under" category that "accounts for the vast bulk of suits that arise under federal law." *See id*.

However, there is also a "less frequently encountered[] variety of federal 'arising under' jurisdiction . . . over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This second variety constitutes a "special and small category" of cases that a district court may only decide if the federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Whatever the application of the first three elements to the instant case, the fourth element certainly counsels against the establishment of original jurisdiction in this case. In Congress's passage of Section 1623 of IIRIRA, there is simply no reason to suppose that it meant to eliminate a <u>state</u> cause of action to sue <u>state</u> entities in <u>state</u> court for a declaration regarding the validity of a <u>state</u> law.

Defendants have also invoked this Court's supplemental jurisdiction. *See* Dkt. 1, ¶ 6. However, this case has always involved only a single state law claim, and thus supplemental jurisdiction does not apply. *See* 28 U.S.C. § 1367(a) (limiting a district court's supplemental jurisdiction to "all *other* claims that are . . . related to claims in the action within [the court's]

10

*original jurisdiction*" (emphasis added)). Furthermore, even if this Court were inclined to somehow treat Plaintiff's suit as raising more than one claim, it should exercise its discretion to decline to exercise its supplemental jurisdiction.

While subsection (a) of the federal supplemental jurisdiction statute gives federal district courts the power to hear some state law claims, courts retain the discretion to decline to exercise that power under Section 1367(c). *See Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742 (11th Cir. 2006) (recognizing the "dichotomy between a district court's power to exercise supplemental jurisdiction, § 1367(a), and its discretion not to exercise such jurisdiction, § 1367(c)"). Section 1367(c) lays out four instances in which the district court may decline to exercise supplemental jurisdiction, the most relevant of which is "in exceptional circumstances, [when] there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).[4] This case clearly falls within that "catchall" provision for declining supplemental jurisdiction. *See Wolinsky v. Oak Tree Imaging, LP*, 362 B.R. 770, 780-81 (S.D. Tex. 2007) (quoting *Exec. Software N. Am. v. United States Dist. Court*, 24 F.3d 1545, 1558 (9th Cir. 1994)). In applying this provision, the factors that courts must balance are "economy, convenience, fairness, and comity." *Lindsay v. Gov't Emples. Ins. Co.*, 448 F.3d 416, 425 (D.C. Cir. 2006); *see also Wolinsky v. Oak Tree Imaging, LP*, 362 B.R. 770, 781 (S.D. Tex. 2007). Each of those factors weighs in favor of recognition that this case presents circumstances exceptional enough to decline supplemental jurisdiction.

---

[4] However, this is not to foreclose the application of the first reason for declining to exercise supplemental jurisdiction. To the extent that Defendants are likely to argue that the state UDJA does not provide an independent cause of action, such an issue would constitute "a novel or complex issue of State law," particularly if this Court finds that it is foreclosed by precedent from applying the state's UDJA. *See* 28 U.S.C. § 1367(c)(1).

First, this case's sole issue is best—and perhaps only—addressed in state court. If this Court found itself bound to apply the federal DJA, exercising supplemental jurisdiction in this case would only save judicial resources in the sense that dismissal would be the only remaining action for it to take. However, such as cynical interpretation of "judicial economy" should not be countenanced by this Court. Further, this is not a circumstance "where substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *Cf. Graf v. Elgin, Joliet and Eastern Ry. Co.*, 790 F.2d 1341, 1347-48 (7th Cir. 1986); *see also Mendoza v. United States*, 481 F. Supp. 2d 643, 648 (W.D. Tex. 2006). Indeed, this case has been in federal court for less than 30 days, and in that time the only actions taken by either party are Plaintiff's summary judgment motion (which had already been filed in state court prior to removal), Defendants' motion to dismiss, and this response and motion for remand. At this early stage, the issue of judicial economy favors remand.

Second, while neither forum is particularly inconvenient for the parties at this stage of litigation, having the case decided in the city and county where both Plaintiff and Defendants are located is more convenient than forcing the parties to travel across the metroplex. Further, should this matter be appealed, the relative locations of the relevant appellate courts—Fort Worth as opposed to New Orleans—certainly counsel in favor of litigating the matter in state court.

However, the third factor of "fairness" is by far the most relevant to the instant case. If this Court finds that no valid cause of action exists in federal court, retaining jurisdiction over the case would be inherently unfair to Plaintiff. The choice under such a finding would not be between a decision on the merits in one court and a decision on the merits in another. Instead, the only options would be judicial resolution of the merits versus dismissal predicated on Defendants cleverly gaming the system. Justice clearly militates in favor of the former.

Fourth, comity also favors remand in this case. The Supreme Court has defined "comity" as "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris*, 401 U.S. 37, 44 (1971). And the quintessential example of what constitutes a "conflict with the principle of comity to States" is a federal court decision that results in "the foreclosure of the state-law claims." *Randolph v. Oxmoor House, Inc.*, No. SA-01-CA-699-FB, 2002 U.S. Dist. LEXIS 26286, at *42-43 (W.D. Tex. 2002) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 352 (1988)). This is because "[t]he preclusion of valid state-law claims initially brought . . . in state court undermines the State's interest in enforcing its law" and "thus provides a potent reason for giving federal district courts discretion to remand." *Id*. Indeed, in a case where "the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns." *See Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). And where such federalism concerns are raised, "the removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." *Valencia v. Allstate Tex. Lloyd's*, 976 F.3d 593, 595 (5th Cir. 2020). Accordingly, whether this Court finds that it lacks original jurisdiction or declines to exercise its supplemental jurisdiction pursuant to the factors above, this case should be remanded to the state district court from whence it came.

## PRAYER AND CONCLUSION

Plaintiff respectfully requests that this Court both deny Defendants' motion and grant Plaintiff's request for a remand to state court. Defendants' motion to dismiss should be denied in its entirety because, notwithstanding their misidentification of Plaintiff's cause of action, a valid

cause of action unquestionably exists in Texas state court. Furthermore, Defendants should not be allowed to defeat the clear intent of the Texas Legislature, as expressed through the state's UDJA, by first removing a valid state law claim to federal court, and then arguing that the case is no longer valid because it is in the very court that they have chosen. Such legal gamesmanship has no place in this or any other court. Rather than dismissal, this Court should remand the case to state court, both because it does not "arise under" federal law and because any exercise of supplemental jurisdiction would be improper. Finally, in the event this Court denies both Plaintiff's motion to remand and Defendants' motion to dismiss, Plaintiff again urges this Court to grant its summary judgment motion. Dkt. 6.

Respectfully submitted,

*/s/Robert Henneke*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
JOSEPH AARON BARNES, SR.
Texas Bar No. 24099014
abarnes@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:    (512) 472-2728

*Attorneys for Plaintiff*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h) and (i), I certify that I have conferred via email with Sandy Gomez, attorney for Defendants and on January 22, 2021, she stated that Defendants are opposed to this motion.

*/s/Robert Henneke*
ROBERT HENNEKE

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on January 22, 2021 with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Robert Henneke*
ROBERT HENNEKE