**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| YOUNG CONSERVATIVES OF TEXAS FOUNDATION | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-973 |
| | § | |
| THE UNIVERSITY OF NORTH TEXAS, THE UNIVERSITY OF NORTH TEXAS SYSTEM, NEAL SMATRESK, PRESIDENT OF THE UNIVERSITY OF NORTH TEXAS and SHANNON GOODMAN, VICE PRESIDENT FOR ENROLLMENT OF THE UNIVERSITY OF NORTH TEXAS; | § | JUDGE SEAN D. JORDAN |
| *Defendants*. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

RESPONSE TO DEFENDANTS' STATEMENT OF ISSUES ...................................................1

EXECUTIVE SUMMARY .........................................................................................................2

FACTS ........................................................................................................................................3

STANDARD OF REVIEW .........................................................................................................5

ARGUMENT AND AUTHORITIES ..........................................................................................6

I.      THIS COURT HAS JURISDICTION TO HEAR YCT'S EQUITABLE
        CLAIMS PURSUANT TO *EX PARTE YOUNG*..............................................................6

II.     8 U.S.C. § 1103 DOES NOT EXPRESSLY REMOVE THIS COURT'S
        EQUITABLE JURISDICTION ........................................................................................8

III.    UNT MAY NOT USE REMOVAL TO FEDERAL COURT AS A CLEVER
        TOOL TO RENDER ITS UNLAWFUL ACTIONS UNREVIEWABLE ........................14

CONCLUSION..........................................................................................................................16

CERTIFICATE OF SERVICE ..................................................................................................17

# TABLE OF AUTHORITIES

**Cases:**                                                                                      **Page(s):**

*Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*,
    851 F.3d 507 (5th Cir. 2017) ........................................................................7, 8

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015).................................................................6, 9, 11, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................5

*Bell v. Hood*,
    327 U.S. 678 (1946)........................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................5

*Bond v. United States*,
    131 S.Ct. 2355 (2011)........................................................................5

*Brecht v. Abrahamson*,
    507 U.S. 619 (1993)........................................................................13

*Campbell v. Hussey*,
    368 U.S. 297 (1961)........................................................................9

*City of Beaumont v. Bouillion*,
    896 S.W.2d 143 (Tex. 1995)........................................................................4

*City of El Paso v. Heinrich*,
    284 S.W.3d 366 (Tex. 2009)........................................................................1, 4

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000)........................................................................7

*Day v. Bond*,
    500 F.3d 1127 (10th Cir. 2007) ........................................................................12, 13

*De La Paz v. Coy*,
    786 F.3d 367 (5th Cir. 2015) ........................................................................13

*Ex parte Young*,
    209 U.S. 123 (1908)................................................................................1, 6, 10, 11

*FCC v. Fox TV Stations, Inc.*,
    567 U.S. 239 (2012)................................................................................16

*Foss v. Ariz. Bd. of Regents*,
    No. 1 CA-CV 18-0781, 2019 Ariz. App. Unpub. LEXIS 1228
    (Ct. App. Nov. 7, 2019) ........................................................................12, 13

*Foster v. Love*,
    522 U.S. 67 (1997)................................................................................9

*Freedom from Religion Found., Inc. v. Mack*,
    No. 21-20279, 2021 U.S. App. LEXIS 20447 (5th Cir. July 9, 2021) ................7

*Golden State Transit Corp. v. Los Angeles*,
    493 U.S. 103, 110 S.Ct. 444 (1989)........................................................12

*Green v. Mansour*,
    474 U.S. 64, 106 S.Ct. 423 (1985)........................................................9

*Lapides v. Bd. of Regents*,
    535 U.S. 613 (2002)................................................................................14

*Lovick v. Ritemoney Ltd.*,
    378 F.3d 433 (5th Cir. 2004) ................................................................5

*Nelson v. Univ. of Tex.*,
    535 F.3d 318 (5th Cir. 2008) ................................................................7

*Patel v. Tex. Dep't of Licensing & Regulation*,
    469 S.W.3d 69 (Tex. 2015)................................................................4, 15

*Railroad Transfer Service, Inc. v. Chicago*,
    386 U.S. 351 (1967)................................................................................9

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996)................................................................................10

*Shah v. Univ. of Tex. Sw. Med. Sch.*,
    129 F.Supp.3d 480 (N.D. Tex. 2015) ....................................................7

*Shaw v. Delta Air Lines,*
    463 U.S. 85 (1983)................................................................7, 9

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998)................................................................5

*Va. Office for Prot. & Advocacy v. Stewart,*
    563 U.S. 247 (2011)...............................................................9

*Verizon Md. Inc. v. PSC,*
    535 U.S. 635 (2002)...............................................................10

*Waters v. Churchill,*
    511 U.S. 661 (1994)...............................................................13

### <u>Constitutional Provision, Rules & Statutes</u>:

U.S. Const., Art. III, sec. 2..........................................................6

Fed. R. Civ. P. 12(b)(6)..............................................................5

8 U.S.C.
    § 1103..........................................................................8, 9, 11
    § 1623..........................................................1, 2, 4, 7, 11, 12, 13
    § 1623(a)......................................................................3

42 U.S.C.
    § 1983.........................................................................10, 12

Tex. Civ. Prac. & Rem. Code
    § 37, et. seq.................................................................1
    § 37.003......................................................................15
    § 37.004......................................................................15, 16

Tex. Educ. Code
    § 54.051(d)...........................................................1, 3, 4, 7, 8, 15, 16
    § 54.052(a)(3)................................................................3

TO THE HONORABLE SEAN D. JORDAN:

Plaintiff the Young Conservatives of Texas Foundation ("YCT") responds to the Motion to Dismiss filed by Defendants, the University of North Texas; the University of North Texas System; Neal Smatresk, President of the University of North Texas; and Shannon Goodman, Vice President for Enrollment of the University of North Texas (collectively "UNT").

### RESPONSE TO DEFENDANTS' STATEMENT OF ISSUES

YCT filed suit in state court seeking to enjoin the enforcement of Tex. Educ. Code § 54.051(d) as preempted by 8 U.S.C. § 1623 and therefore unconstitutional.  After removing the case to this Court, UNT filed the present motion arguing that YCT failed to state a claim upon which relief can be granted.  UNT characterizes the issue presented in this motion as "[w]hether 8 U.S.C. § 1623 of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") confers a private right of action?"

But, YCT did not file suit under 8 U.S.C. § 1623.  Rather, YCT filed equitable claims in state court seeking to enjoin the enforcement of an unconstitutional state law by state officials.  In state court, those claims would be characterized as requests for equitable relief under *Heinrich.* *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (holding that Texas courts have equitable authority to enjoin unlawful actions of state officials).  The statutory basis in state court for such claims comes from the Texas Uniform Declaratory Judgment Act.  Tex. Civ. Prac. & Rem. Code § 37, et. seq.

In federal court, YCT's claims are best characterized as arising under this Court's equitable powers as articulated in *Ex parte Young*, 209 U.S. 123 (1908).  The proper question presented by UNT's motion to dismiss is therefore whether YCT has properly plead a claim for relief under *Ex parte Young*?

**EXECUTIVE SUMMARY**

This case involves a constitutional challenge to portions of a Texas statute which require that certain United States citizens pay higher tuition rates at public universities than aliens who are not lawfully present in the state.  YCT argues that these higher rates are expressly preempted by federal law, 8 U.S.C. § 1623, and therefore cannot be constitutionally enforced.  To prevent this unlawful assessment of tuition against its members, YCT filed suit in state court seeking declaratory and injunctive relief against state officials at UNT tasked with enforcing the unlawful state statute.

After removing YCT's claims to this Court, UNT now seeks to dismiss the case solely because 8 U.S.C. § 1623 does not explicitly provide a federal cause of action to enforce its mandates.  But UNT's argument fundamentally misunderstands YCT's claims.  YCT did not file suit under 8 U.S.C. § 1623 directly.  Rather, YCT brought equitable claims against state officials in their official capacities seeking to enjoin the enforcement of state statute that is in direct conflict with federal law.  It is well established that this Court has jurisdiction to hear such preemption claims under its equitable powers pursuant to *Ex parte Young*, even in the absence of federal cause of action.

Even if this were not the case, it is not reasonably disputed that YCT's claims could have been heard in state court, either under that court's equitable jurisdiction, or under Texas's Uniform Declaratory Judgment Act.  UNT may not use removal to federal court as a clever trick to manufacture a lack of standing.  Accordingly, UNT's attempt to avoid review of its unlawful actions through its motion to dismiss should be denied.

**FACTS**

A full recitation of the facts of this case are laid out in detail in YCT's Complaint (Dkt. #2) and Motion for Summary Judgment (Dkt. #5) and are therefore merely summarized here to the extent relevant to this motion.

This is a federal preemption case.  On its face, 8 U.S.C. § 1623(a) forbids any state institution from providing "any postsecondary education benefit" on the basis of residence within a state to any "alien who is not lawfully present in the United States" unless "a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident."

YCT argues that provisions of the Texas Education Code violate this mandate by allowing aliens who are not lawfully present in the United States to qualify for a postsecondary education benefit—in-state tuition rates—on the basis of residency, while simultaneously denying that same benefit to United States citizens from other states.  Dkt. #2, ¶ 11.  In particular, Tex. Educ. Code § 54.052(a)(3) provides that certain aliens who are not lawfully present in the United States "are considered residents of this state for purposes of this title"—and thus qualify to pay resident tuition—while Tex. Educ. Code § 54.051(d) sets a different, higher rate for U.S. citizens who are not Texas residents.

Applying this statutory scheme, UNT allows aliens who are not lawfully present to pay in-state tuition rates while United States citizens from states other than Texas, including YCT members, may not.  Dkt. #2, ¶¶ 30-33.  This difference in benefits is significant.  UNT's website currently states that the average annual cost of attendance for an undergraduate student that qualifies as a Texas resident is $26,554, while the cost for out-of-state students is $38,794.  *See* Tuition, Costs & Aid, https://admissions.unt.edu/tuition-costs-aid (last visited Aug. l8, 2021).

On November 16, 2020, YCT filed suit in state district court against Defendants seeking equitable relief in the form of: (1) a declaration that Section 54.051(d) of the Texas Education Code, as applied to United States citizens, is unconstitutional and (2) an injunction preventing Defendants or their agents from applying Section 54.051(d) of the Texas Education Code to United States citizens at UNT.  Dkt. #2, p. 10.

There is no dispute that the state district court had both jurisdiction over such claims and the authority to provide the remedy sought.  *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (holding that Texas courts have equitable authority to enjoin unlawful actions of state officials); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995) (noting that the absence of a private right of action does not preclude "equitable remedies for violation of constitutional rights"); *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 76-77 (Tex. 2015) (holding that the Texas Uniform Declaratory Judgment Act waives sovereign immunity and provides the statutory basis for declaratory and injunctive relief against a state entity directly when that entity is tasked with enforcing an unconstitutional statute).

After UNT filed its Answer in state court, YCT moved for summary judgment.  Five days later, on the statutory deadline for removal, UNT filed its motion to remove this case to federal court.  Dkt. #1.  In its motion, UNT acknowledged that YCT had "allege[d] state law causes of action" but argued that YCT's claims turned on questions of federal law and therefore jurisdiction was proper in this Court.  Dkt. #1, p. 3.  Immediately after removing to this Court, UNT filed the currently pending motion to dismiss alleging that this Court lacks jurisdiction because federal law provides no private cause of action to enforce 8 U.S.C. § 1623. Dkt. #3, p. 2.

**STANDARD OF REVIEW**

UNT has brought this motion to dismiss under both 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  However, it is unclear how 12(b)(1) applies.  UNT has elsewhere conceded that this Court has subject matter jurisdiction (*see* Def.'s Resp. to Pl.'s Mot. to Remand at ¶ 5), and UNT provides no argument in their briefing regarding subject matter jurisdiction.  Instead, the sole basis of UNT's motion is that YCT has allegedly failed to state a cause of action.  But "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis added); *id*. at 118 n. 7 (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)) "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover"); *Bond v. United States*, 131 S.Ct. 2355, 2362 (2011) ("the question [of] whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute.")  Accordingly, Defendants' motion is better construed as alleging a "failure to state a claim" under Fed. R. Civ. P. 12(b)(6) and will be addressed under that standard.

To avoid a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff need only present sufficient, facially plausible facts to state a claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.  In construing the complaint, the court must "accept[] as true all well-pleaded factual allegations and draw[] all reasonable inferences in plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

## ARGUMENT AND AUTHORITIES

**I.    THIS COURT HAS JURISDICTION TO HEAR YCT'S EQUITABLE CLAIMS PURSUANT TO *EX PARTE YOUNG***

UNT's motion to dismiss is based on a single argument—namely, that YCT's Supremacy Clause claims may not go forward because YCT has not identified a federal statute creating a right of action to support its claims.  This argument fails.

It is well established that parties may sue to enjoin the enforcement of state laws that are alleged to violate federal law, even though "the Supremacy Clause does not confer a right of action."  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).  A private right of action is not required in such cases because the Court's authority to enjoin unconstitutional actions by government officials is not derived from its power to hear cases at law, but from its equally important authority under Article III to hear cases in equity.  *Id*. at 327; U.S. Const., Art. III, sec. 2 (granting the federal courts authority over cases "in law and equity, arising under th[e] Constitution, [or] the laws of the United States.").  As the Supreme Court has explained, the ability to "sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England."  *Id*.  It is a "judge-made remedy, and we have never held *or even suggested* that, in its application to state officers, it rests upon an implied right of action."  *Id* (emphasis added).

The most famous articulation of this equitable form of relief came in *Ex parte Young*, 209 U.S. 123 (1908).  An official-capacity equitable claim is cognizable under *Ex parte Young* if it meets three criteria: (1) the defendant is a state officer, (2) the complaint seeks injunctive relief for an ongoing violation of federal law, and (3) the defendant state officer bears a sufficiently close connection to the unlawful conduct that a district court can meaningfully redress that injury with

an injunction against that officer.  *Freedom from Religion Found., Inc. v. Mack*, No. 21-20279, 2021 U.S. App. LEXIS 20447, at *9 (5th Cir. July 9, 2021).  Each of those elements are met here.

First, Defendants Goodman and Smatresk are officials at a public university.  It is well established that public university officials are "state officers" for the purpose of *Ex parte Young*. *See*, *e.g.*, *Nelson v. Univ. of Tex.*, 535 F.3d 318, 321 (5th Cir. 2008) (university administrator was state officer for *Ex parte Young* purposes); *Shah v. Univ. of Tex. Sw. Med. Sch.*, 129 F.Supp.3d 480, 497 (N.D. Tex. 2015) (same).

Second, YCT seeks injunctive relief for an ongoing violation of federal law.  In particular, YCT claims that Defendants continue to apply Tex. Educ. Code § 54.051(d), which is directly preempted by 8 U.S.C. § 1623 and therefore unconstitutional, unenforceable, and must be enjoined.  As this Court recognized in its recent order (Dkt. #22, p. 7.), such preemption claims are, by nature, claims that Defendants ongoing application of Tex. Educ. Code § 54.051(d) violates federal law.  *See also, Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 388 (2000) (recognizing that federal preemption claims are constitutional in nature); *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983) (noting that it is "beyond dispute" that preemption claims are cognizable under *Ex parte Young*).

Finally, Defendants bear a sufficiently close connection to the enforcement of Tex. Educ. Code § 54.051(d) that a district court can meaningfully redress YCT's injuries with an injunction against the Defendants.  To show a sufficient connection to the enforcement of a challenged law to invoke *Ex parte Young*, a plaintiff need only allege that the Defendant has "*some connection* with the enforcement of the [challenged law]." *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017) (emphasis added).  That burden is met if the

defendant has taken or can take "specific action predicated on the [challenged] statute" or has "authority to oversee and enforce" a system predicated on the challenged statute.  *Id*. at 518, 520.

That low burden is met here.  Defendant Shannon Goodman is the President for Enrollment of UNT.  In that role, she is "responsible for determining resident status for tuition purposes."  Dkt. #2, ¶ 5.  Defendant Neal Smatresk is the President of UNT.  In that role he is tasked with "administering all university policies and procedures."  Dkt. #2, ¶ 4.  Pursuant to their duties, both Goodman and Smatresk "apply, administer, or oversee the requirements of Section 54.051" (Dkt. #2, ¶ 31) and therefore "have acted and continue to act without legal authority by imposing nonresident tuition on United States citizens."  Dkt. #2, ¶ 32.  The requested injunction against both Defendants and "any and all agents, administrators, employees, and other persons acting on behalf of Defendants" would therefore fully redress YCT's injuries by preventing the enforcement of § 54.051(d) at UNT.  YCT has therefore stated a claim for relief under *Ex Parte Young* and UNT's motion to dismiss should be denied.

## II.    8 U.S.C. § 1103 DOES NOT EXPRESSLY REMOVE THIS COURT'S EQUITABLE JURISDICTION

As noted *supra*, UNT's motion to dismiss does not directly address *Ex parte Young* or this Court's equitable authority at all.  But, read broadly, it could be read to argue that by granting enforcement authority over immigration matters generally to the Secretary of Homeland Security in another statute (8 U.S.C. § 1103), Congress implicitly eliminated this Court's longstanding equitable authority to enjoin state laws which conflict with federal law touching on immigration.  Dkt #7, p. 4-5.  This argument, to the extent UNT makes it, fails.

Federal preemption claims pursued under the court's equitable authority are common.[1] Indeed, the Supreme Court has noted that the availability of equitable relief under *Ex parte Young* to prevent enforcement of preempted state laws is what "gives life to the Supremacy Clause." *Green v. Mansour*, 474 U.S. 64, 68 (1985). To eliminate this longstanding basis for federal jurisdiction to enforce federal law, a statute must "establish Congress's 'intent to foreclose' equitable relief." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015).

Accordingly, for UNT's motion to dismiss to prevail, it must show that 8 U.S.C. § 1103 established congressional intent to foreclose traditional forms of equitable relief by granting the Secretary of Homeland Security general authority to "administ[er] and enforce[]…all other laws relating to the immigration and naturalization of aliens." It has not met that burden.

A statute granting a federal agency general authority to enforce a law does not "*by itself*, preclude the availability of equitable relief." *Armstrong*, 575 U.S. at 328 (emphasis in original). For example, in *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 256 n.3 (2011), the Court held that a private preemption suit could go forward under *Ex parte Young*, despite the fact that the statute relied on for preemption also expressly granted federal officials authority to oversee and enforce its mandates. As the Court explained, "[t]he fact that the Federal Government can exercise oversight of a federal spending program and even withhold or withdraw funds—which are the chief statutory features respondents point to—does not demonstrate that Congress has

---

[1]     *See, e.g., Foster v. Love*, 522 U.S. 67 (1997) (state election law that permitted the winner of a state primary to be deemed the winner of election to Congress held preempted by federal statute setting date of congressional elections); *Shaw v. Delta Air Lines*, 463 U.S. 85 (1983) (state law preempted in part by the federal Employee Retirement Income Security Act of 1974); *Railroad Transfer Service, Inc. v. Chicago*, 386 U.S. 351 (1967) (city ordinance imposing licensing requirements on motor carrier transporting railroad passengers held preempted by federal Interstate Commerce Act); *Campbell v. Hussey*, 368 U.S. 297 (1961) (state law requiring labeling of certain strains of tobacco held preempted by the federal Tobacco Inspection Act).

'displayed an intent not to provide the 'more complete and more immediate relief' that would otherwise be available under *Ex parte Young*.'"  *Id*.

This makes sense.  Grants of enforcement authority to federal actors are ubiquitous in federal law.  If such generalized grants were sufficient to eliminate equitable relief, almost no federal rights would be privately enforceable.  Indeed, *Ex parte Young* itself would have come out the other way.  Section 5 of the 14th Amendment expressly grants Congress exclusive "power to enforce, by appropriate legislation, the provisions of [the Fourteenth Amendment]."  And Congress exercised that authority by creating a cause of action for certain plaintiffs under 42 U.S.C. § 1983 (initially referred to as section 1 of the Ku Klux Klan Act).  Under UNT's theory, that specific grant of enforcement authority would be sufficient to preclude other private suits seeking independent equitable relief to enforce the Fourteenth Amendment.  Yet, the plaintiff in *Ex parte Young,* who sought to enforce the Fourteenth Amendment, did not file suit under 42 U.S.C. § 1983 or any other provision enacted by Congress, but instead invoked the same equitable remedies relied on by YCT here.  *See Ex parte Young*, 209 U.S. at 149.  A general statutory grant of enforcement authority alone therefore cannot be sufficient to preclude *Ex parte Young* claims.

Instead, to establish an intent to foreclose equitable relief, courts look to other factors.  For example, where a statute creates an "detailed remedial scheme," with "intricate procedures [for judicial review] set forth in that provision" the court may find that Congress intended to foreclose traditional equitable remedies.  *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 647 (2002).  For example, in *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996), the Court found that provisions of the Indian Gaming Regulatory Act (IGRA) could not be enforced under *Ex parte Young* because of the intricate remedial scheme already in that statute.  In particular, IGRA provided an explicit cause of action whereby a "court could issue an order directing the State to negotiate, that it could

require the State to submit to mediation, and that it could order that the Secretary of the Interior be notified." *Id.* at 74-75.  The Court found that the express provision of this elaborate procedure allowing only for a "quite modest set of sanctions" displayed an intent to foreclose the "more complete and more immediate relief" that would otherwise be available under *Ex parte Young*.  *Id*. at 75.

Similarly, if the application of a statute turns on complex "judgment-laden" standards *and* the statute provides for an express administrative remedy, courts may find that equitable relief is foreclosed.  *Armstrong*, 575 U.S. at 328-29.  For example, in *Armstrong*, the Court was faced with a preemption challenge based on provisions of the Medicaid Act requiring that "state plans provide for payments that are 'consistent with efficiency, economy, and quality of care," while "safeguard[ing] against unnecessary utilization of . . . care and services.""  *Id*. at 328.  The Court held that those provisions were unenforceable under *Ex parte Young* because the statute's mandates were complex and "judicially unadministrable" *and* the statute explicitly provided for a separate administrative remedy.  *Id*.; *see also id*. at 336 (Breyer, J., concurring) (emphasizing the ability for plaintiffs to bring claims under the Administrative Procedure Act).

Neither *Seminole Tribe* nor *Armstrong* preclude review in this case.  Unlike the statute at issue in *Seminole Tribe*, 8 U.S.C. § 1623 does not put forward any detailed remedial scheme.  To the contrary, it is silent as to how it is to be enforced.  And while a separate statute (8 U.S.C. § 1103) grants the Secretary of Homeland Security general authority to administer "laws relating to the immigration and naturalization of aliens," this grant is open-ended with no guidance regarding what that enforcement might look like, or how it might apply to § 1623.  Indeed, a search of both Lexis Nexis and Westlaw failed to return *a single case* where the Secretary has ever initiated an action to enforce 8 U.S.C. § 1623.

Moreover, unlike the statute at issue in *Armstrong*, the administration of 8 U.S.C. § 1623 does not involve complex judgment-laden standards or provide a separate administrative remedy to ensure that its mandates are enforced.  To the contrary, the mandates of § 1623 are straightforward—*i.e.*, if a university provides an educational benefit to an unlawful alien, then that same benefit must be provided to United States citizens.  And if YCT is to be relieved from its injuries caused by UNT's continued failure to comply with these mandates, there is no administrative remedy available.  Equitable relief under *Ex parte Young* is therefore appropriate.

UNT points to two out of circuit cases where challenges to state laws under 8 U.S.C. § 1623 were dismissed because § 1623 "does not create an implied cause of action."  Dkt #7, p. 8-10 (citing *Day v. Bond*, 500 F.3d 1127 (10th Cir. 2007); *Foss v. Ariz. Bd. of Regents,* No. 1 CA-CV 18-0781, 2019 Ariz. App. Unpub. LEXIS 1228 (Ct. App. Nov. 7, 2019)).  But those non-binding cases involved attempts to enforce federal law directly (which would require a private right of action), or attempts to invoke 42 U.S.C. § 1983 (which would require a finding that 8 U.S.C. § 1623 created "rights, privileges, or immunities" cognizable under the 14th Amendment).[2] Neither case involved a Supremacy Clause challenge raised under *Ex parte Young*, which derives from this Court's equitable authority and therefore may lie whether a cause of action exists or not. *See Armstrong*, 575 U.S. at 326-28.

In *Foss*, for example, the plaintiffs did not challenge or seek to enjoin any allegedly unconstitutional state law.  Rather, the plaintiffs sought a declaration that they had been overcharged tuition under 8 U.S.C. § 1623 and an order requiring that those students receive in

---

[2]     See *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 n.4, 110 S.Ct. 444, 449 (1989) ("a Supremacy Clause claim based on a statutory violation is enforceable under § 1983 only when the statute creates 'rights, privileges, or immunities' in the particular plaintiff.")

state tuition.  *Foss*, 2019 Ariz. App. Unpub. LEXIS 1228, at *5.  In an opinion that is *explicitly*[3] not precedent, even in Arizona Courts, the court concluded that such lawsuits were not authorized by 8 U.S.C. § 1623 directly and dismissed the case.  *Id*. at 8-9.  The plaintiffs did not plead, and the court did not discuss, federal pre-emption or *Ex parte Young* at all.

In *Day*, 500 F.3d at 1138, the plaintiffs brought federal preemption claims invoking 8 U.S.C. § 1623, but mistakenly tried to bring those claims under 42 U.S.C. § 1983, which is limited to the protection of "rights, privileges, or immunities" cognizable under the 14th Amendment.  The Tenth Circuit concluded that the language of 8 U.S.C. § 1623 does not "confer the sort of 'individual entitlement' that is enforceable under § 1983" and dismissed the case.  *Id*. at 1139.  But, once again, the plaintiffs did not plead, and the court did not discuss *Ex parte Young* or the courts inherent equitable authority.

Accordingly, neither *Foss* nor *Day* are relevant here.  *See, Waters v. Churchill*, 511 U.S. 661, 678 (1994) ("[C]ases cannot be read as foreclosing an argument that they never dealt with."); *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (an opinion is not binding precedent on an issue "never squarely addressed"); *De La Paz v. Coy*, 786 F.3d 367, 373 (5th Cir. 2015) ("[A]ccording to black letter law, 'a question not raised by counsel or discussed in the opinion of the court' has not 'been decided merely because it existed in the record and might have been raised and considered.'")  UNT's motion to dismiss should therefore be denied.

---

[3]      *Foss*, 2019 Ariz. App. Unpub. LEXIS 1228, at *1 (capitalization in original) ("UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.")

### III.   UNT MAY NOT USE REMOVAL TO FEDERAL COURT AS A CLEVER TOOL TO RENDER ITS UNLAWFUL ACTIONS UNREVIEWABLE

Finally, assuming arguendo that *Ex parte Young* does not apply, UNT's motion should be denied because it impermissibly attempts to use removal as a clever trick to render its unlawful actions unreviewable.  As explained below, it is well established that YCT's constitutional claims could have been heard in state court.  UNT should not be able to use removal as a cynical means to manufacture a lack of standing.

For example, in *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002), Mr. Lapides sued the Georgia University System alleging that university officials placed allegations of sexual harassment in his personnel files and that their doing so violated Georgia law.  *Lapides*, 535 U.S. at 616.  Because Mr. Lapides' complaint also raised federal questions, the defendants removed the case to federal court.  *Id*.  After that removal was granted, the defendants immediately moved to dismiss the case arguing that Mr. Lapides claims were barred by sovereign immunity.  *Id*.  According to defendants, the Georgia Tort Claims Act (under which Mr. Lapides filed his claims in state court) only provided a waiver of sovereign immunity for claims in state court, not federal court.  *Id*.  And because there was no Georgia statute providing a waiver of immunity for claims in federal court, defendants argued that Mr. Lapides claims were barred by sovereign immunity.  *Id*.

The Court saw through the government's clever game.  *Id*. at 619-20.  "It would seem anomalous or inconsistent," the Court noted, "for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand."  *Id*. at 619.  The Court therefore refused to grant the state such an "unfair tactical advantage."  *Id*. at 621.

14

While *Lapides* involved sovereign immunity (which can be waived) and therefore is not directly on point here, the same sentiment expressed by the Court in *Lapides* is applicable.  YCT filed this case in state court under the Uniform Declaratory Judgment Act (UDJA), which provides a clear mechanism for the relief sought in this case.  Under the UDJA, any "person…whose rights, status, or other legal relations are affected by a statute…may have determined any question of construction or validity arising under the … statute… and obtain a declaration of rights, status, or other legal relations thereunder."  Tex. Civ. Prac. & Rem. Code § 37.004.  The UDJA provides further that any court presented with such a case "has power to declare rights, status, and other legal relations [under the challenged statute] *whether or not further relief is or could be claimed.*"  Tex. Civ. Prac. & Rem. Code § 37.003 (emphasis added).

Texas courts have held that the UDJA provides not only a waiver of sovereign immunity for challenges to state statutes, but an independent mechanism for such challenges, even when the challenged statute provides a different mechanism for relief.  *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 76-77 (Tex. 2015).  For example, in *Patel*, 469 S.W.3d at 78-80, the plaintiffs filed UDJA claims seeking a declaration that the Texas cosmetology statutes were unconstitutional as applied to them.  Neither the Texas Constitution, nor the cosmetology statutes provided a cause of action for such claims.  To the contrary, the cosmetology statutes provided a separate remedy—administrative review under the Texas Administrative Procedures Act for agency orders made under the challenged statute.  *Id*. at 79.  Nevertheless, the Court concluded that plaintiffs could bring their constitutional claims directly under the UDJA.  *Id*.

Similarly, YCT's "rights are affected" by Tex. Educ. Code § 54.051(d), and YCT may seek to have the constitutionality of § 54.051(d) adjudicated in state court.  Tex. Civ. Prac. & Rem.

15

Code § 37.004.  Indeed, UNT's motion for removal seems to acknowledge as much, claiming that YCT had "allege[d] state law causes of action."  Dkt #1, p. 3.

Like the defendants in *Lapides*, UNT removed this case to federal court and then tried to use that removal as a basis for dismissal because federal law allegedly does not provide the same mechanism for relief that would have been available to YCT in state court.  This Court should not allow such gamesmanship.

## CONCLUSION

UNT's motion does not deny that Tex. Educ. Code § 54.051(d) is unconstitutional or that it injures YCT.  Rather, UNT seeks by clever pleading to render those constitutional injuries wholly unreviewable in court.  This Court should not take the bait.

Under UNT's theory, universities may continue to apply an unconstitutional state law to students each semester and, if challenged, may avoid review of their unconstitutional acts by simply removing the case to federal court.  The sole remedy for these injured students, according to UNT, is to hope that a federal bureaucrat (the Secretary of Homeland Security) decides to bring an unprecedented action by some as-yet undescribed mechanism against the University for its unconstitutional actions.  But the right of Texas students to be secure from unconstitutional state laws may not be made contingent on the "noblesse oblige" of federal bureaucrats.  *See FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 255 (2012).  Both federal law and state law make clear that YCT may bring equitable claims to prevent UNT's ongoing violation of the Constitution.  UNT's motion to dismiss should be denied.

Respectfully submitted,

*/s/Chance Weldon*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com

16

CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:     (512) 472-2700
Facsimile:      (512) 472-2728

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on August 25, 2021, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Chance Weldon*
CHANCE WELDON