# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| YOUNG CONSERVATIVES OF TEXAS FOUNDATION § § § *Plaintiff*, § § v. § § THE UNIVERSITY OF NORTH TEXAS, THE UNIVESITY OF NORTH TEXAS SYSTEM, NEAL SMATRESK, PRESIDENT OF THE UNIVERSITY OF NORTH TEXAS and SHANNON GOODMAN, VICE PRESIDENT FOR ENROLLMENT OF THE UNIVERSITY OF NORTH TEXAS, § § § § § § § § § *Defendant*. § | CIVIL ACTION NO. 4:20-cv-00973 |

**DEFENDANTS' REPY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) and (6)**

**TABLE OF CONTENTS**

I. YCT Concedes it Has No Statutory or Implied Right of Action to Enforce the IIRIRA. ...................................................................................................................1

II. YCTF Failed to Plead an Official-Capacity Equitable Claim under *Ex parte Young*. .......................................................................................................................3

    A. *Armstrong* Affirms that YCT has no Right of Action to Enforce U.S. Immigration Laws and Has Thus Failed to Invoke this Court's Jurisdiction. ....................................................................................................4

    B. Plaintiff's Complaint Fails to State A Claim for Equitable Relief....................7

    C. The IIRIRA's comprehensive and complex statutory scheme precludes the availability of equitable relief. ....................................................9

    D. YCT Does not Have Associational Standing to Seek Preemption of the Texas Education Code...................................................................................10

III. Conclusion .............................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Air Evac EMS, Inc. v. Texas, et al.*,
  851 F.3d 507 (5th Cir. 2017) ............................................................................................2, 5, 6

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ................................................................................................................2, 9

*Armstrong v. Exceptional Child Center, Inc.*,
  575 U.S. 320 (2015) ............................................................................................................ passim

*C.f. Freedom From Religion Foundation, Inc. v. Mack*,
  — F.4th —, 2021 WL 2887861 (5th Cir. 2021) ................................................................ passim

*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979) .....................................................................................................................5

*Carroll v. Safford,*
  3 How. 441 (1845) ......................................................................................................................9

*City of Arlington v. Randall*,
  301 S.W.3d 896 (Tex. App.—Fort Worth 2009, pet. denied) ..................................................3, 8

*Day v. Bond*,
  500 F.3d 1127 (10th Cir. 2007) ..................................................................................................2

*Ex parte Young*,
  209 U.S. 123 (1908) ............................................................................................................ passim

*Foss v. Arizona Bd. of Regents*,
  1 CA-CV 18-0781, 2019 WL 5801690 (Ariz. Ct. App. Nov. 7, 2019) ......................................2

*Gonzaga University v. Doe*,
  536 U.S. 273 (2002) .................................................................................................................4, 9

*Idaho v. Coeur d'Alene Tribe of Idaho*,
  521 U.S. 261 (1997) ....................................................................................................................6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...............................................................................................................5, 11

*Ne. Fla. Chapter of Assoc. Gen. Contractors v. City of Jacksonville*,
  508 U.S. 656 (1993) ............................................................................................................5, 6, 10

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) ...................................................................................................3, 8

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ......................................................................................................5

*Schweiker v. Chilicky*,
  487 U.S. 412 (1988) ....................................................................................................................7

*Seminole Tribe of Fla. v. Florida*,
   517 U.S. 44 (1996) ............................................................................................. passim

*State v. Morales*,
   869 S.W.2d 941 (Tex. 1994) ........................................................................................ 3

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
   852 S.W.2d 440 (Tex. 1993) ........................................................................................ 3

*Tex. Democratic Party v. Abbott*,
   978 F.3d 168 (5th Cir. 2020) ....................................................................................... 6

*Tex. Dep't of Transp. v. Esters*,
   343 S.W.3d 226 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ...................... 8

**Statutes**

28 U.S.C. § 1331 .................................................................................................................. 5

8 U.S.C. § 1103(a)(1) ..................................................................................................... 2, 10

8 U.S.C. § 1623(a) ............................................................................................................ 11

**Other Authorities**

U.S. Const., Art. III, sec. 2 .................................................................................................. 5

Plaintiff's complaint purports to assert three legal bases in support of its efforts to invalidate Texas statutes governing the tuition rates Texas public universities can charge residents of the State: the Supremacy Clause of the U.S. Constitution, section 1623 of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), and the Texas Uniform Declaratory Judgments Act ("UDJA"). None of these laws recognize a cause of action for the Young Conservatives of Texas Foundation ("YCT") to enforce the immigration laws of the United States. YCT's post-hoc attempt to salvage its complaint and tack on an *Ex parte Young* claim for equitable relief must fail. Nowhere in its Response does YCT rebut the UNT Defendants' (collectively, "UNT") authority stating that section 1623 of the IIRIRA does not confer a private right of action. Instead, Plaintiff has transformed this Court's request[1] for the parties' consideration of the Supreme Court's 2015 decision in *Armstrong v. Exceptional Child Center* into a free-for-all attempt to re-plead its complaint in violation of the Federal Rules and Fifth Circuit precedent—all while accusing UNT of gamesmanship. Reality is clear: YCT pled a claim under the Declaratory Judgment Act to enforce section 1623 of the IIRIRA without any express or implied basis to do so. The complaint must be dismissed.

**I.    YCT Concedes it Has No Statutory or Implied Right of Action to Enforce the IIRIRA.**

YCT devotes nearly all of its 20-page response brief to opining on cherry-picked sentences from *Armstrong* and the legal principles underlying an official-capacity equitable claim despite the fact that no such claim appears on the face of its complaint. In so doing, YCT has conceded that it has not and cannot state a claim under section 1623 via the Declaratory Judgment Act or any other statute. Indeed, YCT tacitly acknowledged this fact in asserting "this Court has

---

[1] *See* Order, Dkt. No. 23 (setting briefing deadlines and directing the parties "to address in their briefing on Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) and (6), (Dkt. #7), the Supreme Court's decision in *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015)).

1

jurisdiction to hear such preemption claims under its equitable powers pursuant to *Ex parte Young*, **even in the absence of federal cause of action**." Dkt. No. 28 at 2 (emphasis added). As explained at length in Defendants' Motion, the Secretary of the United States Department of Homeland Security and certain other senior federal officials have the sole right to enforce section 1623, *see* 8 U.S.C. § 1103(a)(1), and—like the Medicaid statute at issue in *Armstrong*—section 1623 "lacks the sort of rights-creating language needed to imply a private right of action," *see Armstrong*, 575 U.S. at 331 (citing *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001)); *see also Day v. Bond*, 500 F.3d 1127, 1139–40 (10th Cir. 2007) (holding there is no private right of action under IIRIRA); *Foss v. Arizona Bd. of Regents*, 1 CA-CV 18-0781, 2019 WL 5801690, at *3 (Ariz. Ct. App. Nov. 7, 2019) (quoting *Day*, 500 F.3d at 1139).[2]

YCT also cannot rely on the Supremacy Clause or the Declaratory Judgment Act to assert its claims. As the Supreme Court stated in *Armstrong* (and as YCT concedes): "It is equally apparent that the Supremacy Clause is not the "'source of any federal rights,'" and certainly does not create a cause of action." 575 U.S. 320, 324–25 (2015) (internal citations omitted); *see also* YCT's Response, Dkt. No. 28, at 6 (citing *Armstrong*, 575 U.S. at 326) ("[T]he Supremacy Clause does not confer a right of action."). The outcome is the same as to claims under the Declaratory Judgment Act. *See Air Evac EMS, Inc. v. Texas, et al.*, 851 F.3d 507, 512 (5th Cir. 2017) ("[T]he Supremacy Clause[] . . . and Declaratory Judgment Act do not provide a 'private right of action.'") (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983)).

Significantly, this Court has already rejected YCT's position that the Texas UDJA creates a private right of action in this case. *See* Mem. Op. and Order, Dkt. No. 22 (denying Plaintiff's motion for remand). In denying Plaintiff's Motion for Remand, this Court clearly stated:

---

[2] This issue is discussed at length throughout UNT's Motion to Dismiss, Dkt. No. 7, and for the sake of brevity, UNT will not repeat those arguments here.

> Young Conservatives **cannot** assert a "cause of action" under the Texas UDJA that would confer subject-matter jurisdiction in either federal or state court. Although the Texas UDJA is "sometimes termed a 'cause of action' colloquially," the declaratory relief provided by this statute "is more precisely a type of *remedy* that may be obtained with respect to a cause of action or other substantive right." *Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 297–98 (Tex. App.—Austin 2018, pet. denied).

*Id.* at 5 (bold emphasis added). As this Court explained, the Texas UDJA and its federal counterpart[3] are "merely [] procedural device[s] for deciding cases already within a court's jurisdiction," *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993), and does not itself confer jurisdiction, *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994). Put simply, a claim for declaratory relief must be accompanied by "a cause of action at common law or under some statutory or constitutional provision." *City of Arlington v. Randall*, 301 S.W.3d 896, 908 (Tex. App.—Fort Worth 2009, pet. denied). YCT has failed to plead such a claim.

## II. YCTF Failed to Plead an Official-Capacity Equitable Claim under *Ex parte Young*.

YCT brashly asserts that "UNT's motion to dismiss does not directly address *Ex parte Young* or this Court's equitable authority at all." Dkt. No. 28 at 8. "The plaintiff," however, "is the master of his complaint," and here YCT "chose to invoke *only*" IIRIRA section 1623. *C.f. Freedom From Religion Foundation, Inc. v. Mack*, — F.4th —, 2021 WL 2887861, *4 (5th Cir. 2021). Because Plaintiff failed to plead a claim for equitable relief under *Ex parte Young* (or any state-law counterpart), the Court is not required to consider (and in fairness to UNT, should not consider) YCT's attempt to bootstrap an official-capacity equitable claim here.

Should the Court determine that YCT's complaint adequately alleges an *Ex parte Young* claim (it should not), UNT maintains that: (1) for myriad reasons, YCT does not have standing to

---

[3] *See Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001) ("[T]he law makes clear that—although the [federal DJA] provides a remedy different from an injunction—it does not provide an additional cause of action with respect to the underlying claim." (citation omitted)).

3

assert such a claim; and (2) as was the case in *Armstrong*, the IIRIRA's comprehensive and complex statutory scheme—which includes an express delegation of enforcement authority to the Secretary of Homeland Security and other senior federal officials—precludes the availability of equitable relief. UNT makes these arguments and offers the following high-level summary of its position here to preserve them for consideration; should the Court allow YCT to proceed with an *Ex parte Young* claim, UNT respectfully requests leave to file additional briefing to further address these complex issues.

      **A.**    ***Armstrong* Affirms that YCT has no Right of Action to Enforce U.S. Immigration Laws and Has Thus Failed to Invoke this Court's Jurisdiction.**

In its July 28, 2021 memorandum and order (Dkt. No. 23), this Court *sua sponte* requested the parties to address the Supreme Court's decision in *Armstrong* and the Fifth Circuit's decisions applying *Armstrong* in *Mack* and *Air Evac*. Generally speaking (and as discussed in section I, *supra*), *Armstrong* and its progeny support and affirm UNT's position that a private youth organization does not have standing to sue government officials absent a clear right of action. *See, e.g.*, *Armstrong*, 575 U.S. at 322 ("[A] private right of action under federal law is not created by mere implication, but must be 'unambiguously conferred.'") (quoting *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002)). In addition, a private individual may not sue a government entity or official absent a waiver or abrogation of sovereign immunity. *See, e.g.*, *Mack*, 2021 WL 2887861, at *4 ("Suits against the State generally must be dismissed because they're barred by sovereign immunity.") (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996)). And even if YCT properly pled a viable equitable claim, the organization must also meet the elements of Article III standing.[4] *See Ne. Fla. Chapter of Assoc. Gen. Contractors v. City of Jacksonville*, 508

---

[4] YCT accuses UNT of exercising its rights to have a federal question adjudicated by a federal court as "as a clever tool to render its [purportedly] unlawful actions unreviewable." Resp., Dkt. No. 28 at 14. In support of this argument, YCT curiously asserts that the constitutional question (preemption) in this case undisputedly "could have been heard

U.S. 656, 663 (1993) ("The doctrine of standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III.'") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

These issues, which go to the heart of a federal court's jurisdiction to adjudicate a case or controversy, are properly before the Court in conducting a preliminary inquiry to assess whether it may exercise jurisdiction over YCT's complaint,[5] as currently pled. UNT maintains that YCT has failed to satisfy these jurisdictional prerequisites, and YCT has offered no authority or reasoned argument to save its complaint. YCT has also failed to plead facts sufficient to state a claim under any justiciable theory.

Plaintiff's Response skips addressing any of these threshold considerations, instead asserting that "A private right of action is not required in such cases because the Court's authority to enjoin unconstitutional actions by government officials is not derived from its power to hear cases at law, but from its equally important authority under Article III to hear cases in equity." Dkt. No. 28 at 6 (citing *Armstrong*, 575 U.S. at 327; U.S. Const., Art. III, sec. 2). Plaintiff mischaracterizes the law. As the Fifth Circuit explained in *Air Evac*, the *Ex Parte Young* doctrine

---

in state court," adding that "UNT should not be able to use removal as a cynical means to manufacture lack of standing." *Id.* UNT maintains that, regardless of the venue—and for a variety of reasons outlined throughout UNT's motion, this Reply brief, and potentially in future motions—YCT has no standing to challenge the constitutionality of section 1623.

[5] In its "Standard of Review" and elsewhere throughout its Response brief, YCT suggests that UNT's invocation of Rule 12(b)(1) is improper—yet there can be no meaningful dispute that the question of a party's standing involves determination of a federal court's subject matter jurisdiction. *See Lujan*, 504 U.S. at 561 (stating that the "party invoking federal jurisdiction bears the burden of establishing" the "essential elements" of standing). Similarly, whether YCT has a private right of action under IIRIRA section 1623 or any other statute necessarily questions whether YCT has properly put a "case of controversy" before the Court. *See, e.g.*, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 747 n.17 (1979) ("Because a private action implied from a federal statute has as an element the violation of that statute, . . . the action universally has been considered to present a federal question over which a federal court has jurisdiction under 28 U.S.C. § 1331."). Questions of sovereign immunity also implicate a federal court's subject matter jurisdiction. *See Seminole Tribe*, 517 U.S. at 54–55. It is well-settled that a federal court should take up questions of subject matter jurisdiction prior to addressing the merits of a claim. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.") (internal citations omitted).

5

is a "legal fiction" which "allows [a] plaintiff to sue a state official, in his official capacity, in seeking to enjoin enforcement of a state law that conflicts with federal law." *Air Evac*, 851 F.3d at 512. An official-capacity equitable claim is an extraordinary judicial remedy designed for limited circumstances, and is cognizable under *Ex parte Young* only if: (1) the defendant is a state officer, (2) the complaint seeks injunctive relief for an ongoing violation of federal law, and (3) the defendant state officer bears a sufficiently close connection to the unlawful conduct that a district court can meaningfully redress that injury with an injunction against that officer.[6] *Mack*, ___ F.4th ___, 2021 WL 2887861, *4 (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020)). Contrary to YCT's assertions, though, *Ex parte Young* did not create "a free-standing remedy not subject to the restrictions otherwise imposed on federal remedial schemes." *Seminole Tribe*, 517 U.S. at 178; *see also Mack*, 2021 WL 2887861, at *5 (rejecting district court conclusion that the plaintiffs "retained some sort of freestanding official-capacity claim against a state official"). As the Supreme Court explained in *Idaho*: "To interpret Young to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle[] . . . that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997). At the pleading stage, the court should "not consider the merits of an action," but "focus[] instead on whether the complaint makes the requisite claims against proper parties." *Air Evac*, 851 F.3d at 515–16.

---

[6] The third element of an *Ex parte Young* claim essentially restates the causation and redressibiilty elements of Article III standing, *cf. City of Jacksonville*, 508 U.S. at 663 (outlining essential elements of standing), which UNT specifically denies are met here, *see infra* section II.B.

6

Critically, "Where Congress has created a remedial scheme for the enforcement of a particular federal right, [the Court has], in suits against federal officers, refused to supplement that scheme with one created by the judiciary. *Seminole Tribe*, 517 U.S. at 74 (citing *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988) ("When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional . . . remedies."). And where, as here, the challenged statute contains an express delegation of enforcement authority, YCT's "relief must be sought initially through the Secretary rather than through the courts." *See Armstrong*, 575 U.S. at 331.[7]

To be clear: YCT is asking this Court to create an entirely new cause of action for "youth organizations" to enforce the immigration laws of the United States. The Court should decline the invitation.

### B. Plaintiff's Complaint Fails to State A Claim for Equitable Relief.

Plaintiff contends that "YCT brought equitable claims against state officials in their official capacities seeking to enjoin the enforcement of state statute that is in direct conflict with federal law." Resp. at 2. YCT mischaracterizes the allegations in its complaint. Plaintiff's Original Petition states a sole cause of action to enforce section 1623 of the IIRIRA: declaratory judgment "pursuant to Texas's Uniform Declaratory Judgments Act." Dkt. No. 2  ¶¶ 34, 35.  While the phrases "equitable relief," "equitable powers," and "*Ex Parte Young*" are littered throughout Plaintiff's brief, these are not magic words which transform Plaintiff's complaint after-the-fact. Again, YCTF cites no authority controverting UNT's position that IIRIRA does not confer a private right of action to any individual—let alone an undefined collection of individuals unregulated by the

---

[7] YCT has failed to plead any facts indicating that it has raised these issues with the appropriate federal officials.

7

challenged statute. And again, the Supreme Court has made clear that the federal DJA and its state-law analogues similarly do not create a cause of action. *See Okpalobi*, 244 F.3d at 423 n.31; *Randall*, 301 S.W.3d at 908.

The Fifth Circuit has been clear: "[T]he **only** way to bring an official-capacity claim against an officer of the State is to do so under the equitable cause of action recognized in *Ex parte Young*." *Mack*, 2021 WL 2887861, at *4 (citing 09 U.S. 123, 28 (1908)) (emphasis added). In *Mack*, the Fifth Circuit recognized that the complaint must clearly state a claim for relief under *Ex parte Young*. *Id.* ("[T]he complaint sought relief only under 42 U.S.C. § 1983 and never once mentioned the equitable cause of action recognized in *Ex parte Young*."). The court dismissed the case, holding that the face of the complaint raised only a cause of action under section 1983, and did not state an equitable claim under *Ex parte Young*. *Id.* This was true even though the Freedom From Religion Foundation included a request for declaratory judgment. *See id.* Here, YCT's Original Complaint does not invoke *Ex parte Young* or any state-law analogue[8]—it merely seeks a declaration under the Declaratory Judgment Act, which alone does not create a cause of action. Like the complaint in *Mack*, the court "should [hold] that [YCT's] suit arises only under" § 1623, which—as discussed at length in UNT's motion to dismiss—does not create a private right of action and therefore must be dismissed. YCT's intimation that it could not have anticipated the need to plead an *Ex parte Young* claim due to UNT's removal is baseless. *Ex parte Young* potentially applies to any lawsuit that invokes federal rights against a state actor—including suits filed in state court. *See, e.g.*, *Tex. Dep't of Transp. v. Esters*, 343 S.W.3d 226, 232 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (dismissing state court petition raising statutory

---

[8] YCT's citation to *Heinrich* in its Response brief similarly cannot save its complaint. *See* Resp. Br., Dkt. No. 28, at 1 (asserting that its preemption claim should "be characterized as requests for equitable relief under *Heinrich*) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)).

8

discrimination and retaliation claims against state agency for lack of subject matter jurisdiction due to Eleventh Amendment immunity, and noting that plaintiff could have sought "prospective, equitable relief under federal law against employees of a state agency in their official capacity" "[u]nder *Ex parte Young* and its progeny"). YCT argues that its general request for an equitable **remedy** (an injunction) necessarily states an equitable **claim**—but that is simply not the case. *See Mack*, 2021 WL 2887861, at *4.

### C. The IIRIRA's comprehensive and complex statutory scheme precludes the availability of equitable relief.

Even assuming YCT has properly pled an *Ex parte Young* claim (it has not), equitable relief to enjoin a state official may be given only "in a proper case." *Armstrong*, 575 U.S. at 327 (citing *Carroll v. Safford,* 3 How. 441, 671 (1845)). This is not such a case. "The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong*, 575 U.S. at 327 (citing *Seminole Tribe*, 517 U.S. at 74), and "the 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Id.* at 328 (quoting *Sandoval*, 532 U.S. at 290). Thus, private actions are precluded where the challenged statute (1) is highly complex and (2) expressly delegates enforcement authority on the federal secretory charged with administration of the statute. *See id*. As the Supreme Court explained in *Armstrong*:

> Explicitly conferring enforcement of this judgment-laden standard upon the Secretary alone establishes, we think, that Congress "wanted to make the agency remedy that it provided exclusive," thereby achieving "the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking," and avoiding "the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action."

*Id.* at 328–29 quoting *Gonzaga*, 536 U.S. at 292 (BREYER, J., concurring in judgment). This reasoning led the Supreme Court to conclude that "The sheer complexity associated with enforcing

9

§ 30(A), coupled with the express provision of an administrative remedy, § 1396c, shows that the Medicaid Act precludes private enforcement of § 30(A) in the courts." *Id.* Here, the immigration statute at issue in this case bears significant resemblance to the breadth and complexity of the Medicaid statute at issue in *Armstrong*. In addition to its complexity, including hundreds of pages of statutory text and regulations, the IIRIRA includes an express delegation of enforcement authority to the Secretary of Homeland Security:

> The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter **and all other laws relating to the immigration and naturalization of aliens**, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers.

8 U.S.C. § 1103(a)(1). The statute means what it says.

Accordingly, in addition to failing to state an official-capacity equitable claim under *Armstrong*, any such claim (even if properly pleaded) will fail to afford YCT the cause of action it seeks.

### D. YCT Does not Have Associational Standing to Seek Preemption of the Texas Education Code.

UNT denies that the institution or its officers bear any connection to the alleged unlawful conduct at issue in this case or that an injunction against UNT will somehow redress YCT's purported members' concerns regarding out-of-state tuition. In addition to identifying a cognizable cause of action, to maintain federal jurisdiction, YCT must also plead the essential elements of standing: (1) injury in fact; (2) a causal relationship between the injury and the challenged conduct that fairly can be traced to the challenged action of the defendant; and (3) a likelihood that the injury will be redressed by a favorable decision. *Ne. Fla. Chapter of Assoc. Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 663 (1993). UNT denies that YCT has pled facts sufficient to meet the rigorous requirements of associational standing, and specifically denies that YCT has

stated facts supporting a legally-cognizable injury—as opposed to legislative rejection of its preferred policy position—or how an injunction against the UNT defendants will redress the purported injury.

As the Supreme Court explained in *Lujan*, where, as here, "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more" than "general factual allegations of injury" are needed. *Lujan*, 504 U.S. at 561–62. Put more directly, "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but its ordinarily 'substantially more difficult' to establish.'" *Id.* at 562 (citations omitted). This principle is doubly at play in YCT's case, as YCT is an organization (as opposed to specified individuals) *and* is attempting to redress a statute which regulates another group—here, undocumented individuals. *See* 8 U.S.C. § 1623(a) (regulating unlawfully present "aliens"). In addition, YCTF fails to allege a causal connection between the Texas statute at issue and its alleged injury. Regardless of the legality of section 54.051(d) of the Texas Education Code, YCTF's alleged (and unidentified) non-resident members are not entitled to resident tuition, and would not benefit from a declaration that section 54.051(d) is unconstitutional.

### III.    Conclusion

YCT has failed on all counts to identify an express or implied, statutory or constitutional right of action. The complaint should be dismissed.

11

Date: September 1, 2021

    Respectfully submitted,

    By: */s/ Andy Taylor*
    Andy Taylor
    **ANDY TAYLOR & ASSOCIATES, P.C.**
    Designated Lead Counsel
    State Bar No. 19727600
    ataylor@andytaylorlaw.com
    2628 Highway 36 South #288
    Brenham, Texas 77833
    (713) 222-1817 – telephone
    (713) 222-1855 – facsimile

    -and-

    **HUSCH BLACKWELL LLP**

    By: */s/ Sandy Hellums-Gomez*
    Sandy Hellums-Gomez
    State Bar No. 2403670
    Sandy.Gomez@HuschBlackwell.com
    Jeff Nobles
    State Bar No. 15053050
    Jeff.Nobles@HuschBlackwell.com
    600 Travis Street, Suite 2350
    Houston, Texas 77002
    (713) 647-6800 – main telephone
    (713) 647-6884 – general facsimile

    -and-

    Scott Schneider
    State Bar No. 24054023
    Scott.Schneider@HuschBlackwell.com
    Paige Duggins-Clay
    State Bar No. 24105825
    Paige.Duggins-Clay@HuschBlackwell.com
    111 Congress Avenue, Suite 1400
    Austin, Texas 78701
    (512) 472-5456 – main telephone
    (512) 479-1101 – general facsimile

    **ATTORNEYS FOR THE DEFENDANTS**

**UNIVERSITY OF NORTH TEXAS, THE UNIVERSITY OF NORTH TEXAS SYSTEM, NEAL SMATRESK, PRESIDENT OF THE UNIVERSITY OF NORTH TEXAS, AND SHANNON GOODMAN, VICE PRESIDENT FOR ENROLLMENT OF THE UNIVERSITY OF NORTH TEXAS**

## CERTIFICATE OF SERVICE

I certify that a copy of this motion has been served upon the following on this the 1st day of September, 2021:

Robert Henneke
rhenneke@texaspolicy.com
Chance Weldon
cweldon@texaspolicy.com
Joseph Aaron Barnes, Sr.
abarnes@texaspolicy.com
Texas Public Policy Foundation
901 Congress Avenue
Austin, Texas 78701
***Attorneys for Plaintiff***

By: */s/ Sandy Hellums-Gomez*
     Sandy Hellums-Gomez

13