# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| YOUNG CONSERVATIVES OF TEXAS FOUNDATION §<br>  *Plaintiff*, §<br> §<br> v. §<br> §<br> §<br>THE UNIVERSITY OF NORTH TEXAS, THE UNIVERSITY OF NORTH TEXAS SYSTEM, NEAL SMATRESK, PRESIDENT OF THE UNIVERSITY OF NORTH TEXAS and SHANNON GOODMAN, VICE PRESIDENT FOR ENROLLMENT OF THE UNIVERSITY OF NORTH TEXAS; §<br>  *Defendants*. § | CIVIL ACTION NO. 4:20-CV-973<br><br>JUDGE SEAN D. JORDAN |

## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

TO THE HONORABLE SEAN D. JORDAN:

Plaintiff, the Young Conservatives of Texas Foundation (YCT) files this motion for protective order pursuant to FRCP 26 (c) in response to discovery from Defendants, the University of North Texas, the University of North Texas System, Neal Smatresk, and Shannon Goodman (collectively, UNT).

### STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

Should YCT be required to disclose the name and contact information of all of its student members to UNT, despite the fact that the privacy of membership lists is protected by the First Amendment; YCT members' private information is not necessary to adjudicate this case; publicly known YCT members have received threats of violence for their political advocacy at UNT; UNT has publicly claimed to be investigating YCT for its political advocacy on campus; and there have been public online campaigns to discover and publish the private information of YCT members?

1

## BACKGROUND

This case presents a straightforward facial challenge to Tex. Educ. Code § 54.051(d). There is no dispute that the challenged statute is applied by UNT[1], and no reasonable dispute that the challenged statute applies to YCT members, who are students at UNT. Dkt # 5, p. 28.  Because of these undisputed facts, YCT has long suggested that discovery in this case is not warranted.

Nonetheless, on November 12th, UNT served numerous discovery request to YCT. Ex. 2. These requests largely amount to multiple variations for requests to identify, provide contact information, and provide a home address for all YCT members at UNT. For example, Interrogatory No. 2 asks that YCT:

> Identify each of the current members of YCT's University of North Texas Chapter, including full name, mailing address(es) (current and permanent), email address, telephone number, dates of attendance, expected graduation date, Texas residency status, and (if not Texas) state of permanent residence.

*See also*, Interrogatories 3, 4, 6, 7, and Request for Production 4.

Three days after this discovery was served, YCT informed UNT that it would not provide answers to these broad ranging requests without a protective order, because the requests greatly exceed the needs of this case, violate the First Amendment, and would put YCT members at risk. Ex. 3.

These are not idle concerns. YCT's members with public profiles have received public threats of physical violence for their political advocacy at UNT.

---

[1] Dep. Of Shannon Goodman, p. 17-20 (Attached as Ex. 1).



https://texasscorecard.com/metroplex/democrats-declare-war-on-conservatives-at-university-of-north-texas/

There have also been prior attempts to "dox" YCT's members at UNT:

> Neidert has been the target of doxxing (attempts to publish her private and identifying information on the internet) by a member of antifa, as well as hexes.

*Id*. And UNT's president has publicly claimed to be investigating YCT's political activities on campus.



*Id*. Additionally, the local Democratic party leadership has publicly moved to get YCT banned from UNT's campus.

> **Robby Montoya** @RobbyMontoya · 1h
> UPDATE: @TarrantDemParty allies with @UntDemocrats call for ABSOLUTE BAN of @YctUnt from taxpayer-funded University of North Texas. @GovAbbott #txlege #DentonCounty twitter.com/tarrantdempart...
>
> 10:18 PM · Jul 8, 2020 · Twitter for iPhone

*Id*.

Nonetheless, in a good faith effort to resolve the matter, YCT proposed that it would respond to more targeted requests necessary for UNT to make its arguments, if UNT would agree to a protective order limiting the disclosure to UNT's outside counsel, thus preventing the public disclosure of YCT member information or the disclosure of such information to UNT officials. Ex. 3.

YCT provided a draft protective order to UNT on November 22nd, and followed up on November 30th, and December 6th to see if UNT had any comments or suggestions. *Id*. UNT did not respond with edits until YCT threatened to file this motion. Ex. 3. At that point, UNT responded with a proposed edits to the protective order that would allow virtually every official at UNT to view YCT's members' private information. Ex. 4. In particular, UNT demands authority to provide YCT's private information to "attorneys in the UNT System Office of General Counsel, the named defendants, UNT and UNT System personnel … and the UNT System governing board." *Id*.

The parties conferred by phone again on December 8th, where it became clear that UNT would not accept any protective order which prevented the private information of YCT's members

from being shared with multiple officials at UNT. Because such broad disclosure is not needed for this case and would defeat the purpose of the protective order, this motion is necessary.

## ARGUMENT

### I. YCT'S MEMBERSHIP LIST IS PROTECTED BY THE FIRST AMENDMENT

Government demands for advocacy organizations' membership lists generally violate the First Amendment. *See Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021). This is because there is a "vital relationship between freedom to associate and privacy in one's associations" (*id.*), and mandating disclosure of membership lists can "chill" an individual's desire to associate. *Id.* at 2388. This is particularly true when, as in this case, disclosure of membership could expose members to either private or government sponsored harassment. *Sierra Club v. Energy Future Holdings Corp.*, No. 5:10CV156, 2013 U.S. Dist. LEXIS 205931, at *10-11 (E.D. Tex. Dec. 30, 2013) (citing *NAACP v. Alabama ex. rel. Patterson*, 357 US. 449, 462 (1958)). Indeed, in such circumstances, merely requesting disclosure chills association, "even if there is no disclosure to the general public." *Ams. for Prosperity Found*, 141 S. Ct. at 2388.

Accordingly, to pass constitutional muster, any demand for membership information must meet "exacting scrutiny." *Id*. This remains true, even in the litigation context. *Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 631 (5th Cir. 1980) (citing *NAACP v. Alabama*, 357 US. 449). To meet that standard, the government "must demonstrate 'an interest in obtaining the disclosures which is sufficient to justify the deterrent effect which these disclosures may well have.'" *Id*. at 632 (cleaned up). Disclosure is not appropriate if the government's legitimate "end can be more narrowly achieved." *Ams. for Prosperity Found*, 141 S. Ct. at 2384. As explained below, UNT has not met that burden here.

## II. UNT'S BROAD REQUEST FOR YCT'S MEMBERSHIP INFORMATION IS NOT SUFFICIENTLY TAILORED TO THE NEEDS OF THIS CASE

UNT flatly demands the names and other private information of *all* of YCT's members at UNT and refuses to screen that information from UNT staff. That request makes no attempt to be narrowly tailored to the needs of this case and therefore violates the First Amendment. Even when membership information is necessary to adjudicate a case, the First Amendment requires that demands for membership information be tailored so that they do not expose more private information than necessary. *See Ams. for Prosperity Found*, 141 S. Ct. at 2384 (requiring tailoring).

For example, in *Sierra Club*, 2013 U.S. Dist. LEXIS 205931 the Sierra Club sought penalties for the discharge of certain pollutants. Sierra Club argued that it had associational standing for those claims because some of its members in the area of the discharge had been affected. The Defendant claimed it was entitled to Sierra Club's membership list in discovery so that it could cross examine Sierra Club's members on their alleged injuries from the discharge (inherently fact-based claims). *Id*. at 7-8. Sierra Club countered that any issues of associational standing were addressed by the fact that it had already provided the identity of at least some members who had been injured, and that any further disclosure of its membership list, *even subject to a protective order*, violated the First Amendment. *Id*. at 8, 9-10. This Court agreed with Sierra Club, holding that forced disclosure of its membership list in those circumstances would violate the First Amendment. *Id*. at 10.

Similarly, in *Familias Unidas v. Briscoe*, 544 F.2d 182 (5th Cir. 1976), Familias Unidas challenged the application of a state law at a local school which it claimed injured its members. In response, the government demanded the names and contact information of Familias Unidas's

members in discovery. *Id*. at 185. The Fifth Circuit found that broad reaching discovery request violated the First Amendment, particularly where, as in this case, Familias Unidas's members were not seeking damages and their identities were therefore irrelevant. *Id*. at 192.

Here, YCT concedes that it has the burden to establish standing. But to do so, YCT need only provide some evidence that it has "at least one" member at UNT for which Tex. Educ. Code § 54.051(d) applies. *Summers v. Earth Island Inst*., 555 U.S. 488, 498 (2009). To meet that burden, YCT has already produced the sworn declaration of its chairman stating that YCT has members at UNT that are subject to Tex. Educ. Code § 54.051(d) and made the chairman available for deposition. Dkt # 5, p. 28. Additionally, YCT has offered to produce the name of one additional YCT member at UNT subject to Tex. Educ. Code § 54.051(d), provided that the student's name is subject to a protective order ensuring that the name is not made public or disclosed to UNT officials. This evidence is more than sufficient for standing purposes. *Sierra Club*, No. 5:10CV156, 2013 U.S. Dist. LEXIS 205931, at *8 (E.D. Tex. Dec. 30, 2013). Indeed, some cases have suggested that disclosing the names of affected members is not necessary to establish standing, if there is other evidence supporting the fact that such members exist. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

UNT nonetheless demands that YCT provide the names, addresses, contact information and other private information for *all* of its members, without protection. Given YCT's existing offers of compromise, there is no good faith basis for such a broad request for private information. Instead, upon information and belief, UNT is demanding this private information because it knows of the hostile environment for YCT members at UNT (including threats of violence) and hopes that the threat of doxing or retribution by University Officials will be successful in bullying the

relevant YCT members to abandon this case or abandon YCT altogether. This violates the First Amendment. A reasonable protective order is therefore necessary.

## CONCLUSION

For the forgoing reasons, YCT respectfully asks that this Court enter the attached protective order (Ex.5).

Respectfully submitted,

*/s/Chance Weldon*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
CHRISTIAN TOWNSEND
ctownsend@texaspolicy.com
Maryland Bar No. 2012180144
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:     (512) 472-2700
Facsimile:       (512) 472-2728

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on December 8, 2021, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Chance Weldon*
CHANCE WELDON

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and this motion is opposed. In particular, I conferred with UNT's lead counsel, Sandy Gomez by email on November 15th, 22nd, and 30th, and December 6th, 7th, and 8th. We conferred by telephone on November 15th and December 8th. As noted in the background section of this brief, YCT made a good faith offer to produce some protected information subject to a protective order, but UNT refused to agree to any protective order that would prevent YCT membership information from being disclosed to UNT staff and officials. Because such disclosure is not necessary and implicates YCT's fundamental First Amendment rights, YCT could not agree. The parties are therefore at an impasse.

        */s/Chance Weldon*
        CHANCE WELDON