IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| YOUNG CONSERVATIVES OF TEXAS FOUNDATION<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNIVERSITY OF NORTH TEXAS, THE UNIVESITY OF NORTH TEXAS SYSTEM, NEAL SMATRESK, PRESIDENT OF THE UNIVERSITY OF NORTH TEXAS and SHANNON GOODMAN, VICE PRESIDENT FOR ENROLLMENT OF THE UNIVERSITY OF NORTH TEXAS,<br><br>*Defendant*. | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:20-cv-00973 |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

UNT[1] respectfully submits this Response to Plaintiff Young Conservatives of Texas Foundation's ("YCT") Motion for Protective Order. The narrow issue presented by Plaintiff's request for a protective order is whether YCT has any First Amendment privacy right to conceal as Attorney's Eyes Only, the identities of its members in this case from the public and/or all UNT employees except for UNT's outside counsel. As explained below, YCT has not established facts supporting a wholesale right to privacy of membership under the First Amendment. The Court should deny YCT's motion and order the information produced, or in the alternative, enter a limited protective order designating YCT's members personal identifying information (*i.e.*, full

---

[1] Defendants the University of North Texas, the University of North Texas System, Neal Smatresk, and Shannon Goodman are collectively referred to as "Defendants" or "UNT" in this Response.

address and phone number) as Confidential and allowing disclosure to UNT counsel and related staff, UNT in-house counsel, experts or consultants, and designated UNT employees reasonably necessary for UNT's defense.

## I.   Relevant Factual Background

It is Plaintiff's burden to establish the elements of constitutional standing and invoke this court's jurisdiction in this case. Contrary to YCT's assertion[2] at page 2 of it motion—and as noted by the Court in its October 28, 2021 order[3]—YCT is required to present evidence to support its allegations that specific members of its organization have standing in their own right in order to maintain representational standing.[4] Accordingly, UNT has served written discovery requesting YCT to identify its members and produce information and evidence relating to its members' residency status and alleged damages. *See* Dkt. No. 44-2 (Defendants' First Interrogatories and Requests for Production). To date, Plaintiff has declined to produce this information. *See* **Def. Ex. A** (Plaintiff's Responses to Defendants' First Interrogatories) and **Def. Ex. B** (Plaintiff's Responses to Defendants' First Requests for Production).

Specifically, as relevant to Plaintiff's motion, YCT has objected to Defendants' request to identify "each of the current members of YCT's University of North Texas Chapter, including full name, mailing address(es) (current and permanent), email address, telephone number, dates of attendance, expected graduation date, Texas residency status, and (if not Texas) state of permanent residence." Exhibit A at 3 (Interrogatory No. 2). YCT has also objected to UNT's request to "[p]roduce all documents and communications constituting a membership list and/or directory

---

[2] In addition, contrary to YCT's statement at page 2 of its motion, UNT has and continues to dispute that any individual UNT official—including the named officials in this suit—"apply" Texas Education Code § 54.051(d) for purposes of an *Ex parte Young* analysis and continues to reserve its rights to develop this argument in full in its summary judgment briefing.
[3] *See* Dkt. No. 34 at 7.
[4] *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (requiring, at the merits stage, that an organization identify members who have been injured).

Case 4:20-cv-00973-SDJ   Document 46   Filed 12/15/21   Page 3 of 12 PageID #: 687

information for all current members of YCT's University of North Texas Chapter." Exhibit B at 3–4 (RFP. No. 4). To justify its objection, YCT conclusory stated that these requests are "unduly broad, overly burdensome harassing, irrelevant, and not tailored to the needs of the case." Exhibit A at 3 (Interrogatory No. 2); Exhibit B at 3–4 (RFP. No. 4). YCT further states that UNTs request "attempts to solicit private membership information in violation [of] YCT's First Amendment Rights, and no response is required," and thus will only "produce the far more limited information necessary to establish standing under a protective order appropriate to this case." *Id.*

YCT asserts that UNT's written discovery requests "greatly exceed the needs of this case, violate the First Amendment, and would put YCT members at risk." Yet, the identity and residency status of YCT's members is critical to determine whether these alleged members have a true case or controversy sufficient to confer constitutional standing in this case. Further, despite YCT's claims that its members fear the discovery of their identity, many YCT members publicly identify themselves and their affiliation with YCT on social media including Facebook, Instagram and Twitter. Notably, YCT's sweeping allegations that YCT members have been "threatened" by members of the public are in fact limited only to a single individual—former UNT Chapter President Kelly Neidert—who has repeatedly engaged publicly regarding her affiliation with YCT on social media and even on national news media.[5]

---

[5] *See, e.g.*, https://www.facebook.com/YCTUNT/. Neidert has also not been identified as a member with non-resident status.

3



Further, YCT's claim that the President Smatresk is "investigating" the organization is demonstrably false. President Smatresk testified during his deposition:

> Q: Have there ever been official steps to look in to the conduct of either the organization or members that organization?
> A: Not by me.
>
> . . .
>
> Q: So you – you're testifying that you're not aware of any investigation in to YCT?
> A: Not official investigations.[6]

UNT engaged in good faith to attempt to negotiate a limited protective order which would have kept confidential any members' personal contact information, such as phone numbers and addresses—so long as the individuals' residency status remained unsealed.[7] Again, YCT members' residency status goes to the core of this case and UNT's defense that YCT's members do not meet Article III's injury-in-fact requirement to seek preemption of Texas' statutory tuition regime. Plaintiff's demand that the identities of its members be withheld from UNT officials, including the named Defendants and UNT's in-house counsel, is patently unnecessary—and unsupported by any law or evidence.

---

[6] Exhibit C (Deposition of N. Smatresk) at 26: 13–16.
[7] *See* Dkt. No. 44-4 (UNT's Proposed Revisions to Draft Joint Agreed Protective Order).

## II.     Response to Plaintiff's Motion for Protective Order

### A.     Legal Standard for Protective Orders

"A party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal." *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 683–84 (5th Cir. 1985) (citations omitted). Accordingly, under the Federal Rules of Civil Procedure, the party requesting a protective order has the burden of showing good cause "through a particular and specific demonstration of fact." *Id.* (citing Fed. R. Civ. P. 26(c)); *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (citations omitted). The moving party must "show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra*, 134 F.3d at 306 (citations omitted). The Fifth Circuit has admonished that "a district court may not grant a protective order solely on the basis of " 'stereotyped and conclusory statements.' " *Id.* (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).[8]

### B.     YCT's has Failed to Establish a First Amendment Right to Privacy.

YCT's reliance upon the First Amendment's "exacting scrutiny" standard is based upon a misreading of cases dealing with the associational privilege (*i.e.*, the freedom of association), which "originated in an entirely different context from the context within which this litigation originated"[9]—specifically, state statutory or regulatory membership disclosure regimes. *See* Pl.

---

[8] Because YCT has also asserted that UNT's requests for identifying information about its members may not be relevant, UNT also notes that generally, a party may obtain discovery of any nonprivileged matter "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *PA Advisors, LLC v. Google, Inc.*, No. 2:07-CV-480 DF, 2009 WL 10741631, at *2 (E.D. Tex. Oct. 8, 2009). The definition of relevant information in Rule 26(b)(1) is broad, and relevant information need not be admissible at the trial if the discovery is reasonably calculated to lead to the discovery of admissible evidence. The phrase "relevant to any party's claim or defense" is also defined expansively in Local Rule CV-26(d). UNT does not believe that there is a genuine dispute as to the relevance of its requests for membership information at issue in Plaintiff's motion.

[9] *See Int'l Soc. for Krishna Consciousness of Houston, Inc. v. City of Houston, Tex.*, 689 F.2d 541, 556 (5th Cir. 1982).

5

Mot. at 5 (citing *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021) (holding that associational privilege invalidated California regulation requiring disclosure of charity donor information to Attorney General) and *NAACP v. Alabama*, 357 U.S. 449 (1958) (recognizing associational privilege and barring Alabama from requiring compliance with corporate registration and membership disclosure requirements)); *see also Familias Unidas v. Briscoe*, 619 F.2d 391, 399 (5th Cir. 1980) ("Even when related to an overriding, legitimate state purpose, <u>statutory disclosure requirements</u> will survive this exacting scrutiny only if drawn with sufficiently narrow specificity to avoid impinging more broadly upon First Amendment liberties than is absolutely necessary.") (emphasis added).

Instead, where (as here) an organization affirmatively seeks to establish a federal court's jurisdiction on behalf of its members, the burden falls on the organization to make a *prima facie* showing that the associational privilege applies. *See, e.g.*, *Bright Response, LLC v. Google Inc.*, No. 2:07CV371, 2009 WL 10741629, at *1 (E.D. Tex. Sept. 29, 2009). The party asserting the privilege must show there is a reasonable probability that compelling disclosure will lead to true threats, such as physical coercion, bodily harm, economic harm or reprisal, or loss of employment. *Buckley v. Valeo*, 424 U.S. 1, 74 (1975); *PA Advisors, LLC v. Google, Inc.*, No. 2:07-CV-480 DF, 2009 WL 10741631, at *2 (E.D. Tex. Oct. 8, 2009). Accordingly, "in order to make a prima facie showing that the organization's internal associational activities are protected," YCT must demonstrate:

> (1) that a reasonable probability exists that compelled disclosure of the information sought; (2) will adversely affect the organization's ability to advocate its beliefs; (3) causing active members to withdraw from the organization or dissuading prospective members from joining the organization; (4) because of a fear that exposure of their beliefs will subject them to threats, harassment, or reprisal.

*Bright Response*, 2009 WL 10741629, at *2 (quoting *Wyoming v. United States Dep't of Agric.*, 239 F. Supp. 2d 1219, 1237 (D. Wyo. 2002), *vacated as moot*, 414 F.3d 1207 (10th Cir. 2005)).

To support its claim to associational privilege, Plaintiff must attach competent and compelling evidence in support of its contention that the requested discovery burdens the associational activities of YCT. *Alabama State Fed'n of Tchrs., AFL-CIO v. James*, 656 F.2d 193, 197 (5th Cir. 1981); *see also Buckley v. Valeo*, 424 U.S. 1, 71–72 (1976) (holding that minor parties, who challenged campaign contribution disclosure statutes as burdening their associational rights, must introduce some evidence of an actual burden to gain exemption from disclosure laws); *c.f. N.A.A.C.P. v. Alabama*, 357 U.S. at 462 (recognizing associational privilege where adverse effect of forced disclosure on associational rights was supported by "an uncontroverted showing that on past occasions revelation of the identity of its rank and file members has exposed those members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility").

Here, Plaintiff has failed to meet its *prima facie* burden. As an initial matter, there is no evidence of a "decline" in YCT's "organizational participation in the face of the threat of public disclosure of its membership." *C.f. Familias Unidas*, 619 F.2d at 399. Merely pointing to a handful of social media posts in which members of the public express outrage or disapproval for an organization's policy positions or advocacy actions is insufficient to meet this standard. Further, YCT cannot claim the protection of the associational privilege when its own public actions disclose its membership.[10]

---

[10] *See, e.g.*, https://www.facebook.com/YCTUNT/; https://twitter.com/YctUnt?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor; https://www.instagram.com/unt.yct/?hl=en.

Plaintiffs rely on one tweet in which an anonymous person replies to Ms. Neidert stating "don't come back to campus if you value your safety." Dkt. No. 44 at 3. Notably, though, there is no evidence that Ms. Neidert reported this information to the University, requested an investigation or intervention, or otherwise indicated were a credible threat against her. To the contrary, Ms. Neidiert continued to banter and make light of the "threats," which included creating t-shirts responding to an anonymous Twitter user's claim to be a "witch" and have the power to "hex" members:



In addition, there is no legitimate evidence that disclosure of YCT's membership information to select UNT officials—including the named Defendants, employees within the

University and System Office of General Counsel, and select employees within the University's divisions of admissions and student affairs—for the purpose of preparing UNT's defense in this litigation would result in threats, harassment, or reprisals. YCT's citation to a single tweet by President Smatresk responding that the University would "look[] into" a students' allegations of feeling "unsafe and harassed" by a student organization's activities cannot be read as a threat or harassment by any reasonable standard. And President Smatresk confirmed that he had not authorized and was not aware of any official investigations into YCT's activities on UNT's campus. *See* Def. Ex. C.

Additionally, given the context of this case involving students and employees of an institution of higher education, it's worth noting that general "directory information" is not protected under the Family Educational Records Protection Act ("FERPA") and is readily available to the public absent a specific objection. *See* 20 U.S. Code §§ 1232g(b)(1) (excluding "directory information" from the definition of educational records prohibited from public disclosure under FERPA), (a)(5)(A) (defining "directory information" as inclusive of "the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student") (emphasis added). As such, the information that YCT seeks to protect is not confidential.

### IV.     Conclusion

As a final note, it bears noting that there is tension between the rationales underlying the associational privilege and the presumption of openness and transparency in the federal courts, which require careful balance. As Judge Willett recently explained:

> The presumption of openness is Law 101: "The public's right of access to judicial records is a fundamental element of the rule of law." Openness is also Civics 101. The Constitution's first three words make clear that ultimate sovereignty is wielded not by government but by the governed. And because "We the People" are not meant to be bystanders, the default expectation is transparency—that what happens in the halls of government happens in public view. Americans cannot keep a watchful eye, either in capitols or in courthouses, if they are wearing blindfolds.
>
> "Providing public access to judicial records is the duty and responsibility of the Judicial Branch." Why is this important? Because accessibility enhances legitimacy, the assurance that things are on the level. Article III courts are independent, and it is "particularly *because* they are independent" that the access presumption is so vital—it gives the federal judiciary "a measure of accountability," in turn giving the public "confidence in the administration of justice." Put simply, protecting the public's right of access is "important to maintaining the integrity and legitimacy of an independent Judicial Branch." And hopefully, more access to judicial records means more trust in judicial officers and more respect for judicial orders.
>
> Judicial records belong to the American people; they are public, not private, documents. Certainly, some cases involve sensitive information that, if disclosed, could endanger lives or threaten national security. But increasingly, courts are sealing documents in run-of-the-mill cases where the parties simply prefer to keep things under wraps.

*Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) (footnotes omitted). UNT believes that there is no basis for treating the requested information as Attorney Eyes Only and Plaintiff should be ordered to produce the same without protection. In the alternative, UNT requests the Court enter a limited protective order designating YCT members' personal identifying information (*i.e.*, full address and phone number) as Confidential and allowing disclosure to UNT counsel and related staff, UNT in-house counsel, experts or consultants, and designated UNT employees reasonably necessary for UNT's defense.

Date: December 15, 2021

Respectfully submitted,

By: */s/ Andy Taylor*
Andy Taylor
**ANDY TAYLOR & ASSOCIATES, P.C.**
Designated Lead Counsel
State Bar No. 19727600
ataylor@andytaylorlaw.com
2628 Highway 36 South #288
Brenham, Texas 77833
(713) 222-1817 – telephone
(713) 222-1855 – facsimile

-and-

**HUSCH BLACKWELL LLP**

By: */s/ Sandy Hellums-Gomez*
Sandy Hellums-Gomez
State Bar No. 2403670
Sandy.Gomez@HuschBlackwell.com
Jeff Nobles
State Bar No. 15053050
Jeff.Nobles@HuschBlackwell.com
600 Travis Street, Suite 2350
Houston, Texas 77002
(713) 647-6800 – main telephone
(713) 647-6884 – general facsimile

-and-

Scott Schneider
State Bar No. 24054023
Scott.Schneider@HuschBlackwell.com
Paige Duggins-Clay
State Bar No. 24105825
Paige.Duggins-Clay@HuschBlackwell.com
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456 – main telephone
(512) 479-1101 – general facsimile

**ATTORNEYS FOR THE DEFENDANTS UNIVERSITY OF NORTH TEXAS, THE UNIVERSITY OF NORTH TEXAS SYSTEM, NEAL SMATRESK, PRESIDENT OF THE**

11

**UNIVERSITY OF NORTH TEXAS, AND SHANNON GOODMAN, VICE PRESIDENT FOR ENROLLMENT OF THE UNIVERSITY OF NORTH TEXAS**

## CERTIFICATE OF SERVICE

I certify that a copy of this motion has been served upon the following on this the 15th day of December, 2021:

Robert Henneke
rhenneke@texaspolicy.com
Chance Weldon
cweldon@texaspolicy.com
Joseph Aaron Barnes, Sr.
abarnes@texaspolicy.com
Texas Public Policy Foundation
901 Congress Avenue
Austin, Texas 78701
***Attorneys for Plaintiff***

By: */s/ Sandy Hellums-Gomez*
　　Sandy Hellums-Gomez

12