# Exhibit C

## Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT
 2               SHERMAN DIVISION

 3  YOUNG CONSERVATIVES OF    )
    TEXAS FOUNDATION          )
 4                            )
                              )
 5  VS.                       )
                              )  CIVIL ACTION NO.
 6  THE UNIVERSITY OF NORTH   )  4:20-CV-973
    TEXAS, THE UNIVERSITY OF  )
 7  NORTH TEXAS SYSTEM, NEAL  )  HONORABLE SEAN D. JORDAN
    SMATRESK, PRESIDENT OF THE)
 8  UNIVERSITY OF NORTH TEXAS,)
    AND SHANNON GOODMAN, VICE )
 9  PRESIDENT FOR ENROLLMENT OF)
    THE UNIVERSITY OF NORTH   )
10  TEXAS                     )
11 ***********************************************************
12
13                   ORAL DEPOSITION
14                         OF
15                   DR. NEAL SMATRESK
16                   TAKEN VIA ZOOM
17                   NOVEMBER 22, 2021
18
19 ***********************************************************
20       ORAL DEPOSITION OF DR. NEAL SMATRESK, taken
21 remotely via the Zoom platform, produced as a Witness at
22 the instance of the Plaintiff, and duly sworn, was taken
23 in the above-styled and numbered cause on the 22nd day of
24 November, 2021, from 1:31 p.m. to 2:29 p.m., before JUDY
25 A. COUGHENOUR JOHNSON, Certified Shorthand Reporter No.
```

## Page 2

```
 1 1198, in and for the State of Texas, reported by machine
 2 shorthand at THE UNIVERSITY OF NORTH TEXAS, DENTON, TEXAS,
 3 the location of the Witness, pursuant to the Federal Rules
 4 of Civil Procedure and the provisions stated on the record
 5 or attached herein.
 6              *******
 7            APPEARANCES
 8 For Plaintiff:
 9    TEXAS PUBLIC POLICY FOUNDATION
      BY:  CHRISTIAN TOWNSEND
10       - AND -
         CHANCE WELDON
11    901 Congress Avenue
      Austin, TX  78701
12    PH: (512) 472-2700
      e-mail: Ctownsend@texaspolicy.com
13
   For Defendants:
14
      HUSCH BLACKWELL
15    BY: SANDY HELLUMS-GOMEZ
      600 Travis Street
16    Suite 2350
      Houston, TX  77002
17    PH: (713) 647-6800
      e-mail: Sandy.gomez@huschblackwell.com
18
       - AND -
19
      HUSCH BLACKWELL
20    BY: PAIGE DUGGINS-CLAY
      111 Congress Avenue
21    Suite 1400
      Austin, TX  78701
22    PH: (512) 472-5456
      e-mail: Paige.duggins-clay@huschblackwell.com
23
   Also Present:
24
      DOLLY GARCIA
25    RENALDO STOWERS
```

## Page 3

```
 1        APPEARANCES (CONTINUED)
 2 Reported By:
 3    JUDY A. COUGHENOUR & ASSOCIATES
      BY:  JUDY A. COUGHENOUR JOHNSON
 4    8109 Asmara Drive
      Austin, TX  78750
 5    PH:  (512) 346-4707
      e-mail: Jude@prodigy.net
 6
 7              *******
 8           STIPULATIONS
 9    The attorneys for all parties present stipulate and
10 agree to the following items:
11    THAT the deposition of DR. NEAL SMATRESK is taken
12 pursuant to Notice;
13    THAT by agreement of Counsel and all parties
14 present, the Reporter was allowed to swear in the Witness
15 remotely;
16    THAT all objections will be made pursuant to the
17 Federal Rules of Civil Procedure;
18    AND THAT the original transcript will be submitted
19 for signature to the Witness' attorney, SANDY
20 HELLUMS-GOMEZ, and that the Witness or the Witness'
21 attorney will return the signed transcript to JUDY A.
22 COUGHENOUR & ASSOCIATES within thirty days of the date the
23 transcript is provided to the Witness' attorney.  If not
24 returned, the Witness may be deemed to have waived the
25 right to make the changes, and an unsigned copy may be
```

## Page 4

```
 1 used as though signed.
 2             *******
 3             INDEX
 4 Appearances.......................... 2
 5 Stipulations......................... 3
 6 Exhibits............................. 4
 7 DR. NEAL SMATRESK
 8   Examination by Mr. Townsend....... 6
 9 Witness Changes and Corrections..... 51
10 Witness Signature................... 52
11 Court Reporter Certificate.......... 53
12             *******
13             EXHIBITS
14 EXHIBIT                       PAGE    PAGE
   NUMBER   DESCRIPTION          MARKED  REF'D
15 _____
16  1  Being an Office of the President
       2021-2022 Organizational Chart    50    11
17
    2  Being a document entitled 8 U.S.
18     Code 1623 - Limitation on
       eligibility for preferential
19     treatment of aliens not lawfully
       present on basis of residence
20     for higher education benefits     50    13
21  3  Being a document entitled 8 U.S.
       Code 1101 - Definitions           50    14
22
    4  Being a University of North Texas
23     Dreamers' Resource Guide          50    16
24  5  Being Tweets                      50    25
25
```

Page 5

```
              EXHIBITS (CONTINUED)
EXHIBIT                           PAGE    PAGE
  NUMBER   DESCRIPTION           MARKED   REF'D
_____
  6   Being an article entitled
      Democrats Declare War on
      Conservatives at University of
      North Texas, dated July 9, 2020    50    31
```

Page 6

1  THE REPORTER: My name is Judy Coughenour
2  Johnson, Judy A. Coughenour & Associates, 8109 Asmara
3  Drive, Austin, Texas.
4        Today's date is November 22, 2021. The
5  time is 1:31 p.m.
6        This is the oral deposition of Dr. Neal
7  Smatresk, and it is being conducted remotely, by agreement
8  of Counsel, with the Witness located at the University of
9  North Texas, Denton, Texas.
10       Will the Witness please raise your right
11 hand and be sworn?
12              * * * *
13
14       DR. NEAL SMATRESK
15 the Witness herein, having been first duly administered an
16 oath or affirmation, via Zoom, pursuant to the agreement
17 of Counsel, testified as follows:
18
19           EXAMINATION
20 QUESTIONS BY MR. TOWNSEND:
21       THE REPORTER: Thank you so much.
22       I have administered the oath, the Witness
23 having been identified to me by attestation of Counsel.
24       Would Counsel, and all other persons
25 present in the rooms, please identify yourselves, and your

Page 7

1  locations, for the record?
2        RENALDO STOWERS: My name is Renaldo
3  Stowers. I'm Senior Associate, General Counsel, for the
4  University of North Texas System.
5        DOLLY GARCIA: I am --
6        MR. TOWNSEND: My name is --
7        DOLLY GARCIA: Dolly Garcia --
8        MR. TOWNSEND: Oops.
9        (The Reporter indicated Ms. Garcia
10        could continue.)
11       DOLLY GARCIA: I am Dolly Garcia, Associate
12 General Counsel with the University of North Texas System.
13       MR. TOWNSEND: My name is Christian
14 Townsend. I represent Young Conservatives of Texas
15 Foundation. I'm in Austin, Texas.
16       In the room with me is Chance Weldon. He
17 also represents YCT, and he's also in Austin, Texas.
18       MS. HELLUMS-GOMEZ: I am Sandy
19 Hellums-Gomez. I'm a partner at Husch Blackwell, an
20 outside Counsel for the Defendants, and I am in Houston,
21 Texas.
22       MS. DUGGINS-CLAY: Good afternoon,
23 everyone.
24       Paige Duggins-Clay, Associate at Husch
25 Blackwell, outside Counsel for the UNT, Defendants, and I

Page 8

1  am in McKinney, Texas today.
2        THE REPORTER: And are there any
3  stipulations regarding this deposition or the transcript?
4        MS. HELLUMS-GOMEZ: Yes. As we stated
5  before, we would like a copy of the transcript for review
6  and signature.
7        (The Reporter indicated Mr. Townsend
8        could begin at any time.)
9        MR. TOWNSEND: Thank you.
10   Q  (Mr. Townsend) All right. Good afternoon.
11       My name is Christian Townsend. I'm with
12 the Texas Public Policy Foundation, and I represent the
13 Young Conservatives of Texas Foundation in this case.
14       Could you please state your name for the
15 record?
16   A  (The Witness) Neal Smatresk.
17   Q  Have you ever given a deposition before?
18   A  Yes.
19   Q  All right. Well, as I'm sure you're well aware,
20 the way things will go today, I'll ask you some questions,
21 and you must answer them truthfully, unless your attorney
22 tells you clearly and directly not to answer. Does that
23 sound clear?
24   A  Yep.
25   Q  If you don't understand any of my questions,

Page 25

1    A  I don't think I've ever asked to do that, except
2  for when I misspell something and delete a Tweet.
3    Q  Absolutely.
4        But - and you can.  Correct?
5    A  Yes.
6    Q  All right.  This will be - I'd like to introduce
7  Exhibit 5.  I'm going to start sharing my screen.  Can you
8  see this?
9    A  Yep.
10   Q  And this is your Twitter account.  Correct?
11   A  It is.
12   Q  And it's the official Twitter of the University
13 of North Texas President?
14   A  Correct.
15   Q  And that's your name at the top?
16   A  Yes.
17   Q  So a student who sees these Tweets would assume
18 that they come from you?
19   A  Yes.
20   Q  I'm going to scroll down to Page 2 of the
21 exhibit.
22       All right.  Is this from - this reply from
23 your Twitter account?
24   A  Yep.
25   Q  Can you tell me what you meant by this reply?

Page 26

1    A  That a student, who said they didn't feel good,
2  Tweeted, and I said, "We're looking in to it."
3        I probably forwarded the Tweet to Student
4  Affairs.
5    Q  All right.  And did UNT investigate this?
6    A  I can't recall.
7    Q  Do you know if there's ever been an
8  investigation against YCT?
9    A  An investigation?
10   Q  Um hum.
11   A  I don't - I'm not sure if you mean it in the
12 sense of EEOAA.  I don't know.
13   Q  Have there ever been official steps to look in
14 to the conduct of either the organization or members of
15 that organization?
16   A  Not by me.
17   Q  Okay.
18   A  And I don't - I - I - I'm actually not sure if
19 anyone else has, but I don't think so.
20   Q  So you - you're testifying that you're not aware
21 of any investigations in to YCT?
22   A  Not official investigations.
23   Q  What's the difference between official and
24 unofficial investigations?
25   A  When you say, "We're looking in to it," and it

Page 27

1  goes to Student Affairs, many different things can happen.
2    Q  What are those?  Can you describe some of those
3  things?
4    A  It can go to the Dean of Students, who then
5  looks in to it.
6        We get complaints all the time, on social
7  media, and so I generally refer them to Student Affairs.
8  Sometimes I refer them to University Branding and
9  Marketing.
10   Q  Do you often --
11       (The Reporter asked for a repeat of the
12        last part of the Witness' answer.)
13   A  (The Witness)  University Branding and
14 Marketing.
15   Q  (Mr. Townsend)  Do you often reply to Tweets,
16 telling informed people that they are - well, you - you
17 are looking in to this?
18   A  Not a lot.
19   Q  Have you ever?
20   A  Oh.
21   Q  Besides this instance?
22   A  Probably.
23   Q  Can you recall a time --
24   A  I can't --
25   Q  -- that you --

Page 28

1    A  -- recall.
2    Q  -- did?
3    A  I can't recall the last time I did it.
4    Q  All right.  Do you think it's reasonable for a
5  YCT student to see this Tweet, and to think that YCT
6  members are being investigated?
7        MS. HELLUMS-GOMEZ:  Objection.  Form.
8    A  (The Witness)  No.
9    Q  (Mr. Townsend)  Why not?
10   A  When you say you're looking in to something, it
11 doesn't imply a full investigation.
12   Q  But you described that there were official and
13 unofficial investigations.  Correct?
14   A  I - I said I referred it to Student Affairs, in
15 most likelihood.  And I actually couldn't recall.
16       If someone says something that I believe is
17 illegal, or hate speech, or something like that, I might
18 refer it to EEOAA, or even to the police.
19       But in this case, I doubt that I did either
20 of those things.
21   Q  Do you know what you did do in this case?
22   A  No.  I told you I'm not sure.  I probably
23 referred it to Student Affairs.
24   Q  And just to clarify, when you referred something
25 to Student Affairs, what happens?  Or what steps can

Page 29

1  happen?
2  A  They look in to the situation, as best they can.
3  Q  Can you describe how?
4  A  No.
5  Q  No?
6  A  No. I --
7  Q  You don't --
8  A  -- don't know how.
9  Q  -- know how?
10 A  I don't know how.
11    If it's something egregious, it would go to
12 EEOAA, or a Title IX investigation.
13 Q  And when you say you refer something to Student
14 Affairs, that's Elizabeth With oversees that?
15 A  Yes.
16 Q  And you testified earlier that you oversee
17 Elizabeth With. Correct?
18 A  That's correct.
19 Q  But you don't know what happens when you refer
20 someone to Student Affairs?
21    MS. HELLUMS-GOMEZ: Objection. Form.
22 A  (The Witness) Different things happen.
23 Sometimes I get an answer, sometimes I don't.
24 Q  (Mr. Townsend) Can you describe some of those
25 different things for us?

Page 30

1  A  If a student - and - and I'm speculating now, so
2  I don't really see the value of this.
3  Q  Well, I'm just asking what are different
4  measures that Student Affairs can take, once they get a
5  referral from yourself?
6  A  They can refer it to the Dean of Students for
7  followup, or they can refer it to EEOAA, or they can refer
8  it to the police.
9  Q  So just to clarify, there are three --
10 A  They --
11 Q  -- actual --
12 A  -- or they could decide to do nothing.
13 Q  All right. So just to clarify, there are four
14 actions that Student Affairs can do - take, when they
15 receive a - a referral from you?
16 A  Well, I would - I would say there's two. They
17 can act on it or not.
18 Q  All right. And if they do choose to act on it,
19 the things that they can do are --?
20 A  Refer to the police, refer to EEOAA, or refer to
21 the Dean of Students' office.
22 Q  And if they are referred to the Dean of
23 Students' office, could students get in trouble for that?
24    MS. HELLUMS-GOMEZ: Objection. Form.
25 A  (The Witness) I don't know.

Page 31

1  Q  (Mr. Townsend) Could a student be expelled?
2  A  Again, I don't know.
3  Q  Could a student be interviewed?
4  A  Probably.
5  Q  All right. So what is the point of you stating
6  that you're looking in to this and were referring it to
7  Student Affairs?
8     MS. HELLUMS-GOMEZ: Objection. Form.
9  A  (The Witness) To let a student, who says they
10 feel unsafe and harassed, know that someone will review
11 this.
12 Q  (Mr. Townsend) But not you, yourself?
13 A  Nope.
14 Q  But you did testify earlier that you oversee the
15 person who does review it?
16 A  One of them.
17 Q  All right. I'm going to introduce - this will
18 be --
19    MR. TOWNSEND: Is this Exhibit 6 we're on?
20    (The Reporter indicated that it would be.)
21 Q  (Mr. Townsend) Yes. I'd like to introduce
22 Exhibit 6.
23    Have you seen this article before?
24 A  (The Witness) No.
25 Q  Okay.

Page 32

1  A  Not that I recall.
2  Q  All right. I'm just going to walk through a
3  couple of things in this article.
4     First it says it's from July 9th, 2020.
5  Correct?
6  A  Yep.
7  Q  All right. I'm going to scroll down to Page 2.
8     Can you familiarize yourself with this
9  paragraph, starting with, "The UNT chapter"?
10 A  I read it.
11 Q  Great.
12    And that paragraph says that Kelly Neidert
13 was last - the previous year's chapter's chairman.
14 A  That's what the sentence says.
15 Q  Great.
16    So that would have been 2019. Correct?
17 A  Well, I don't know the date. I think --
18 Q  But it would have been the year before this
19 article was published?
20 A  I don't know.
21    MS. HELLUMS-GOMEZ: Objection. Form.
22 A  (The Witness) I don't know.
23 Q  (Mr. Townsend) Do you know if Kelly Neidert was
24 the chapter's chairman at UNT? Or YCT at UNT?
25 A  I assume from this she was, but I don't know.