IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| YOUNG CONSERVATIVES OF TEXAS FOUNDATION §<br>§<br>*Plaintiff*, §<br>§<br>v. §<br>§<br>§<br>THE UNIVERSITY OF NORTH TEXAS, THE §<br>UNIVERSITY OF NORTH TEXAS SYSTEM, §<br>NEAL SMATRESK, PRESIDENT OF THE §<br>UNIVERSITY OF NORTH TEXAS and §<br>SHANNON GOODMAN, VICE PRESIDENT §<br>FOR ENROLLMENT OF THE UNIVERSITY §<br>OF NORTH TEXAS; §<br>*Defendants*. § | CIVIL ACTION NO. 4:20-CV-973<br><br>JUDGE SEAN D. JORDAN |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**

Plaintiff, the Young Conservatives of Texas Foundation (YCT) files this reply in support of its motion for protective order against Defendants (collectively, UNT).

**INTRODUCTION**

UNT seeks the name and contact information of *every* UNT student associated with YCT. When the government demands membership lists in discovery, it must have a good reason, and it must tailor its requests to go no further than the needs of the case. *See Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021). As explained in YCT's motion, UNT's broad sweeping discovery requests fall short of this standard.

UNT's response tellingly does not argue that its unlimited requests for UNT's membership information meets prevailing First Amendment standards by being narrowly tailored to the needs of this case. For example, UNT does not explain why it needs more than one student name, why

that name must be public, or why that name must be disclosed openly to various UNT staff rather than just the attorneys on the case. *See, e.g., Christ Covenant Church v. Town of Sw. Ranches*, No. 07-60516-CIV, 2008 U.S. Dist. LEXIS 49483, at *33-34 (S.D. Fla. June 29, 2008) (requiring that disclosure of membership information be limited to counsel eyes only.)  Instead, UNT makes four radical claims that should be rejected by this Court.

## ARGUMENT

First, UNT claims that the holdings of *NAACP v. Alabama*, 357 U.S. 449 (1958) and its progeny, including *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021), are limited to statutory disclosure regimes and do not apply in the litigation context. Dkt # 46, p 5-6. But this is flatly refuted by binding precedent. *See Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 631 (5th Cir. 1980) ("discovery of the membership list…is governed by the principles enunciated in *NAACP v. Alabama*, and its trailing decisions.") (citation omitted). Indeed, *NAACP v. Alabama* itself arose in response to a discovery request served in litigation. *NAACP*, 357 U.S. at 453.

Second, UNT argues that YCT members lack First Amendment rights, because they have not established that they have been sufficiently threatened or chilled for their association with YCT. Dkt # 7-8. But the Supreme Court recently held that a plaintiff need not show they were *actually* chilled or "*will be* subjected to harassment and reprisals" in order for a compelled disclosure to trigger exacting scrutiny. *Ams. for Prosperity Found.*, 141 S. Ct., at 2388, 2389 (emphasis added).  "Exacting scrutiny is triggered by 'state action which *may* have the effect of

curtailing the freedom to associate,' and by the "*possible* deterrent effect" of disclosure. *Id*. at 2388. (emphasis in original).[1]

Moreover, even if some threat were required, that burden has been met. YCT members are routinely harassed[2], have been threatened with physical violence[3], have been investigated by the university[4], and were previously dissolved at UNT's campus by faculty, before recently being reinstated[5]. UNT attempts to downplay these threats, claiming that the President of UNT *could not recall* an "official" investigation of YCT. Dkt # 46, p. 9. But this is sophistry. After his tweet claiming he was "looking into" YCT's advocacy, UNT's President had a "closed-door" meeting with left-wing student groups who claimed to be offended by YCT's speech.[6] He later testified that he generally refers such matters to Student Affairs for further investigation. Dkt # 46-3, p. 4. That investigation might involve the Dean of Students, a Title IX investigation, or even the police. *Id*. at p. 5. At a minimum, the President conceded that it could "probably" involve interviewing

---

[1] In support of its alternative standard, UNT points to unpublished and vacated district court opinions from more than a decade ago. Dkt # 46, p. 6-7. But those non-binding cases are distinguishable, and more importantly, any persuasive authority they may have had was eliminated by the Supreme Court's opinion in *Ams. for Prosperity Found.*, 141 S. Ct., at 2388, 2389.

[2] Adam Goldstein, *Dear University of North Texas: The 'Heckler's veto' is Not a Good Thing*, FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION, (Nov. 5, 2020), https://www.thefire.org/dear-university-of-north-texas-the-hecklers-veto-is-not-a-good-thing/

[3] Robert Montoya, *Is UNT a Hostile Learning Environment for Conservatives?*, TEXAS SCORECARD, (July 28, 2020), https://texasscorecard.com/metroplex/is-unt-a-hostile-learning-environment-for-conservatives/

[4] Ilena Garnard, *Petition Seeks to Remove YCT From Campus Citing Alleged Racism, Homophobia, Transphobia*, NORTH TEXAS DAILY (July 16, 2020), https://www.ntdaily.com/petition-seeks-to-remove-yct-from-campus-citing-alleged-racism-homophobia-transphobia/

[5] *Id*.

[6] https://www.ntdaily.com/petition-seeks-to-remove-yct-from-campus-citing-alleged-racism-homophobia-transphobia/

YCT's members. *Id*. An eighteen-year-old college student subject to such an inquisition would take little comfort in the fact that it is labeled "unofficial."

Third, UNT claims that *all* YCT members have waived their First Amendment rights because *some* YCT members have voluntarily made their membership public. Dkt # 46, p. 3. For example, YCT has a facebook page that some members have joined, and some YCT members have been interviewed by the press. *Id*. But this same line of reasoning was put forward by the dissent and soundly rejected in *Ams. for Prosperity Found.*, 141 S. Ct. at 2388. As the Court explained, "[i]t is *irrelevant*, moreover, that some donors might not mind—or might even prefer—the disclosure of their identities to the State. The disclosure requirement 'creates an unnecessary risk of chilling' in violation of the First Amendment indiscriminately sweeping up the information of *every* major donor…" *Id*. (citations omitted, emphasis added) This makes sense. At the time *NAACP* was decided, for example, Thurgood Marshall had a very public profile as a member of the NAACP. But Mr. Marshall's choice to be a public advocate did not mean that the NAACP and all its members waived First Amendment protections. Nor did the public profiles of various Sierra Club members make its membership lists discoverable in *Sierra Club v. Energy Future Holdings Corp.*, No. 5:10CV156, 2013 U.S. Dist. LEXIS 205931 (E.D. Tex. Dec. 30, 2013), even though the Sierra Club has a facebook page.[7]

Fourth, UNT claims that because UNT's Student Directory already contains the names of some students at UNT—thus allowing the public to know who attends the university—YCT's members have no interest in keeping their separate association with YCT private. Dkt # 46, p. 9. But there is a fundamental difference between a voluntary public disclosure that someone attends

---

[7] https://www.facebook.com/SierraClub

a university, and an involuntary public disclosure that someone is a member of a political advocacy group. By UNT's rationale, the fact that phone books were available in 1958—disclosing the name and address of everyone in Alabama—would mean that NAACP's members had no First Amendment interest in keeping their association with the NAACP private.

Finally, UNT mistakenly relies on *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) for the proposition that a protective order in this case would be contrary to our system of open courts. But *Binh Hoa Le* is irrelevant here. YCT is not asking that the pleadings in this case be sealed, or that the parties be kept secret. YCT is the plaintiff in this case, and its involvement is public. YCT merely seeks the same protection in discovery given to *every other* advocacy group under the First Amendment —namely, that the identity of its members (*none of whom are parties*) be kept private, unless the request is tailored to a sufficient need.

## CONCLUSION

To establish standing in this case, YCT need only provide evidence that at least one of its members is subject to Tex. Educ. Code § 54.051(d). *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). To meet this burden, YCT has provided the *uncontroverted* testimony of YCT's chairman and has offered to provide the name of one additional member for which § 54.051(d) applies, subject to a proposed protective order. That information is more than sufficient to establish standing. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

But this motion is not about whether YCT has produced sufficient evidence to establish standing. If YCT fails to establish standing, UNT may move and prevail on summary judgment. This motion is about what *additional* information UNT may demand from YCT in discovery. On that issue, the First Amendment is clear. YCT's motion for protective order should be granted.

        Respectfully submitted,

        */s/Chance Weldon*
        ROBERT HENNEKE
        Texas Bar No. 24046058
        rhenneke@texaspolicy.com
        CHANCE WELDON
        Texas Bar No. 24076767
        cweldon@texaspolicy.com
        CHRISTIAN TOWNSEND
        ctownsend@texaspolicy.com
        Maryland Bar No. 2012180144
        TEXAS PUBLIC POLICY FOUNDATION
        901 Congress Avenue
        Austin, Texas 78701
        Telephone:   (512) 472-2700
        Facsimile:    (512) 472-2728

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on December 17, 2021, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

        */s/Chance Weldon*
        CHANCE WELDON