UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| YOUNG CONSERVATIVES OF TEXAS FOUNDATION | § § § | |
| v. | § | CIVIL NO. 4:20-CV-973-SDJ |
| | § | |
| THE UNIVERSITY OF NORTH TEXAS, ET AL. | § § § | |

## ORDER

Before the Court is Plaintiff Young Conservatives of Texas Foundation's ("Young Conservatives") Motion for Protective Order. (Dkt. #44). Defendants, which include the University of North Texas, the University of North Texas System, and the University's president and vice president for enrollment (collectively, "UNT"), oppose the requested relief. (Dkt #46). The Court, having considered the motion, the subsequent briefing, and the applicable law, **GRANTS** the motion.

## I. BACKGROUND

In this suit for declaratory and injunctive relief, Young Conservatives challenges the constitutionality of a Texas Education Code provision that allegedly requires United States citizens to pay a higher rate of college tuition than some aliens not lawfully present in the country. Young Conservatives claims that this statutory provision conflicts with, and is therefore preempted by, federal law. But today's quarrel is about discovery, not preemption.

The current discovery dispute centers around the identity of Young Conservatives' members. UNT seeks the identity and contact information of "each of

1

the current members of YCT's University of North Texas Chapter." (Dkt. #44-2 at 7). Young Conservatives opposes the discovery request and has moved for a protective order under Federal Rule of Civil Procedure 26(c). According to Young Conservatives, unprotected disclosure of its membership information would infringe on its members' First Amendment rights to association. On that basis, Young Conservatives asks the Court to enter a protective order that would limit disclosure of the identity of its members to UNT's outside counsel in this case. (Dkt. #44-5).

UNT responds that the Court should deny the motion because Young Conservatives has failed to show that its members' identifying information is protected from discovery under the First Amendment. (Dkt. #46). Alternatively, UNT contends that the Court should enter a more limited protective order that would designate the members' personal identifying information (i.e., full address and phone number) as confidential and allow disclosure to "UNT counsel and related staff, UNT in-house counsel, experts or consultants, and designated UNT employees reasonably necessary for UNT's defense." (Dkt. #46 at 1–2).

## II. LEGAL STANDARD

The scope of discovery is broad. Parties generally "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). And information "need not be admissible in evidence to be discoverable." *Id.*

That the scope of permissible discovery is broad, however, does not mean that it is unbounded. Even if information sought is relevant and proportional, a party

opposing discovery may withhold the information based on an applicable privilege. FED. R. CIV. P. 26(b)(5)(A). A party from whom discovery is sought may also move for a protective order. FED. R. CIV. P. 26(c)(1).

Under Rule 26(c), a district court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). The movant bears the burden of showing that a protective order is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (quotation omitted). The district court has broad discretion in determining whether to grant a motion for a protective order because it is "in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); *see also Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

### III. DISCUSSION

Young Conservatives argues that its membership information is protected by the First Amendment and that an order limiting the disclosure of such information is warranted. The Court agrees.

The First Amendment's right to freedom of association provides a privilege that protects certain associational activities from discovery. *NAACP v. Alabama*, 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). In *NAACP v. Alabama*, the Supreme Court held that the State of Alabama could not compel the NAACP to

3

disclose in discovery a membership list which included the identities of its rank-and-file members. *Id.* at 466. The Supreme Court explained that the First Amendment associational privilege applies when a discovery order "entail[s] the likelihood of a substantial restraint upon the . . . right to freedom of association." *Id.* at 462.

Based on the principles articulated in *NAACP v. Alabama*, the Fifth Circuit has likewise recognized a First Amendment privilege when discovery requests implicate associational rights. *See Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 631–32 (5th Cir. 1980) (reversing order dismissing case based on organization's refusal to release the names of its members who were not publicly known); *Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976) (reversing district court decision to dismiss case based on association's refusal to disclose its membership information). The privilege is not, however, absolute. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623, 104 S.Ct. 3244, 3252, 82 L.Ed. 2d 462 (1984) ("The right to associate for expressive purposes is not . . . absolute."). To determine whether the privilege applies, courts typically apply a burden-shifting test that balances the interest in disclosure against the burden imposed on associational rights. *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160–61 (9th Cir. 2010); *Bright Response, LLC v. Google Inc.*, No. 2:07CV371, 2009 WL 10741629, at *1 (E.D. Tex. Sept. 29, 2009); *Nat. Res. Def. Council, Inc v. Ill. Power Res.*, LLC, No. 13-CV-1181, 2015 WL 4910204, at *2 (C.D. Ill. Aug. 17, 2015); *Christ Covenant Church v. Town of Sw. Ranches*, No. 07-60516-CIV, 2008 WL 2686860, at *6–8 (S.D. Fla. June 29, 2008). Although it does not appear that the Fifth Circuit has adopted a specific framework for evaluating a claim of

associational privilege, it has suggested that a balancing test is appropriate in this context. *See Hastings*, 615 F.2d at 631–32; *Familias Unidas*, 544 F.2d at 192.

Applying the burden-shifting approach, which UNT relies on here, courts first look at whether the party opposing discovery has made a prima facie showing of arguable First Amendment infringement. *Perry*, 591 F.3d at 1160; *Bright Response, LLC*, 2009 WL 10741629, at *1. To be clear, a concrete showing of infringement is unnecessary. *Christ Covenant Church*, 2008 WL 2686860, at *6 (describing the burden as "light"); *see also Americans for Prosperity Found. v. Bonta*, 141 S.Ct. 2373, 2388, 210 L.Ed.2d 716 (2021) ("Exacting scrutiny is triggered by 'state action which *may* have the effect of curtailing the freedom to associate,' and by the '*possible* deterrent effect' of disclosure." (quoting *NAACP*, 357 U.S. at 460–461))). Rather, the party asserting the associational privilege need only demonstrate an objectively reasonable probability that disclosure of the information may expose its "members to economic reprisal, loss of employment, threat of physical coercion, [or] other manifestations of public hostility." *Hastings*, 615 F.2d at 631 (quoting *NAACP*, 357 U.S. at 462); *see also Perr*y, 591 F.3d at 1160–61. The requisite proof may include, for example, "specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself." *Buckley v. Valeo*, 424 U.S. 1, 74, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam).

If the prima facie showing is made, the burden then shifts to the party seeking discovery to show "an interest in obtaining the disclosures . . . which is sufficient to justify the deterrent effect which . . . the[] disclosures may well have." *See Hastings*,

615 F.2d at 632 (quotation omitted). At this step, the potential chilling effect on associational rights is balanced against the significance of the interest in disclosure to determine whether that interest outweighs the harm. *See Familias Unidas*, 544 F.2d at 192; *Perry*, 591 at 1161. Courts engaging in this balancing test have considered, among other things, the following factors: (1) the importance of the information sought to the issues in the case, (2) the availability of the information from alternative sources, (3) the substantiality of the First Amendment interests at stake, and (4) whether the request is carefully tailored to avoid unnecessary interference with protected activities. *Perry*, 591 at 1161; *see also Christ Covenant Church*, 2008 WL 2686860, at *8 (listing factors and collecting cases).

Here, Young Conservatives has made a prima facie showing of arguable First Amendment infringement by demonstrating an objectively reasonable probability that disclosure of its members' names and contact information will chill associational rights. Young Conservatives has pointed to specific evidence that members of its University of North Texas Chapter have been harassed and threatened with physical violence due to their associational affiliation. (Dkt. #44 at 2–3) ("[D]on't come back to campus if you value your safety."); (Dkt. #47 at 3). Members of the public and opposition groups have also expressed their unhappiness with Young Conservatives' policy positions and advocacy actions, urging the University to ban Young Conservatives from campus. (Dkt. #44 at 3–4); (Dkt. #47 at 3).

Such evidence is consistent with the self-evident conclusion that UNT's discovery request implicates important First Amendment interests. True, the chilling

effect here may not be as serious as that involved in cases such as *NAACP v. Alabama*. *See* 357 U.S. at 462. But neither is it insubstantial. *See Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Fed. Election Comm'n*, 333 F.3d 168, 176 (D.C. Cir. 2003) ("Although we agree that the evidence in this case is far less compelling than the evidence presented in cases involving groups whose members had been subjected to violence, economic reprisals, and police or private harassment, that difference speaks to the strength of the First Amendment interests asserted, not to their existence." (citations omitted)). To the contrary, the evidence of hostility against Young Conservatives and its members gives rise to a reasonable inference that disclosure of the requested membership information could have a chilling effect on protected activities. *See Sierra Club v. Energy Future Holdings Corp.*, No. 5:10CV156, 2013 WL 12244352, at *3 (E.D. Tex. Dec. 30, 2013) (denying the defendants' motion to compel disclosure of the names and contact information of the plaintiff's members); *Christ Covenant Church*, 2008 WL 2686860, at *7 (finding evidence of hostility against plaintiff and its members was sufficient to make prima facie showing). Thus, the Court concludes that Young Conservatives has made a prima facie showing of potential First Amendment infringement.

Because Young Conservatives has shown arguable First Amendment infringement, the burden shifts to UNT to demonstrate a compelling need for the information that is sufficient to justify the potential chilling effect. *See Hastings*, 615 F.2d at 632; *Perry*, 591 at 1161. As Young Conservatives correctly points out, UNT has not even attempted to meet this burden. (Dkt. #47 at 1–2). UNT says, and the

Court agrees, that certain identifying information about Young Conservatives' members is relevant to the issue of associational standing under the broad Rule 26 standard. (Dkt. #46 at 3, 5 n.8); *accord* FED. R. CIV. P. 26(b)(1). But in this context, "[j]ustification that their identity would be admissible at trial is no justification at all." *See Familias Unidas*, 544 F.2d at 192.

UNT has not argued—let alone shown—that its interest in obtaining the names and contact information of Young Conservatives' members outweighs the potential chilling effect from such disclosure. Nor has UNT demonstrated that its discovery request is carefully tailored to avoid unnecessary interference with protected activities. *See Perry*, 591 at 1161; *Christ Covenant Church*, 2008 WL 2686860, at *11–12. For example, UNT offers no reason why it needs the names and contact information of *all* current members of Young Conservatives' University of North Texas Chapter rather than only those who are classified as nonresidents for tuition purposes (i.e., the standing members in this case). UNT also fails to explain why that information must either be disclosed without any protection or made available to various UNT officials and employees instead of only to its outside counsel. In other words, UNT has not shown a need for the information that is sufficient to justify the potential chilling effect that unprotected disclosure may have on the free exercise of the constitutionally protected right of association.

Given the circumstances of this case, a protective order limiting the disclosure of Young Conservatives' membership information to UNT's outside counsel will both accomplish UNT's purposes in this litigation and protect the associational rights at

8

stake. As the Court sees it, this ruling strikes a sensible balance between UNT's need to defend this lawsuit and Young Conservatives' desire to avoid the potentially adverse consequences of revealing information about its membership. *See Christ Covenant Church*, 2008 WL 2686860, at *12 (requiring that disclosure of membership information be limited to counsel eyes only); *Bright Response*, 2009 WL 10741629, at *2 (concluding that Google's lobbying activities were protected under the First Amendment and ordering that such information "shall be disclosed only to outside counsel for the plaintiff").

## IV. CONCLUSION

For the foregoing reasons, Young Conservatives' Motion for Protective Order, (Dkt. #44), is **GRANTED**. The Court will issue Young Conservatives' proposed protective order, (Dkt. #44-5), under separate order.

**So ORDERED and SIGNED this 11th day of January, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE