Page 1

```
1        IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT
2                 SHERMAN DIVISION

3  YOUNG CONSERVATIVES OF      )
   TEXAS FOUNDATION            )
4                              )
                              )
5  VS.                         )
                              )  CIVIL ACTION NO.
6  THE UNIVERSITY OF NORTH     )  4:20-CV-973
   TEXAS, THE UNIVERSITY OF    )
7  NORTH TEXAS SYSTEM, NEAL    )  HONORABLE SEAN D. JORDAN
   SMATRESK, PRESIDENT OF THE  )
8  UNIVERSITY OF NORTH TEXAS,  )
   AND SHANNON GOODMAN, VICE   )
9  PRESIDENT FOR ENROLLMENT OF )
   THE UNIVERSITY OF NORTH     )
10 TEXAS                       )

11 ***********************************************

12

13              ORAL DEPOSITION

14                    OF

15          SHANNON MICHAEL GOODMAN

16              TAKEN VIA ZOOM

17             NOVEMBER 12, 2021

18

19 ***********************************************

20      ORAL DEPOSITION OF SHANNON MICHAEL GOODMAN, taken

21 remotely via the Zoom platform, produced as a Witness at

22 the instance of the Plaintiff, and duly sworn, was taken

23 in the above-styled and numbered cause on the 12th day of

24 November, 2021, from 1:28 p.m. to 2:06 p.m., before JUDY

25 A. COUGHENOUR JOHNSON, Certified Shorthand Reporter No.
```

Page 2

```
1  1198, in and for the State of Texas, reported by machine
2  shorthand at THE UNIVERSITY OF NORTH TEXAS, DENTON, TEXAS,
3  the location of the Witness, pursuant to the Federal Rules
4  of Civil Procedure and the provisions stated on the record
5  or attached herein.
6      * * * * * * *
7           APPEARANCES
8  For Plaintiff:
9  TEXAS PUBLIC POLICY FOUNDATION
      BY:  CHANCE WELDON
10         - AND -
         CHRISTIAN TOWNSEND
11     901 Congress Avenue
      Austin, TX  78701
12     PH: (512) 472-2700
      e-mail: Cweldon@texaspolicy.com
13
   For Defendants:
14
      HUSCH BLACKWELL
15     BY:  SANDY HELLUMS-GOMEZ
         600 Travis Street
16         Suite 2350
         Houston, TX  77002
17     PH: (713) 647-6800
      e-mail: Sandy.gomez@huschblackwell.com
18
         - AND -
19
      HUSCH BLACKWELL
20     BY:  PAIGE DUGGINS-CLAY
         111 Congress Avenue
21         Suite 1400
         Austin, TX  78701
22     PH: (512) 472-5456
      e-mail: Paige.duggins-clay@huschblackwell.com
23
   Also Present:
24
      NANCY MARTIN, HOST
25     DOLLY GARCIA
```

Page 3

```
1              APPEARANCES (CONTINUED)

2  Reported By:

3     JUDY A. COUGHENOUR & ASSOCIATES
      BY:  JUDY A. COUGHENOUR JOHNSON
4     8109 Asmara Drive
      Austin, TX  78750
5     PH: (512) 346-4707
      e-mail: Jude@prodigy.net

6

7          * * * * * * *

8           STIPULATIONS

9      The attorneys for all parties present stipulate and

10 agree to the following items:

11     THAT the deposition of SHANNON MICHAEL GOODMAN is

12 taken pursuant to Notice;

13     THAT by agreement of Counsel and all parties

14 present, the Reporter was allowed to swear in the Witness

15 remotely;

16     THAT all objections will be made pursuant to the

17 Federal Rules of Civil Procedure;

18     AND THAT the original transcript will be submitted

19 for signature to the Witness' attorney, SANDY

20 HELLUMS-GOMEZ, and that the Witness or the Witness'

21 attorney will return the signed transcript to JUDY A.

22 COUGHENOUR & ASSOCIATES within thirty days of the date the

23 transcript is provided to the Witness' attorney.  If not

24 returned, the Witness may be deemed to have waived the

25 right to make the changes, and an unsigned copy may be
```

Page 4

```
1  used as though signed.
2      * * * * * * *
3           INDEX
4  Appearances........................  2
5  Stipulations.......................  3
6  Exhibits...........................  4
7  SHANNON MICHAEL GOODMANJ
8    Examination by Mr. Weldon.........  5
9  Witness Changes and Corrections.... 32
10 Witness Signature.................. 33
11 Court Reporter Certificate......... 34
12     * * * * * * *
13          EXHIBITS
14 EXHIBIT            PAGE   PAGE
   NUMBER   DESCRIPTION        MARKED  REF'D
15 _____
16  1  Being biographical information on
      Shannon Goodman from the Office of
17    the President (/)        31    10
18  2  Being a University of North Texas
      Division of Enrollment 2021-2022
19    Organizational Chart     31    13
20  3  Being a copy of Texas Education
      Code, Section 54.051, Tuition Rates  31  17
21
   4  Being a copy of Texas Education
22    Code, Section 54.052, Determination
      of Resident Status       31    20
23
24
25
```

Page 5

1    THE REPORTER: Today's date is November 12,
2  2021, and the time is 1:27 p.m.
3    My name is Judy Coughenour Johnson, Judy A.
4  Coughenour & Associates, 8109 Asmara Drive, Austin, Texas.
5    This is the oral deposition of Shannon
6  Michael Goodman, and it is being conducted remotely, by
7  agreement of Counsel, with the Witness located at the
8  University of North Texas, Denton, Texas.
9    Will the Witness please raise your right
10  hand and be sworn?
11        * * * *
12
13    SHANNON MICHAEL GOODMAN
14  the Witness herein, having been first duly administered an
15  oath or affirmation, via Zoom, pursuant to the agreement
16  of Counsel, testified as follows:
17
18      EXAMINATION
19  QUESTIONS BY MR. WELDON:
20    THE REPORTER: Thank you.
21    I have administered the oath, the Witness
22  having been identified to me by attestation of Counsel.
23    Would Counsel, and all other persons
24  present in the rooms, please identify yourselves, and your
25  locations, for the record?

Page 6

1    MR. WELDON: Chance Weldon, taking the
2  deposition.
3    I'm here in Austin, Texas.
4    MS. HELLUMS-GOMEZ: Sandy - excuse me -
5  Sandy Hellums-Gomez, Counsel for the Defendants.
6    I am present in Houston, Texas.
7    MS. DUGGINS-CLAY: Paige Duggins-Clay,
8  Counsel for the UNT, Defendants, and in Austin, Texas.
9    (The Reporter asked if there was anyone
10    else present with Mr. Weldon.)
11    MR. WELDON: Yeah. Yes.
12    MR. TOWNSEND: Yes. Christian Townsend in
13  Austin, Texas.
14    (The Reporter indicated Mr. Weldon
15    could begin at any time.)
16    MS. HELLUMS-GOMEZ: And - well, and - and
17  present in Denton, as well, is Miss Dolly Garcia, in-house
18  Counsel with UNT.
19    MR. WELDON: Can - can she be on camera? I
20  just - I can't see her, and I don't know who's in the
21  room.
22    So if she could just get back on camera,
23  that would be appreciated.
24    MS. HELLUMS-GOMEZ: Okay. Can you - does
25  that work for you, Dolly?

Page 7

1    (Ms. Garcia came in to the camera view.)
2    MR. WELDON: Thank you.
3    MS. HELLUMS-GOMEZ: Does that work?
4    (The Reporter indicated that now Mr. Weldon
5    could begin at any time.)
6    MR. WELDON: Okay.
7    Q (Mr. Weldon) Would you please state your name
8  for the record?
9    MR. WELDON: I think - I think they're on -
10  I think they're on mute.
11    MS. HELLUMS-GOMEZ: Yeah.
12    A (The Witness) Shannon Goodman.
13    (The Reporter asked for a repeat of the
14    name.)
15    A (The Witness) Goodman.
16    Q (Mr. Weldon) And Mr. Goodman, have you ever
17  given a deposition before?
18    A I have not.
19    Q Okay. So then before we begin, I'd just like
20  to ask that for the purposes of getting a clear
21  transcript, you let me finish asking any questions before
22  you start your answer, and I'll extend the same courtesy,
23  by waiting for you to answer before I ask any additional
24  questions. Is that fair?
25    A That's fair.

Page 8

1    Q Okay. And it probably won't be necessary, but
2  if for any reason you need a break, just let me know. I
3  only ask that you answer any question that's pending at
4  the time before we break. Is that fair?
5    A That's fair.
6    Q Okay. Are you on any medication that would
7  prevent you from answering truthfully here today?
8    A No.
9    Q Okay. And do you have any medical condition
10  that would prevent you from answering truthfully here
11  today?
12    A No.
13    Q Okay. And you're currently employed by the
14  University of North Texas. Is that true?
15    A That's true.
16    Q Okay. And what is the title of your position
17  there?
18    A Vice-President for Enrollment.
19    Q Okay. And you're testifying here today in your
20  capacity as Vice-President of Enrollment. Is that true?
21    A That's true.
22    Q Okay. So how long have you been in that role?
23    A Approximately six and a half years,
24  approximately.
25    Q And as Vice-President of Enrollment, what

Page 9

1  exactly do you oversee?  What are you in charge of?
2      A  As far as units?
3      Q  Yeah.
4      A  Or the division?
5          So I have University Admissions.  I have
6  Financial Aid and Scholarships.  I have the Registrar
7  Office.  I have - the last six months, I have - I now have
8  Student Financial Services.  I have a unit that's called
9  Enrollment Systems.  And also oversee Welcome Center and
10  University Tours.
11          And then just administrative units, within.
12  Like budget, you know, for - for the division.
13      Q  So if I --
14          (The Reporter asked for a repeat of the
15          last part of the Witness' answer.)
16      A  (The Witness)  For the division.  Just for - you
17  know, for the administrative roles for the - for the
18  division, itself.
19      Q  (Mr. Weldon)  So do any of those departments or
20  programs, that you oversee, involve the assessment of
21  tuition at the University of North Texas?
22      A  I have a - a unit that's called Student
23  Financial Services.  They actually will assign or ensure
24  that tuition has been assigned so that students are - are
25  charged, and then they'll - they're also in charge of

Page 10

1  collecting those - and billing students for that.
2      Q  I'm sorry.  Can you repeat the last - the last
3  part of that statement?  I don't - I couldn't understand
4  you.
5      A  Sure.
6          They - they ensure that the - the students
7  are billed, and then they ensure that the - you know, they
8  work on the fee payment, the collection side of that, as
9  well.
10      Q  I'm going to introduce an exhibit, and let me
11  see if I can pull it up here.
12          This will be Exhibit 1.
13          MR. WELDON:  Can everybody see this?  Are
14  you all able to see that?
15          (The Reporter indicated she could.)
16          MS. HELLUMS-GOMEZ:  Yes.
17      A  (The Witness)  I - if - if that is in reference
18  to a picture of me, yes.
19      Q  (Mr. Weldon)  Okay.
20          MR. WELDON:  And I'm not sure.
21          Do we have any way for them to be able to
22  scroll through this, or do I need to just operate that?
23          HOST:  You'll need to operate that.
24          MR. WELDON:  Okay.  Thank you.
25      Q  (Mr. Weldon)  Have you ever seen this document

Page 11

1  before?
2      A  (The Witness)  I think what you're pointing to
3  is a Web page?  Web site?  Is that correct?
4      A  That - that - that is correct.
5          And is this the - your biography that's on
6  the University of North Texas Web site?
7      A  Yeah.  It should be.
8          I haven't looked at that site recently, but
9  I'm assuming that's - that's what's there right now.
10      Q  Okay.  And did you - did you sign off on this,
11  or help create it?
12      A  Probably at the - I - I probably did sign off on
13  it at the - at the time it was created.  Yeah.
14      Q  Okay.  Thank you.
15          And can you look in this section here that
16  says Bio Information?  A couple of sentences down, where
17  it says, "Mr. Goodman oversees UNT programs"?
18      A  Yes.
19      Q  Do you see that sentence?
20      A  Yes, I do.
21      Q  All right.  And it says that you oversee the
22  Eagle Express Tuition Plan.  Correct?
23      A  That's correct.  That's part of the Student
24  Financial Services.
25      Q  Okay.  And that tuition plan, that's going to

Page 12

1  involve the cost of - of tuition for students at UNT,
2  isn't it?
3      A  If - and that's an older plan that new students,
4  I don't believe, can lock in anymore.
5          But yeah.  That was - by students that
6  chose that, were able to lock in those rates.
7      Q  Okay.  And that's - and - and you said that's no
8  longer available at the University or --
9      A  I don't believe we're doing Eagle Express
10  anymore.  We moved on to - the University moved on to Save
11  and Soar Plan.  That is a more recent one.
12          So I think where students who had
13  originally got on the Eagle Express will still continue on
14  that, but I don't believe it's available to new students.
15          I could be wrong on that, but I - I - I
16  don't believe it is.
17      Q  Okay.  Do you know if the cost of tuition is
18  different for resident and nonresident students, at the
19  University of North Texas?
20      A  There is a statutory tuition rate that is state
21  defined through the legislature.  They define a - what
22  universities, such as us, can charge for a credit hour for
23  resident, and they also define what is charged for
24  nonresident.
25          So that's the - that is the difference.

Page 13

1  That's the rate that's different for residents and
2  nonresidents.  That's that statutory, legislative rate
3  that's --
4      Q  Okay.
5      A  -- defined.
6      Q  So - so you would agree, though, that the rate
7  that is - that is charged is different?  Correct?
8      A  I would agree that the - yeah.  That the
9  statutory rate is - there's a rate set for resident and a
10  rate set for nonresident.
11      Q  And UNT complies with that state law, and
12  charges the different rates.  Correct?
13      A  That is correct.
14      Q  Okay.  I'm going to introduce a new exhibit,
15  Exhibit 2.
16          MR. WELDON:  Can everybody see that?
17          MS. HELLUMS-GOMEZ:  Yes.
18          MR. WELDON:  Okay.
19      Q  (Mr. Weldon)  And - and Mr. - Mr. Goodman, do
20  you recognize the document on your screen?
21      A  (The Witness)  I can't see it all.  I think
22  there are - might - the pictures, and stuff, are in front
23  of it.
24          But the part that I can see, yeah.  Is - is
25  recognizable.  Yes.

Page 14

1      Q  Okay.  And --
2          (The Reporter asked for a repeat of the
3          last part of the Witness' answer.)
4      A  (The Witness)  All the way - well, it's - the
5  top - the - the teal boxes to Michael Sanders.  I can see
6  part of what I believe is probably Brenda McCoy, who's -
7  who is now retired, and then the level that has - down
8  where it says Call Center, you know, starting from the
9  left, I can see those boxes.
10      Q  (Mr. Weldon)  I can - I can move that around a
11  little bit so you can see the rest of it.
12          Does that change anything?
13      A  That allows me to see all the - I think the
14  lower boxes, and - and that's fine.  I'm assuming there's
15  nothing off to the right that, you know, is different.
16          But what I can - what I can see looks
17  familiar.  Yeah.
18      Q  Okay.  Do - can you - can you say what that -
19  what this document represents?
20      A  This would be a - a high-level org chart of
21  the division.
22      Q  Okay.
23      A  Probably focusing in on who would be my direct
24  reports.
25      Q  Okay.  And if I told you that we got this from

Page 15

1  the University of North Texas Web site, would that sound
2  like - would - would you agree that that's reasonable?
3  That we probably got it there?
4      A  Yes.
5      Q  Okay.  Now can you look directly beneath -
6  beneath your name there?  There's a box relating to Chris
7  Foster.  Can you see that?
8      A  I can.
9      Q  Actually, let me back up one question.
10          Would - does this appear to be an accurate
11  representation of the way that division is structured?
12      A  Yes.
13      Q  Okay.  And is this one of the - earlier you
14  testified that you oversee several divisions.  Is - this
15  is one of the divisions that you oversee?
16      A  I oversee one - one singular division, the
17  Division of Enrollment.  These are different departments
18  or units within that division.
19      Q  Okay.
20      A  Just --
21      Q  So is it - oh.  I apologize.
22          So the things - but basically this is a - a
23  chart that shows all of the things that - all of the
24  divisions that you oversee with all - all of the
25  departments of the division that you oversee.  Is that

Page 16

1  correct?
2      A  Correct.
3      Q  Okay.  So going back to the box in the middle
4  that - that refers to Chris Foster - you said you can see
5  that there.  Right?
6      A  Correct.
7      Q  And from this chart, it looks like Mr. Foster
8  direct - reports directly to you.  Is that correct?
9      A  Correct.
10      Q  Okay.  So it would be fair to say that you
11  oversee his work.  Is that correct?
12      A  Yeah.  I mean, I think that's fair.  I oversee
13  Chris.  Yeah.
14      Q  Okay.  Can you look at the box directly below
15  Mr. Foster's name?
16      A  I can.
17      Q  Okay.  And that indicates that Mr. Foster is in
18  charge of tuition and fees assessment.  Correct?
19      A  It does.
20      Q  Okay.  And to your knowledge, when Mr. Foster
21  assesses tuitions and - tuition and fees, he complies with
22  state law.  Correct?
23      A  Correct.
24      Q  And, you know, if, for some reason, Mr. Foster
25  collected fees in a way that didn't comply with state law,

Page 17

1  you would have authority to correct him.  Right?
2      A   Correct.
3      Q   I'd like to introduce Exhibit 3.  And this is
4  going to be a copy of - this should be a copy of the Texas
5  Education Code.
6          MR. WELDON:  Can everybody see that?
7      A   (The Witness)  I - yeah.  I mean, I can see the
8  page that I think you're bringing up.
9      Q   (Mr. Weldon)  Yeah.  We can scroll - we'll
10  scroll through - we'll scroll through it, as necessary.
11      A   Yes.
12      Q   Yeah.
13          Have you ever seen Texas Education Code,
14  Section 54.051 before?
15      A   I have seen it before.  Yes.
16      Q   Okay.  And can you take a look at Section (b) on
17  this page?
18      A   Okay.
19      Q   Okay.  Would it be a fair summary to say that
20  that section says the University shall collect tuition at
21  the rates prescribed by this section?
22          MS. HELLUMS-GOMEZ:  Objection.  Calls for a
23  legal conclusion.
24      A   (The Witness)  Yeah.  I'm not - let me reread
25  it, because I'm not sure exactly what you're asking, so

Page 18

1  that --.
2          Yeah.  I mean, I think - is that - can you
3  state your question again?
4      Q   (Mr. Weldon)  Yeah.  I was just saying is it
5  fair to say that this section says that the college shall
6  cause to be collected, from students, fees and rates
7  prescribed in this section?
8      A   Under that Statute?  So according to Statute?
9  Is that what you're asking?
10      Q   Yes.
11      A   I think - I think that's fair.
12      Q   Yeah.
13          Okay.  Can you take a look at Section (c)?
14      A   Yes.
15      Q   And in Section (c), you would agree that section
16  sets the formula for the tuition rate for resident
17  students.  Correct?
18          MR. WELDON:  Objection.  Calls for a legal
19  conclusion.
20      A   (The Witness)  Yeah.  I think - I mean, with -
21  out of my understanding, I - I - I think so.
22      Q   (Mr. Weldon)  Okay.  If you take just a minute
23  to look at Section (d), just beneath that?
24      A   Okay.
25      Q   Okay.  And is it fair to say that that is

Page 19

1  setting the formula for nonresident student tuition?
2          MS. HELLUMS-GOMEZ:  Objection.  Calls for a
3  legal conclusion.
4      A   (The Witness)  Yeah.  I would - that's kind of
5  how I read it.  Yes.
6      Q   (Mr. Weldon)  Thank you.
7          And you would agree that the formula, in
8  Section (c), and the formula in Section (d), are
9  different.  Correct?
10          MS. HELLUMS-GOMEZ:  Objection.  Calls for a
11  legal conclusion.
12      A   (The Witness)  Yeah.  I mean, as I - as I read
13  it, I - well, I - there are different way to come to it.
14          I guess technically it could end up being
15  the same if - the way it's calculated, the way it's
16  stated, would come out with it.  But yeah.
17      Q   (Mr. Weldon)  Yeah.
18          But there - but they are different
19  formulas.  Correct?
20      A   Yeah.  The - the - the way they're stated, they
21  seem to - the path to it is different, it sounds like.
22  Yeah.
23      Q   Okay.  And to your knowledge, the programs that
24  you oversee at the University of North Texas, they comply
25  with this law.  Correct?

Page 20

1      A   To my understanding.  Yes.
2      Q   Okay.  I'd like to introduce another exhibit.
3  That would be Exhibit 4.
4          MR. WELDON:  Can everybody see that?
5      A   (The Witness)  I can - I can see your screen.
6  Yeah.
7      Q   (Mr. Weldon)  Okay.  Great.
8          And that - that looked - that appears, to
9  you, to be Texas Education Code, Section 54.052?
10      A   That's what it's stated.  Yeah.
11      Q   Yeah.  And have you seen this section of the
12  Texas Education Code before?
13      A   I have.  Yes.
14      Q   Will you take a look at Section (a)?
15      A   Okay.
16      Q   And is it fair to say that that section says
17  that this law establishes the standard for establishing
18  residency?  Is that correct?
19          MS. HELLUMS-GOMEZ:  Objection.  Calls for a
20  legal conclusion.
21      A   (The Witness)  That - so state your - state your
22  question again?  I'm sorry.
23      Q   (Mr. Weldon)  I'm sorry.  The - this - the - the
24  Section (a) basically makes clear that this section of the
25  Texas Education Code sets the - the standard for

Page 21

1  determining resident status.  Is that correct?
2      A  I guess, on that, I don't - I don't know if - if
3  (a) does that, in and of itself.  I guess I've never tried
4  to read it that way, but I think - are you talking about
5  the - the entire - the 54.052, or are you talking about
6  just that --
7      Q  Oh, yeah.  And let me clarify.
8          Section (a) indicates that, you know,
9  Section 54.052 is the statute that sets - that governs the
10  determination of resident status.  Correct?
11         MS. HELLUMS-GOMEZ:  Yeah.  Objection.
12  Calls for a legal conclusion.
13     A  (The Witness)  So yeah.  I mean, as I - yeah.
14         So for my understanding and knowledge,
15  it's - it's that entire thing that begins to set
16  the - the - the rules and - of what determines resident
17  status.
18         And I - I'm --
19     Q  (Mr. Weldon)  Okay.
20     A  -- going to answer it - I hope I'm answering
21  your question the way - what - what you're asking.
22     Q  Oh.  You're - you're doing - you're doing fine.
23  I'm just - let me - let me put it - put it to you this
24  way.
25         So then you would agree that Section 54.052

Page 22

1  is what sets the - you know, the standard for resident
2  status.  Correct?
3         MS. HELLUMS-GOMEZ:  Objection.  Calls for a
4  legal conclusion.
5      A  (The Witness)  I - I - I believe so.
6      Q  (Mr. Weldon)  And the divisions at the
7  University of North Texas that you oversee, they
8  faithfully apply Section 54.052 when determining resident
9  status.  Correct?
10     A  Well, can I - let me - can I explain kind of how
11  that comes to us?  That might help to this, because I want
12  to try to make sure I'm answering your question.
13         So the students - there's - I mean, I don't
14  know if you're familiar with ApplyTexas?  It's the state
15  application.  Are you - for admission.  Are you familiar
16  with that?
17     Q  Yeah.
18     A  So - so the ApplyTexas application that I - I
19  believe - I think technically is probably - is owned, if
20  you will, by the - the higher ed, so the THECB, the
21  Texas --
22         (The Reporter asked for a repeat of the
23          last part of the Witness' answer which
24          broke up.)
25     Q  (Mr. Weldon)  I'm - I'm sorry.  Can you --

Page 23

1      A  (The Witness)  So it's my understanding that the
2  ApplyTexas is - is owned, if you will, by THECB, the Texas
3  Higher Education Coordinating Board.  They contract out to
4  I think it's The University of Texas to actually help kind
5  of maintain that application.
6          But the reason I bring it up and it's
7  relevant, is on that application, when students apply in
8  Texas, and they use ApplyTexas, they will - they will use
9  that application, and they'll fill out that front.
10  There's a - a - for lack of a better term, there's like a
11  profile that students have to create that they - they -
12  they answer a series of questions there, and then they'll
13  pick, you know, what institutions they want to apply to.
14         But it's in that profile where the series
15  of these questions regarding resident status, if you
16  will - you know, this - this - that are asked, and that
17  determination is made, and that determination then is
18  passed to the universities.
19         So then we take - we take what the results
20  of that profile, of what happened on that application, and
21  then the - they will pass us, you know, the resident or
22  nonresident field, and then we - we take that and - and
23  process it.
24     Q  So is it - is it your understanding, then, that
25  ApplyTexas determines the resident status of students

Page 24

1  based on 54 - 54.052?
2         MS. HELLUMS-GOMEZ:  Objection.  Calls for a
3  legal conclusion.
4      A  (The Witness)  Yeah.  I mean, functionally,
5  those questions are asked there, and a - the answer to
6  that will derive a value that they pass us, which is then
7  either resident or nonresident.
8          So yeah.  In that sense, I would say - say
9  that's probably a pretty accurate statement.
10     Q  (Mr. Weldon)  I'm sorry.  I'm just going to try
11  and clean that up a little bit for the transcript.  Was --
12     A  Sure.
13     Q  -- your - you - was - it was your conclusion,
14  then, that ApplyTexas, that program, the questions they
15  asked, are designed to get at the definition in 54.052?
16     A  (Witness nodded head up and down.)
17         MS. HELLUMS-GOMEZ:  Objection.  And calls
18  for speculation.
19     A  (The Witness)  Yeah.  I think that's - that's
20  what I was trying to say.
21     Q  (Mr. Weldon)  Okay.
22     A  Yeah.
23     Q  And once that determination is made, could you,
24  at the - any of the departments you oversee, could they
25  overturn that and say, "No.  We think this student is a

Page 25

1   resident, or is not a resident"?
2       A.  No.  I don't - I mean, no.  Just - just to sit
3   there and say, you know, "Shannon, no.  I think he should
4   be a - a - a - a resident," no.  They don't have the
5   authority or latitude.
6              There are cases that - you know, a minority
7   of - of applications that will come through that they will
8   pass as - I think the code is Undetermined, and that's
9   based on perhaps how somebody answered the - the - the
10  question.  They are coded as a nonresident, and then they
11  are - they have to answer the questions again, and
12  then provide documentation.
13             That documentation is again prescribed by
14  the Coordinating Board about what's acceptable.  So we
15  don't have any flexibility, you know, on - on that.
16      Q.  So I'm trying to unpack what you just - what you
17  just told me there.
18             So like let's say that they're - well,
19  let - let's do it this way.
20             Are there any students - if - if you're
21  going to apply to be a student at the University of North
22  Texas, is there any way to do so outside of the ApplyTexas
23  program?
24      A.  Some of our students will come through an
25  application called the Common App.  And that - the Common

Page 26

1   App.  So it's another application process.
2              And - but it has - it will have the same
3   series of - of questions on there.
4       Q.  And is - is that - is the Common App - I - I
5   believe is what you called it - is that run by the
6   University of North Texas?
7       A.  The Common App is a - I don't - I don't know how
8   to accurately phrase it - but we don't own the Common App.
9   The Common App is a - is more of a - I'll say a national
10  application, but it's - it's an application that schools
11  in many states use, as well.
12      Q.  Okay.  And is that an app that you - that you
13  have - that the University of North Texas has chosen to
14  use?
15      A.  Correct.
16      Q.  Okay.  And the same is - with ApplyTexas.  Is
17  that an app that the University of North Texas has chosen
18  to use?
19      A.  It's my understanding that was chose for us, and
20  why - the reason I say that, I mean, is it is my
21  understanding that we are - there is an expectation that
22  we use that, from the Coordinating Board, so we have to be
23  present in - in ApplyTexas.
24             And so the vast majority of our
25  applications come through ApplyTexas.

Page 27

1       Q.  So is there like some sort of Statute that
2   requires you to - to make applications available through
3   ApplyTexas?
4              MS. HELLUMS-GOMEZ:  Objection.  Calls for
5   legal conclusion.
6       A.  (The Witness)  I honestly couldn't cite you
7   that.
8              It's just - it's my understanding that we -
9   to be one - is that it - it's not - I do not believe we
10  have a - or do not believe we have a choice to not be
11  present in ApplyTexas.  Let me answer it that way.
12      Q.  (Mr. Weldon)  Okay.  But you also use the Common
13  App.  And - and let me make sure I'm saying this right.
14             Common, like the word C-O-M-M-O-N, App?
15      A.  Correct.
16      Q.  Okay.  And that was a choice made by the
17  University of North Texas.
18      A.  Correct.
19      Q.  Okay.  That would be similar to if I choose to
20  use Microsoft Word, as opposed to WordPerfect.  Correct?
21      A.  Yeah.  I mean, I guess, on a - on - on one
22  level.
23      Q.  Do you have any other - any other way that the
24  University of North Texas establishes resident status,
25  other than ApplyTexas or the Common App?

Page 28

1       A.  A student - so every - both of those use this.
2   A student who comes in and then perhaps later has now met
3   this definition, because they have met one of the myriad
4   of - of choices in there, could - could get a - a change -
5   have their resident status changed after coming in, but
6   everybody who initiates and comes in is done that way --
7       Q.  So --
8       A.  -- you know.
9       Q.  -- over - the student you just described, who
10  wants to have their resident status changed, what would be
11  the process for that?
12      A.  It would answer the same questions.  They would
13  then have to provide the documentation that's prescribed
14  by the Coordinating Board that's acceptable.
15             That would go through a - a committee,
16  then, for review, to make sure that they've answered, and
17  provided the answer correctly, and provided that
18  documentation to support that.  The documentation is what
19  is acceptable to the - based on the Coordinating Board.
20      Q.  And is that - is that committee in one of the,
21  you know, departments that you oversee?
22      A.  Yeah.  Its a - I - I think there may be, and I
23  don't know the - I - I don't know - so yes.  The - the -
24  the gist of it sits within my division, but there may be
25  representation outside the division on the committee.  I -

Page 29

1  I can't tell you who the committee members are, off the
2  top of --
3      Q   Okay.
4      A   -- my head.
5      Q   Okay.  But the - the committee is within your
6  division.  Correct?
7      A   Correct.
8      Q   Okay.  And do you understand that that
9  committee, in - in - that's within the division you
10  oversee, do you understand that it complies with state
11  law?
12      A   Yes.  They're using the same - same Statute
13  and - and questions, and then the documentation that's
14  prescribed by the Coordinating Board.
15      Q   Okay.  I don't - let me just take a brief break.
16  I don't think I have anything else, but I'm going to break
17  for about five minutes, and then I'll come back.  Okay?
18          MS. HELLUMS-GOMEZ:  Sure.
19      A   (The Witness)  Fair enough.
20      Q   (Mr. Weldon)  All right.
21          THE REPORTER:  We'll be off the record at
22  2:01.
23          (Recess from 2:01 p.m. to 2:04 p.m.)
24          MR. WELDON:  Okay.  We don't have any other
25  questions, at this time.

Page 31

1          (The Certified Shorthand Reporter JUDY A.
2          COUGHENOUR JOHNSON hereby states that
3          Exhibit Nos. 1 through 4 were marked at
4          the conclusion of the deposition, and the
5          originals are to be attached to the
6          original transcript of the deposition.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 30

1          (Witness passed at 2:04 p.m.)
2          MR. WELDON:  And - and so unless you want
3  to do any Redirect, Miss Gomez, I think we're - we're
4  finished.
5          MS. HELLUMS-GOMEZ:  No, sir.  We appreciate
6  your time.
7          MR. WELDON:  Thank you.
8          And Judy, what - what do you --
9          THE REPORTER:  This --
10          MR. WELDON:  -- think --
11          THE REPORTER:  -- concludes - this
12  concludes the deposition at 2:04 p.m.
13          And as far as the stipulations, there is no
14  stipulation about the original transcript, and it will be
15  filed directly with the attorney who asked the first
16  question, Chance Weldon.
17          Is that correct?
18          MR. WELDON:  That is correct.
19          (A discussion was held regarding the
20           stipulations and the Reporter was
21           asked to go back on the record.)
22          MS. HELLUMS-GOMEZ:  Yes.  We would like to
23  stipulate that we would like the opportunity to review and
24  sign the transcript.
25          * * * * * * *

Page 32

1          CHANGES AND SIGNATURE
2  WITNESS NAME:     SHANNON MICHAEL GOODMAN
3  DATE TAKEN:       NOVEMBER 12, 2021
4  PAGE  LINE     CHANGE       REASON
5  _____
6  _____
7  _____
8  _____
9  _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____

Page 33

```
1   _____
2   _____
3   _____
4   _____
5       I, SHANNON MICHAEL GOODMAN, have read the foregoing
6   deposition and hereby affix my signature that the same is
7   true and correct, except as noted above.
8
9       _____
10          SHANNON MICHAEL GOODMAN
11  STATE OF _____
12  COUNTY OF _____
13      BEFORE ME, _____, on this
14  day personally appeared SHANNON MICHAEL GOODMAN, known to
15  me or proved to me, under oath, identity card, or other
16  document, to be the person whose name is subscribed to the
17  foregoing document and acknowledged to me that the same
18  was executed for the purposes and consideration therein
19  expressed.
20      GIVEN under my hand this _____ day of _____,
21  2021.
22      _____
23      NOTARY PUBLIC IN AND FOR THE
        STATE OF _____
24      MY COMMISSION EXPIRES ON:
25      _____
```

Page 35

```
1   ASSOCIATES, 8109 Asmara Drive, Austin, Texas, 78750, by
2   December 16, 2021.
3       THAT the amount of time used by each party at the
4   deposition is as follows:
5       CHANCE WELDON - (36 minutes)
6       SANDY HELLUM-GOMEZ - (00:00 minutes)
7       THAT $270.84 is the deposition officer's charges
8   for preparing the original deposition transcript and any
9   copies of exhibits, charged to Plaintiff.
10      I further certify that I am neither Counsel for,
11  related to, nor employed by any of the parties in the
12  action in which this proceeding was taken, and further,
13  that I am not financially or otherwise interested in the
14  outcome of the action.
15      SWORN TO by me this 15th day of November, 2021.
16                              Judy A. Coughenour Johnson
17      _____
        JUDY A. COUGHENOUR JOHNSON
18      TEXAS CSR NO. 1198
        EXPIRATION DATE:  06/30/23
19      8109 Asmara Drive
        Austin, Texas  78750
20      PH:  (512) 346-4707
21
22
23
24
25
```

Page 34

```
1       IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT
2           SHERMAN DIVISION
3   YOUNG CONSERVATIVES OF    )
    TEXAS FOUNDATION          )
4                             )
                              )
5   VS.                       )
                              )  CIVIL ACTION NO.
6   THE UNIVERSITY OF NORTH   )  4:20-CV-973
    TEXAS, THE UNIVERSITY OF  )
7   NORTH TEXAS SYSTEM, NEAL  )  HONORABLE SEAN D. JORDAN
    SMATRESK, PRESIDENT OF THE)
8   UNIVERSITY OF NORTH TEXAS,)
    AND SHANNON GOODMAN, VICE )
9   PRESIDENT FOR ENROLLMENT OF)
    THE UNIVERSITY OF NORTH   )
10  TEXAS                     )
11  *********************************************************
12      REPORTER'S CERTIFICATION
13      DEPOSITION OF SHANNON MICHAEL GOODMAN
14          NOVEMBER 12, 2021
15  *********************************************************
16      I, JUDY A. COUGHENOUR JOHNSON, a Certified
17  Shorthand Reporter in and for the State of Texas, do
18  hereby certify to the following:
19      THAT the Witness, SHANNON MICHAEL GOODMAN, was duly
20  sworn by the officer, and that the transcript of the oral
21  deposition is a true record of the testimony given by the
22  Witness;
23      THAT the deposition transcript was submitted on
24  November 16, 2021 to the attorney for Defendants for
25  examination, signature, and return to JUDY A. COUGHENOUR &
```

Page 8  (Pages 29-32)

**Page 29**

1 I can't tell you who the committee members are, off the
2 top of --
3    Q  Okay.
4    A  -- my head.
5    Q  Okay.  But the - the committee is within your
6 division.  Correct?
7    A  Correct.
8    Q  Okay.  And do you understand that that
9 committee, in - in - that's within the division you
10 oversee, do you understand that it complies with state
11 law?
12    A  Yes.  They're using the same - same Statute
13 and - and questions, and then the documentation that's
14 prescribed by the Coordinating Board.
15    Q  Okay.  I don't - let me just take a brief break.
16 I don't think I have anything else, but I'm going to break
17 for about five minutes, and then I'll come back.  Okay?
18        MS. HELLUMS-GOMEZ:  Sure.
19    A  (The Witness)  Fair enough.
20    Q  (Mr. Weldon)  All right.
21        THE REPORTER:  We'll be off the record at
22 2:01.
23        (Recess from 2:01 p.m. to 2:04 p.m.)
24        MR. WELDON:  Okay.  We don't have any other
25 questions, at this time.

**Page 30**

1        (Witness passed at 2:04 p.m.)
2        MR. WELDON:  And - and so unless you want
3 to do any Redirect, Miss Gomez, I think we're - we're
4 finished.
5        MS. HELLUMS-GOMEZ:  No, sir.  We appreciate
6 your time.
7        MR. WELDON:  Thank you.
8 And Judy, what - what do you --
9        THE REPORTER:  This --
10        MR. WELDON:  -- think --
11        THE REPORTER:  -- concludes - this
12 concludes the deposition at 2:04 p.m.
13        And as far as the stipulations, there is no
14 stipulation about the original transcript, and it will be
15 filed directly with the attorney who asked the first
16 question, Chance Weldon.
17 Is that correct?
18        MR. WELDON:  That is correct.
19        (A discussion was held regarding the
20        stipulations and the Reporter was
21        asked to go back on the record.)
22        MS. HELLUMS-GOMEZ:  Yes.  We would like to
23 stipulate that we would like the opportunity to review and
24 sign the transcript.
25        * * * * * * *

**Page 31**

1 (The Certified Shorthand Reporter JUDY A.
2 COUGHENOUR JOHNSON hereby states that
3 Exhibit Nos. 1 through 4 were marked at
4 the conclusion of the deposition, and the
5 originals are to be attached to the
6 original transcript of the deposition.)

**Page 32**

1    CHANGES AND SIGNATURE
2 WITNESS NAME:    SHANNON MICHAEL GOODMAN
3 DATE TAKEN:    NOVEMBER 12, 2021
4 PAGE  LINE    CHANGE    REASON
5   7    15    "Goodman" to "Shannon Goodman"    Clarification.
6   8    21    "That's true" to "That's true, Vice President for Enrollment."
7  16    2    Add "the chart shows my direct reports and their areas
8              of responsibility."    Clarification.
9  23    9    "front" to "form"    Clarification.
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____

Judy A. Coughenour & Associates

Page 33

1  _____
2  _____
3  _____
4  _____
5      I, SHANNON MICHAEL GOODMAN, have read the foregoing
6  deposition and hereby affix my signature that the same is
7  true and correct, except as noted above.
8
9      _____
10     SHANNON MICHAEL GOODMAN
11  STATE OF  TEXAS
12  COUNTY OF  DENTON
13  BEFORE ME,  Alicia A. Spencer            , on this
14  day personally appeared SHANNON MICHAEL GOODMAN, known to
15  me or proved to me, under oath, identity card, or other
16  document, to be the person whose name is subscribed to the
17  foregoing document and acknowledged to me that the same
18  was executed for the purposes and consideration therein
19  expressed.
20     GIVEN under my hand this  7th  day of December,
21  2021.
22     _____
23     NOTARY PUBLIC IN AND FOR THE
       STATE OF  TEXAS
24     MY COMMISSION EXPIRES ON:
25     September 7, 2024

[Notary seal: ALICIA A. SPENCER, Notary Public, State of Texas, Comm. Expires 09-07-2024, Notary ID 129110246]

Page 34

1      IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT
2             SHERMAN DIVISION
3  YOUNG CONSERVATIVES OF    )
   TEXAS FOUNDATION        )
4                           )
                            )
5  VS.                      )
                            )  CIVIL ACTION NO.
6  THE UNIVERSITY OF NORTH   )  4:20-CV-973
   TEXAS, THE UNIVERSITY OF  )
7  NORTH TEXAS SYSTEM, NEAL  )  HONORABLE SEAN D. JORDAN
   SMATRESK, PRESIDENT OF THE )
8  UNIVERSITY OF NORTH TEXAS, )
   AND SHANNON GOODMAN, VICE  )
9  PRESIDENT FOR ENROLLMENT OF )
   THE UNIVERSITY OF NORTH   )
10 TEXAS              )
11 *********************************************
12      REPORTER'S CERTIFICATION
13  DEPOSITION OF SHANNON MICHAEL GOODMAN
14          NOVEMBER 12, 2021
15 *********************************************
16     I, JUDY A. COUGHENOUR JOHNSON, a Certified
17  Shorthand Reporter in and for the State of Texas, do
18  hereby certify to the following:
19     THAT the Witness, SHANNON MICHAEL GOODMAN, was duly
20  sworn by the officer, and that the transcript of the oral
21  deposition is a true record of the testimony given by the
22  Witness;
23     THAT the deposition transcript was submitted on
24  November 16, 2021 to the attorney for Defendants for
25  examination, signature, and return to JUDY A. COUGHENOUR &

Page 35

1  ASSOCIATES, 8109 Asmara Drive, Austin, Texas, 78750, by
2  December 16, 2021.
3      THAT the amount of time used by each party at the
4  deposition is as follows:
5      CHANCE WELDON - (36 minutes)
6      SANDY HELLUM-GOMEZ - (00:00 minutes)
7      THAT $270.84 is the deposition officer's charges
8  for preparing the original deposition transcript and any
9  copies of exhibits, charged to Plaintiff.
10     I further certify that I am neither Counsel for,
11  related to, nor employed by any of the parties in the
12  action in which this proceeding was taken, and further,
13  that I am not financially or otherwise interested in the
14  outcome of the action.
15     SWORN TO by me this 15th day of November, 2021.
16     _____
17
18     JUDY A. COUGHENOUR JOHNSON
       TEXAS CSR NO. 1198
       EXPIRATION DATE:  06/30/23
19     8109 Asmara Drive
       Austin, Texas  78750
       PH: (512) 346-0707
20
25