**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| YOUNG CONSERVATIVES OF TEXAS FOUNDATION | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 4:20-CV-973 |
| v. | § | JUDGE SEAN D. JORDAN |
| | § | |
| THE UNIVERSITY OF NORTH TEXAS, THE | § | |
| UNIVERSITY OF NORTH TEXAS SYSTEM, | § | |
| NEAL SMATRESK, PRESIDENT OF THE | § | |
| UNIVERSITY OF NORTH TEXAS and | § | |
| SHANNON GOODMAN, VICE PRESIDENT | § | |
| FOR ENROLLMENT OF THE UNIVERSITY | § | |
| OF NORTH TEXAS; | § | |
| *Defendants*. | § | |

**PLAINTIFF'S COMBINED RESPONSE TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ISSUES**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................... iv

RESPONSE TO UNT'S STATEMENT OF ISSUES ....................................................1

INTRODUCTION ......................................................................................................3

RESPONSE TO UNT'S STATEMENT OF FACTS ...................................................4

ARGUMENT ..............................................................................................................9

I.      SECTION 54.051(d) IS PREEMPTED BY FEDERAL LAW AND
        THEREFORE UNCONSTITUTIONAL .......................................................9

        A.      Express preemption does not require an explicit preemption clause.......................11

        B.      Section 54.051(d) need not contain the words "alien" or "postsecondary
                education benefit" in order to be preempted.............................................12

        C.      In-State tuition is a postsecondary educational benefit ...........................................13

        D.      Preemption under Section 1623 turns on whether aliens are eligible for a
                benefit on the basis of residency, not whether they receive "preferential
                treatment"......................................................................................................14

        E.      The Federalism Canon does not apply because Congress has spoken
                clearly..............................................................................................................16

        F.      Eligibility for resident tuition turns on residence ....................................................17

        G.      UNT's half-hearted challenge to the Constitutionality of Section 1623
                fails..................................................................................................................18

II.     YCT HAS STANDING TO CHALLENGE SECTION 54.051(d) ...................................19

        A.      YCT's members have been injured by Section 54.051(d).......................................20

        B.      YCT's individual members need not be parties to this case.....................................21

III.    UNT'S PROCEDURAL AND EVIDENTIARY ARGUMENTS FAIL..........................23

A.  This Court has already ruled that YCT's claims arise in equity under *Ex parte Young* and no statutory cause of action is necessary......................................23

B.  The Named Defendants are not protected by sovereign immunity because YCT has properly established a claim under *Ex parte Young* ................................24

    1.  This Court has already rejected UNT's argument that the application of *Ex parte Young* is precluded by *Armstrong*..................................24

    2.  Defendants Smatresk and Goodman are proper defendants ..........................25

    3.  An injunction in this case would prevent the application of the challenged law ..................................................................................30

C.  The Entity Defendants cannot reestablish sovereign immunity that was specifically waived by statute by removing a case to this Court.............................31

D.  YCT's summary judgment evidence is properly before this Court.........................32

E.  YCT has established the factors for injunctive relief ...............................................34

F.  YCT's request for injunctive relief complies with Rule 65.....................................35

CONCLUSION.........................................................................................................................36

CERTIFICATE OF SERVICE ................................................................................................38

# INDEX OF AUTHORITIES

**Cases**

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
    851 F.3d 507 (5th Cir. 2017) ..................................................................... 26, 27

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................................... 33

*Arizona v. United States*,
    567 U.S. 387 (2012)...................................................................................... 18

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015)................................................................................ 23, 24

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*,
    627 F.3d 547 (5th Cir. 2010) ................................................................... 19, 23

*Awad v. Ziriax*,
    670 F.3d 1111 (10th Cir. 2012) ................................................................... 35

*Bhd. of R.R. Trainmen v. Balt. & Ohio R.R.*,
    331 U.S. 519 (1947)...................................................................................... 15

*CardSoft, LLC v. VeriFone, Inc.*,
    807 F.3d 1346 (Fed. Cir. 2015)................................................................... 26

*Chadha v. Immigration & Naturalization Serv.*,
    634 F.2d 408 (9th Cir. 1980) ....................................................................... 18

*Contender Farms, L.L.P. v. United States Dep't of Agric.*,
    779 F.3d 258 (5th Cir. 2015) ....................................................................... 22

*Edgewood Indep. Sch. Dist. v. Kirby*,
    777 S.W.2d 391 (Tex. 1989)........................................................................ 31

*Equal Access Educ. v. Merten*,
    305 F. Supp. 2d 585 (E.D. Va. Feb. 24, 2004) .............................. 10, 14, 16, 18

*Ex parte Young*,
    209 U.S. 123 (1908)............................................................................ 24, 25, 26

*Familias Unidas v. Briscoe*,
   544 F.2d 182 (5th Cir. 1976) ........................................................ 20

*Foss v. Arizona Bd. of Regents*,
   1 CA-CV 18-0781, 2019 WL 5801690 (Ariz. Ct. App. Nov. 7, 2019) .................... 13, 16

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
   505 U.S. 88 (1992) .................................................................. 11, 19

*Gibbons v. Ogden*,
   9 Wheat. 1, 22 U. S. 211 (1824) ................................................. 21

*Green v. Mansour*,
   474 U.S. 64 (1985) .................................................................. 23

*Green Valley Special Util. Dist. v. City of Schertz*,
   969 F.3d 460, 472 (5th Cir. 2020) ................................................ 24

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1992) ................................................................ 19

*Hines v. Davidowitz*,
   312 U.S. 52 (1941) .................................................................. 18

*Hunt v. Wash. St. Apple Adver. Comm'n*,
   432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) ......................... 19, 21, 25

*Jackson Women's Health Org. v. Currier*,
   760 F.3d 448 (5th Cir. 2014) ...................................................... 35

*Lapides v. Bd. of Regents*,
   535 U.S. 613 (2002) ............................................................. 31, 32

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ................................................................ 33

*Marszalek v. Kelly*,
   No. 20-cv-04270, 2021 U.S. Dist. LEXIS 107613 (N.D. Ill. June 9, 2021) .................... 20

*Martinez v. Regents of Univ. of California*,
   241 P. 3d 855 (Cal. 2010) ......................................................... 19

*Martinez v. Regents of University of California*,
  241 P.3d 855 (CA 2010) ...................................................................................... 13, 16, 17

*Morris v. Livingston*,
  739 F.3d 740 (5th Cir. 2014) .......................................................................................... 29

*N.Y. Progress & Protection PAC v. Walsh*,
  733 F.3d 483 (2d Cir. 2013)............................................................................................ 35

*Nat'l Council of La Raza v. Cegavske*,
  800 F.3d 1032 (9th Cir. 2015) ........................................................................................ 20

*Nat'l Fed'n of Indep. Bus. v. DOL*,
  Nos. 21A244, 21A247, 2022 U.S. LEXIS 496 (Jan. 13, 2022)........................................ 34

*NetChoice, LLC v. Paxton*,
  No. 1:21-CV-840-RP, 2021 U.S. Dist. LEXIS 233460 (W.D. Tex. Dec. 1, 2021).......... 21

*Niz-Chavez v. Garland*,
  141 S. Ct. 1474 (2021)..................................................................................................... 14

*OCA-Greater Hous. v. Texas*,
  867 F.3d 604 (5th Cir. 2017) .......................................................................................... 22

*Patel v. Tex. Dep't of Licensing & Regulation*,
  469 S.W.3d 69 (Tex. 2015)......................................................................................... 7, 31

*PLIVA, Inc. v. Mensing*,
  564 U.S. 604 (2011)........................................................................................................... 9

*Pratt v. Mut. of Omaha Ins. Co.*,
  No. 4:15-CV-00009-DMB-JMV,
  2016 U.S. Dist. LEXIS 40228 (N.D. Miss. Mar. 28, 2016)............................................ 26

*Prison Justice League v. Bailey*,
  697 F. App'x 362 (5th Cir. 2017) ................................................................................... 22

*State ex rel. Brnovich v. Maricopa Cty. Cmty. Coll. Dist. Bd.*,
  243 Ariz. 539 (Ariz. 2018)......................................................................................... 13, 16

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)......................................................................................................... 20

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)..................................................................................... 19

*Tex. Dep't of Transp. v. Sefzik*,
    355 S.W.3d 618 (Tex. 2011)........................................................................ 31

*Tex. Educ. Agency v. Leeper*,
    893 S.W.2d 432 (Tex. 1994)........................................................................ 31

*Tex. Entm't Ass'n v. Hegar*,
    No. 20-50262, 2021 U.S. App. LEXIS 24871 (5th Cir. Aug. 19, 2021) ................... 19, 21

*Texas Ent. Ass'n, Inc. v. Hegar*,
    10 F.4th 495 (5th Cir. 2021) ...................................................................... 22

*United Motorcoach Ass'n, Inc. v. City of Austin*,
    851 F.3d 489 (5th Cir. 2017) ...................................................................... 34

*United States v. Sanders*,
    639 F.2d 268 (5th Cir. 1981) ...................................................................... 33

*Wei-Ping Zeng v. Tex. Tech Univ. Health Sci. Ctr.*,
    836 F. App'x 203 (5th Cir. 2020) .............................................................. 31, 32

*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021)................................................................................. 29

*Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*,
    475 U.S. 282 (1986)................................................................................... 24

*Yassine v. United States*,
    No. A-16-CV-105-LY, 2016 U.S. Dist. LEXIS 178988 (W.D. Tex. Dec. 27, 2016) ...... 26

*Young Conservatives of Tex. Found. v. Univ. of N. Tex.*,
    2021 U.S. Dist. LEXIS 207787 (E.D. Tex. Oct. 28, 2021) ......................... 3, 5, 6, *passim*

**Constitutional Provisions**

U.S. Const., Art. I, § 8, cl. 4................................................................................... 18
U.S. Const., Art. VI, cl. 2...................................................................................... 9

## Statutes

8 U.S.C. § 1103.................................................................................................. 24, 25

8 U.S.C. § 1611.......................................................................................................... 14

8 U.S.C. § 1623............................................................................................ 1, 2, 4, *passim*

8 U.S.C. § 1623(a) ........................................................................................... 16, 19, 25

8 U.S.C. §§ 1601-1614 ............................................................................................... 4

Cal. Educ. Code § 68130.5 ....................................................................................... 17

Tex. Educ. Code

     § 54.051(b)......................................................................................... 8, 27, 28

     § 54.051(d)...................................................................................... 1, 2, 3, *passim*

     § 54.052(a) ............................................................................................... 6

     § 54.052(a)(3) .......................................................................................... 10

## Other Authorities

Neal Smatresk, *Support for DACA and undocumented students — A Message from the President*, UNIV. OF NORTH TEX., https://www.unt.edu/notices/support-daca-and-undocumented-students-message-president (last visited Feb. 3, 2022)...................... 10, 29

*Shared Governance and the Role of Advisory Committees and the Academic Administration,* UNIV. NORTH TEX., https://policy.unt.edu/policy/06-047 (last visited Feb. 3, 2022)........................................................................................ 28

*Tuition, Costs & Aid*, UNIV. OF NORTH TEX., https://admissions.unt.edu/tuition-costs-aid (last visited Feb. 3, 2022)..............................................................................6

*University of North Texas Dreamers Resource Guide*, https://idea.unt.edu/sites/default/files/Final%20Dreamers%20Resource%20Guide%201%209%2019.pdf (last visited Feb. 3, 2022)......................................................... 10

## Rules

Fed. R. Civ. P. 65 ..................................................................................................... 3

Fed. R. Evid. 201 ..................................................................................................... 34

Fed. R. Evid. 801 ..................................................................................................... 33

TO THE HONORABLE SEAN D. JORDAN:

Plaintiff Young Conservatives of Texas Foundation ("YCT") files this combined Response to Defendants' (hereafter "UNT") Cross-Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment.

## RESPONSE TO UNT'S STATEMENT OF ISSUES

The combined motions and cross motions for summary judgment in this case present, at most, three broad issues:

(1)     Is Tex. Educ. Code, Sec 54.051(d) preempted by 8 U.S.C. § 1623 and therefore unconstitutional?

(2)     Does YCT, a student organization with members at UNT injured by Section 54.051(d), have standing to challenge the constitutionality of Section 54.051(d) in this Court?

(3)     Are Defendants, the individuals at UNT that faithfully and willingly apply Section 54.051(d) to YCT's members, proper parties for injunctive relief under *Ex parte Young*?

Because UNT knows the weakness of its positions on these issues, it attempts to make this case appear more complicated than it is. UNT's "issues presented" section expands these core issues into a complicated morass of seven questions and seven additional sub-questions. These "issues presented" include evidentiary arguments, procedural arguments, and a host of arguments already rejected by this Court.

YCT believes this scattershot approach is inconsistent with the purpose of the "issues presented" requirement of LR CV-7. Nonetheless, in accord with LR CV-7, YCT responds to UNT's issues (and sub-issues) as follows:

1.     YCT's summary judgment evidence is proper.

2.     As this Court has already ruled, YCT does not need a *statutory* cause of action for its claims. YCT's claims arise in equity under *Ex parte Young*.

    a.  As this Court has already ruled, YCT does not claim an individual statutory cause of action under 8 U.S.C. § 1623. YCT's claims arise in equity under *Ex parte Young*.

    b.  As this Court has already ruled, YCT does not claim the Supremacy Clause creates a cause of action. YCT's claims arise in equity under *Ex parte Young.*

    c.  As this Court has already ruled, YCT does not claim a constitutional right to pay in-state tuition under the Due Process or Equal Protection Clauses. YCT's claims are based on preemption and arise in equity under *Ex parte Young*.

3.  YCT's claims are not barred by sovereign immunity.

    a.  The Texas legislature explicitly waived sovereign immunity for the Entity Defendants under the Uniform Declaratory Judgements Act and UNT may not reestablish immunity by removal to federal court.

    b.  The Named Defendants are not protected by sovereign immunity because, as this Court has recognized, YCT's claims arise in equity under *Ex parte Young.*

4.  YCT has established the elements of associational standing.

    a.  YCT has established injury-in-fact to its members by providing the declarations of its state chairman and two members at UNT that have paid nonresident tuition. YCT is not required to show that "each of its members" are injured by the challenged law.

    b.  As this Court has already ruled, paying unlawful tuition is an injury and an injunction preventing the payment of that unlawful rate of tuition will remedy that injury. Furthermore, enjoining an unconstitutional law is consistent with the principles of federalism, comity, and the public interest.

5.  8 U.S.C. § 1623 preempts Tex. Educ. Code, Sec 54.051(d) as applied to United States citizens.

6.  YCT has met the elements of injunctive relief and an injunction will be in the public interest because there is no legitimate governmental interest in the application of an unconstitutional law.

7.     YCT's request for injunctive relief is well within the boundaries of clarity required by FRCP 65.

## INTRODUCTION

The merits arguments in this case are "straightforward." *See Young Conservatives of Tex. Found. v. Univ. of N. Tex.*, 2021 U.S. Dist. LEXIS 207787, at *21 (E.D. Tex. Oct. 28, 2021). Federal law sets forth "a simple rule: If a university provides an educational benefit based on residence to an alien who lacks lawful immigration status, then that university must provide the same benefit to a United States citizen regardless of the citizen's residency." *Id*. at 20-21.

In direct contradiction to this Federal law, Texas law makes unlawfully present aliens eligible for the benefit of low-cost "resident tuition" if they can establish residency in Texas, but denies certain United States citizens that same benefit, based on their residency.  Instead, these United States citizens are required by Tex. Educ. Code, Sec. 54.051(d) ("Section 54.051(d)") to pay a significantly higher rate of tuition.

YCT, whose members at UNT include United States citizens that have been denied the benefit of resident tuition under these laws, seeks to enjoin UNT's officials from charging United States citizens at the higher, unlawful, rate set by Section 54.051(d).  Because this presents a pure question of law, YCT has moved for summary judgment.

Aware that it has little hope on the merits, UNT's Response and Cross-motion for Summary Judgment raises more than a dozen separate ancillary or procedural arguments apart from the merits (which itself involves a dozen more arguments) in the hope that if it throws enough at the wall, something will stick.  But many of these arguments have already been rejected by this Court, and the others are precluded by law.  Summary judgment for YCT is proper.

## RESPONSE TO UNT'S STATEMENT OF FACTS

### _Federal Law_

This case turns on the interpretation and application of federal law.  In particular, 8 U.S.C. § 1623 ("Section 1623") provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

Put another way, if a university provides an educational benefit based on residence to an alien who lacks lawful immigration status, then that university must provide the same benefit to a United States citizen regardless of the citizen's residency.  _Id_.

As UNT acknowledges, Section 1623 was passed at the same time as a host of other laws designed to disincentivize illegal immigration to the United States for benefits.  Dkt #52, p. 18. The Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") 8 U.S.C. §§ 1601-1614 dealt with federal benefits, while the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") 8 U.S.C. §§ 1601-1614, §§ 1621-1632 dealt with state benefits.  _Id_.

As UNT acknowledges, however, Congress took a different approach with federal and state programs.  Dkt #52, p. 18.  In many cases, Congress limited federal benefits to unlawfully present aliens outright.  _Id_. at 18-19.  By contrast, Congress allowed states some leeway to provide benefits to unlawfully present aliens, but placed conditions on states' authority to do so.  _Id_. at 19.

Section 1623 fits this mold.  It does not interfere with a state's authority to allow unlawfully present aliens to qualify for resident tuition.  But that choice comes with a cost: if a state chooses

to grant unlawfully present aliens eligibility for resident tuition, it loses its ability to charge higher tuition to United States citizens who are not residents of that state. *See* 8 U.S.C. § 1623. [1]

The sole merits question presented by this case, is whether Texas's tuition laws run afoul of this mandate. They do.

### *Texas's Tuition Laws*

In direct conflict with Section 1623, Texas law allows unlawfully present aliens to qualify for resident tuition, while continuing to charge United States citizens from states other than Texas nonresident tuition. *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *2.

Eligibility for resident tuition in Texas is determined by Section 54.052 of the Texas Education Code. *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *2. That provision provides three paths to resident tuition. A student can gain eligibility by showing that: (1) they established "domicile" in Texas "not later than one year before the census date of the academic term in which the person is enrolled"; (2) if the student is a dependent, that their parent established "domicile" in Texas "not later than one year before the census date of the academic term in which the person is enrolled"; or (3) if the student graduated from a Texas high school, that they "maintained a residence" in Texas for the "three years preceding the date of graduation [from high school] or receipt of the diploma equivalent, as applicable; and … the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education."

---

[1]     UNT puts forward a counter-history of Section 1623 in its statement of facts. UNT claims that Section 1623 merely requires that "no preferential treatment of the alien be given on the basis of residence." Dkt #52, p. 18. But this position is found nowhere in the text or history of the statute. To the contrary, in circumstances where an unlawfully present alien is eligible for benefits on the basis of residence, the text of Section 1623 *requires* preferential treatment for the United States Citizen. In particular, Section 1623 requires that the United States Citizen be granted the same benefit the unlawfully present alien earned by establishing residency on the basis of residency, "*without regard to whether the citizen or national is such a resident.*" 8 U.S.C. § 1623 (emphasis added).

Tex. Educ. Code, Sec. 54.052(a).  Because "domicile" is defined by statute as a "permanent residence," all three methods for establishing resident tuition turn on residency within the state. Tex. Educ. Code, Sec. 54.0501.  Anyone "who fails to meet those residency requirements is not entitled to receive in-state tuition—regardless of whether that person is a United States citizen— and must pay higher tuition rates." *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *2 (citing §§ 54.051(d), 54.052.)

As this Court has recognized, and UNT admits, this statutory scheme allows some "unlawfully present aliens to pay resident tuition rates while United States citizens from states other than Texas may not." *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *2.; Dkt #52 at p. 18.

For United States citizens from states other than Texas—including YCT's members—this is no small matter.  Under Section 54.051(c), the base rate for resident tuition is $50 per semester credit hour.  By contrast, the statutory base rate for nonresident tuition is set by a statutory formula contained in Section 54.051(d).[2]  In practice, and by design, this formula makes nonresident tuition more expensive than resident tuition.  Dkt #2 at p. 6.  For example, in 2022 the difference in cost for a resident student at UNT and a nonresident is around $12,240.  *Tuition, Costs & Aid*, UNIV. OF NORTH TEX., https://admissions.unt.edu/tuition-costs-aid (last visited Feb. 3, 2022).

---

[2]      UNT places significant emphasis on the fact that the base rate under Section 54.051(d) is calculated by Texas Higher Education Coordinating Board (the "Coordinating Board"), not UNT. *See, e.g.,* Dkt #52, p. 16, 17, 20, 24, etc.  But while the Coordinating Board *calculates* the base rate, the formula is set by statute and the Coordinating Board has no enforcement authority.  *Id.* Instead, State law specifically places the application and enforcement Section 54.051(d) under the authority of *public universities*, including UNT, who "shall cause to be collected from students registering at the institution tuition or registration fees at the rates prescribed in this section."  Tex. Educ. Code, Sec. 54.051(b).

## *Factual Background*

YCT is a conservative student organization with members at UNT.  Ex. 2 (Dominguez Dec.).  YCT's members have been required to pay nonresident tuition under Section 54.051(d). *Id*.; see also, Ex. 3 (Student Dec. 1); Ex. 4 (Student Dec. 2).  To resolve these injuries and further its mission, YCT sued UNT in state court seeking: (1) a declaration that Section 54.051(d) was pre-empted and thus unconstitutional, and (2) an injunction preventing UNT from applying Section 54.051(d) to require United States citizens to pay higher tuition based on residency.  Dkt #2 at p. 7–11.

In order to comply with state law[3], and to ensure that its injunctive relief would be effective, YCT sued the UNT officials and entities with authority to oversee and implement Section 54.051(d) in the tuition process.  In particular, YCT sued Shannon Goodman, Neal Smatresk, the University of North Texas, and the University of North Texas System.  *Id.*

UNT claims that these defendants are not involved in the application of Section 54.051(d), (Dkt #52, p. 37) but this is belied by their testimony.  Defendant Goodman is the Vice President of Enrollment at UNT.  Mr. Goodman oversees various departments, including University Admissions, Financial Aid and Scholarships, the Registrar's Office, Enrollment Systems, the Welcome Center, and University Tours. Ex. 5, p. 8–10.  In short, Mr. Goodman is in charge of all departments which cover matters pertaining to the charging and payment of student tuition at UNT. *Id*. at p. 9-10, 15-17.

---

[3]     Under the Uniform Declaratory Judgment Act, YCT was required to sue the University when it brought a facial challenge to Section 54.051(d).  *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 76 (Tex. 2015) ("for claims challenging the validity of statutes, the Declaratory Judgment Act requires that the relevant governmental entities be made parties…").

Mr. Goodman admits that the officials he oversees at UNT comply with state law, including Section 54.051(d), when assessing tuition. *Id*. at p. 16-17, 19-20. He further admits that Section 54.051(d) requires a different rate of tuition for resident and nonresident students (*Id*. at p. 13) and that if the officials he oversees did not comply with state law, including Section 54.051(d), he would have the authority to take action to correct them. *Id*. at p. 16-17.

Defendant Smatresk is the President of UNT. In that role he is "ultimately accountable for what happens at the University, in most cases." Ex. 1, p. 12. Mr. Smatresk also directly oversees the work of Mr. Goodman and his department. Ex 1, p. 11. He also directly oversees Clay Simmons, the University's Chief Compliance Officer, who ensures that the University complies with state law, including Section 54.051(d). *Id.* at p. 12. Mr. Smatresk admits that if Mr. Goodman failed to comply with state law, including Section 54.051(d), he could take action to correct him. *Id.* at p. 11-12.

Defendants the University of North Texas and the University of North Texas System are the entities specifically tasked by statute with the application of the challenged tuition rates. Contrary to UNT's assertions, State law specifically states that the University's governing authority "shall cause to be collected from students registering at the institution tuition or registration fees at the rates prescribed in this section." Tex. Educ. Code, Sec. 54.051(b). Defendants admit that UNT complies with state law, including Section 54.051(d), when assessing tuition. Ex. 5, p. 16-17, 19-20.

Shortly after YCT sued, it moved for summary judgment in state court. UNT responded by removing the case to this Court citing federal question jurisdiction. Dkt #1. UNT then immediately moved to dismiss the case based on a lack of federal subject matter jurisdiction. Dkt #7. That motion to dismiss was denied. Dkt #34.

Having lost its motion to dismiss, UNT then tried to intimidate YCT's members by demanding that YCT produce and make public the names and contact information of all YCT members at UNT, triggering motion practice before this Court.  Dkt #44.  This Court agreed that UNT's demands violated the First Amendment and entered a protective order allowing YCT to produce any student information it deemed appropriate for standing purposes as Confidential Attorneys Eyes Only. Dkt #50.  Almost immediately after that order was entered, (and well before UNT's response brief) YCT produced as confidential the names of two student members who had paid nonresident tuition at UNT and their sworn declarations.  Ex. 3; Ex. 4.

Finally, more than a year after YCT filed its motion for summary judgment, UNT has responded.  As explained below, its arguments fail.

## ARGUMENT

I.  **SECTION 54.051(d) IS PREEMPTED BY FEDERAL LAW AND THEREFORE UNCONSTITUTIONAL**

This case begins and ends with the text of the relevant statutes.   If the text and implementation of state law conflicts with the text of federal law, then the federal law must prevail and state law "must give way".  *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617–18 (2011); *see also*, U.S. Const., Art. VI, cl. 2 ("The Laws of the United States which shall be made in Pursuance" of the United States Constitution are "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.")

Here, the texts of the relevant statutes are straightforward. Section 1623 provides that: "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit *unless* a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." (emphasis added).

Giving this language its plain meaning, this Court held that Section 1623 "sets forth a simple rule: If a university provides an educational benefit based on residence to an alien who lacks lawful immigration status, then that university must provide the same benefit to a United States citizen regardless of the citizen's residency." Dkt #34 at p.18. The Eastern District of Virginia agrees, noting that the most logical reading of "§ 1623 is that public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition *unless* out-of-state United States citizens receive this benefit." *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 607 (E.D. Va. Feb. 24, 2004) (emphasis added).

Texas law plainly violates that command. There is no dispute that aliens who are not lawfully present in the United States are eligible to receive in-state tuition on the basis of residency in Texas. Tex. Educ. Code § 54.052(a)(3); Exhibit 1 at p.23. *See also*, Tex. Educ. Code § 54.052. In fact, UNT encourages undocumented immigrants to apply for this benefit. Neal Smatresk, *Support for DACA and undocumented students — A Message from the President*, UNIV. OF NORTH TEX., https://www.unt.edu/notices/support-daca-and-undocumented-students-message-president (last visited Feb. 3, 2022); *University of North Texas Dreamers Resource Guide*, https://idea.unt.edu/sites/default/files/Final%20Dreamers%20Resource%20Guide%201%209%2 019.pdf (last visited Feb. 3, 2022).

At the same time, it is clear from the text of Tex. Educ. Code § 54.052 that U.S. citizens are denied in-state tuition based on their residency in a state that is not Texas. *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *2 (citing §§ 54.051(d), 54.052.) Instead, U.S. citizens who fail to meet the residency requirements are required to pay nonresident tuition. Tex. Educ. Code § 54.051(d) (calculating the tuition rate for a nonresident student); Tex. Educ. Code §

54.0501(4) (defining nonresident tuition as "tuition paid by a person who is not a resident of this state and who is not entitled or permitted to pay resident tuition under this subchapter.").

Faced with this clear preemption, UNT takes a shotgun approach, raising nearly a dozen arguments on the merits.  Many of these arguments are already adequately addressed by YCT's motion for summary judgment or implicitly ruled out by other arguments in this brief and therefore not repeated here.[4]  The remainder of UNT's merits arguments have been consolidated into the sub-headings below.

### A.    Express preemption does not require an explicit preemption clause

First, UNT argues that Section 1623 does not preempt the law at issue "or any other state statute" because it allegedly does not contain preemption language.  Dkt #52, p. 51.  But the Court has "never required any particular magic words" in express preemption cases.  *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 112 (1992) (Kennedy, J., concurring in part and concurring in the judgment).

Here, Congress' desire to preempt certain state laws is clear from the text.  Section 1623 provides that "[n]otwithstanding any other provision of law, an alien who is not lawfully present in the United States *shall not be eligible* on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit *unless…*" certain criteria are met.  The "unavoidable implication of this provision" is that it was intended to prohibit state laws which provided those benefits without meeting certain conditions.  *See Gade*, 505 U.S. at 99 (majority opinion).  The fact that Section 1623 does not use the word "preemption" is irrelevant.

---

[4]     *See*, Dkt #52, p 53–54 (arguing no implied preemption) compare Dkt #6, p.10–11 (addressing this argument); Dkt #52, p. 54–55 (arguing no impossibility preemption) compare Dkt #6, p. 18–20 (addressing this argument).

UNT argues that reading Section 1623 as preemptive is contrary to the text, because Section 1623 also "expressly allows the states to adopt laws relating to benefits for non-qualified aliens."  Dkt #52, p. 52.  But YCT has never argued that UNT, or Texas, or anyone else is preempted from granting benefits to unlawfully present aliens.  Rather, YCT has always stood by the text of Section 1623—UNT may provide such benefits if it chooses, but *only if* it meets the other requirements of the statute.  Because Texas law and UNT's current tuition practices fail to meet those other requirements, they are preempted.

### B.  Section 54.051(d) need not contain the words "alien" or "postsecondary education benefit" in order to be preempted

In a similar vein, UNT argues that Section 54.051(d) is not preempted because it "does not reference" any of the key terms from Section 1623—*e.g.*, "alien who is not lawfully present," "postsecondary education benefit," "citizen or national of the United States," or "establish any eligibility requirements."  Dkt #52, p. 51.  UNT makes a lot of this argument, printing out a table of both statutory provisions.  *Id*. at p. 50.  According to UNT, this is dispositive, because it means that YCT must allegedly cite other provisions within the Texas Education Code in order to make its preemption argument work.  *Id.*

But preemption is not a simple word-match game that allows state policy makers to avoid federal mandates through clever labeling.  YCT challenged Section 54.051(d) because that is the portion of the statute that injures its nonresident members by unlawfully mandating a higher tuition rate on the basis of residency.  To be sure, that provision would be fine as a matter of preemption if Texas law did not simultaneously make unlawfully present aliens eligible for cheaper, in-state tuition under Sections 54.052, and 54.051(c).  But, as explained above, those provisions *do* make unlawfully present aliens eligible for in-state tuition on the basis of residence.  As such, federal

law forbids UNT from charging higher out of state tuition to United States citizens—which is precisely what Section 54.051(d) mandates.

UNT seems to argue that if YCT wants to challenge the portion of the law that requires its members to pay unlawfully high tuition, it must also challenge the portions of the law that allow unlawfully present aliens to pay in-state tuition.  But as YCT has repeatedly made clear, UNT may charge unlawfully present aliens in-state tuition if it wants.  What it cannot do (without violating federal law) is make unlawfully present aliens eligible for in-state tuition *and* charge out of state tuition to United States citizens.  That is what it has done.  The fact that Section 54.051(d) does not include the words "alien" or "postsecondary education benefit" is beside the point.

### C.    In-State tuition is a postsecondary educational benefit

UNT next argues that in-state tuition is not a "postsecondary education benefit." Dkt #52 at p. 58.  But multiple courts have looked at the issue and come to a contrary conclusion.  *See, e.g., Equal Access Educ.,* 305 F. Supp. 2d at 606 ("[A]liens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit."); *State ex rel. Brnovich v. Maricopa Cty. Cmty. Coll. Dist. Bd.*, 243 Ariz. 539, 541 (Ariz. 2018) ("Federal law generally bars granting in-state tuition to students based on state residency when they are not lawfully present in the United States. See 8 U.S.C. § 1623(a)."); *Martinez v. Regents of University of California*, 241 P.3d 855, 862–63 (CA 2010) (referring to in-state tuition as a postsecondary education benefit under Section 1623); *Foss v. Arizona Bd. of Regents*, 1 CA-CV 18-0781, 2019 WL 5801690, at *6 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens.")

This is in accord with the common understanding of what a "benefit" is.  Any college student or parent of a college student understands the financial benefits of receiving lower tuition

by being classified as an in-state resident.  Indeed, Defendant Neal Smatresk agreed that generally it would benefit students to receive in-state tuition.  Exhibit 1 at p. 23–23.  This common understanding of the term "benefit" should control.  *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021) ("When called on to resolve a dispute over a statute's meaning, this Court normally seeks to afford the law's terms their ordinary meaning at the time Congress adopted them.")

UNT nonetheless argues that benefits under Section 1623 are limited to "payments or direct services of which resident tuition is neither."  Dkt #52, p. 58-59.  But the only case UNT cites for this proposition that dealt with education benefits is *Equal Access Educ.,* 305 F. Supp. 2d 585.  Dkt #52, p. 59.  In that case, the court held that admission to a university was not a postsecondary education benefit under a separate statute, 8 U.S.C. § 1611.  *Equal Access Educ.,* 305 F. Supp. 2d at 605.  But had UNT read the rest of that case, it would have seen that the court also noted that resident tuition—the thing at issue in this case—*is* a postsecondary education benefit under Section 1623.  See *Id.* at 606 ("The more persuasive inference to draw from § 1623 is that public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this *benefit*.") (emphasis added).  UNT's argument therefore fails.

> **D.    Preemption under Section 1623 turns on whether aliens are eligible for a benefit on the basis of residency, not whether they receive "preferential treatment."**

UNT next argues that all Section 1623 requires is that United States citizens be able to establish eligibility for resident tuition on the same terms as unlawfully present aliens—*i.e.,* by showing residency in Texas.  Dkt #52, p. 57.  UNT reaches for this meaning by selectively quoting a portion of Section 1623's title—*i.e.*, "limitation on eligibility for preferential treatment of aliens."  Dkt #52, p. 56.  This argument fails for two reasons.

14

First, even if UNT's selective quotation of the section title could be reasonably read as an equal treatment provision—which it cannot—it would be irrelevant, because such a reading conflicts with the text of the operative provisions of Section 1623. *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R.*, 331 U.S. 519, 528–29 (1947) ("The title of a statute . . . cannot limit the plain meaning of the text."). As explained above, Section 1623 does not merely require equal treatment. To the contrary, in circumstances where an unlawfully present alien is eligible for benefits on the basis of residency, Section 1623 plainly requires *preferential treatment* for United States citizens—namely, that United States citizens be granted the same benefit given to the unlawfully present alien on the basis of residency, "*without regard* to whether the citizen or national is such a resident." 8 U.S.C. § 1623 (emphasis added).

Second, when read in full, Section 1623's title does not imply that it is an equal treatment provision. The title for Section 1623 is not "limitation on preferential treatment of aliens," as UNT suggests. Rather, the full title is "[l]imitation on ***eligibility for preferential treatment*** of aliens not lawfully present ***on basis of residence*** for higher education benefits." (Emphasis added). This additional language matters.

Putting aside immigration for the moment, there is no dispute that in-state tuition is, by definition, "preferential treatment" for some students "on the basis of residence." In particular, Texas residents attending Texas universities receive "preferential treatment" in comparison to nonresidents in the form of lower in-state tuition, which is often thousands of dollars cheaper per-semester than the tuition paid by their out-of-state counterparts for the same education. Dkt #2 at p. 6.

Given this context, the most obvious inference to draw from Section 1623's title is that the statute was designed to limit unlawfully present aliens' eligibility for *that* preferential treatment—

*i.e.*, in-state tuition—not to require that U.S. Citizens and unlawfully present aliens be treated the same with regard to establishing residency.  Indeed, numerous courts, including this Court, have read the statute that way.[5]  UNT's reliance on a selective quotation from the section title fails.

> **E.   The Federalism Canon does not apply because Congress has spoken clearly**

UNT argues that this Court should not give Section 1623 its common meaning, because "the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress."  Dkt #53 p. 48.  And UNT contends that there is no evidence that Congress "intend[ed] to displace state law regarding state postsecondary benefits."  Dkt #52 p. 49.

But Section 1623 clearly anticipates that it will affect state law regarding state "postsecondary education benefits."  Indeed, Section 1623 directly regulates eligibility for "postsecondary education benefit[s]" *by name*.  8 U.S.C. § 1623(a).  It is difficult to imagine a clearer indication of Congressional intent to regulate in this area.

To be sure, courts should tread carefully when presuming that Congress intended to reach activity traditionally regulated by the states.  But that caution cannot be transformed into license to rewrite a federal law merely because it has incidental impacts on state powers.  Under "the

---

[5]    *See, e.g.*, *Equal Access Educ.,* 305 F. Supp. 2d at 606 ("[A]liens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit."); *State ex rel. Brnovich v. Maricopa Cty. Cmty. Coll. Dist. Bd.*, 243 Ariz. 539, 541 (Ariz. 2018) ("Federal law generally bars granting in-state tuition to students based on state residency when they are not lawfully present in the United States. See 8 U.S.C. § 1623(a)."); *Martinez v. Regents of University of California*, 241 P.3d 855, 862–63 (CA 2010) (stating that granting in-state tuition undocumented aliens on the basis of residency would be barred by Section 1623); *Foss v. Arizona Bd. of Regents*, 1 CA-CV 18-0781, 2019 WL 5801690, at *8 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens.")

Supremacy Clause… any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade*, 505 U.S. at 108 (cleaned up).

### F.    Eligibility for resident tuition turns on residence

UNT next argues that Section 54.051 (d) is not preempted because "Resident Tuition" allegedly does not turn on residence.  However, every residency determination under Texas Education Code Section 54.052(a) turns on whether the student is a resident within the State of Texas.  *See* Tex. Educ. Code § 54.052 (requiring a showing of "domicile" or "residence" for each category); Tex. Educ. Code § 54.0501(3) (defining "domicile" as "a person's principal, permanent *residence*…") (emphasis added).

UNT points to *Martinez v. Regents of Univ. of California*, 241 P. 3d 855 (Cal. 2010), which held that California's in-state tuition program was not preempted by Section 1623, because it did not turn on residence.  But under California law, a student could qualify for in-state tuition if they attended high school in California for at least three years and met other statutory requirements, none of which involved residency within California. Cal. Educ. Code § 68130.5.  *Martinez*, 241 P.3d at 864 (emphasis added).  For example, "some students who live in an adjoining state or country are permitted to attend high school in California in some circumstances, even though they are not California residents." *Id*.  The "children of parents who live outside of California but who attend boarding schools in California might attend California high schools for three years, yet not be California residents." *Id*.  And "those who attended high school in California for three years but then moved out of the state and lost their residency status would apparently be eligible for the exemption if they decided to attend a public college or university in California." *Id*.

None of that is true in Texas.  In fact, while UNT claims that former Texas high school students are eligible for in-state tuition without regard to residency, the statute tells a different

story.  Section 54.052 is clear that a student may establish residency if she attended a Texas public high school "***and…maintained a residence*** continuously in this state for the three years preceding the date of graduation…***and*** the year preceding the census date of the academic term in which the person is enrolled in an institution." (Emphasis added).  UNT's reliance on *Martinez* is therefore misplaced.

### G.    UNT's half-hearted challenge to the Constitutionality of Section 1623 fails

Finally, after failing to provide compelling interpretations of the text, history, or purpose of Section 1623, UNT makes a desperate half-attempt at arguing against the statute's constitutionality.  Without any case citations, UNT proposes that the plain-text reading of Section 1623 would "exceed congressional authority to regulate the States."  Dkt #52 at p. 63.

But the federal government's power to regulate the uniquely federal interest of immigration and naturalization is well established.  *Arizona v. United States*, 567 U.S. 387, 395 (2012).  This authority is derived from several sources, including Congress's power to "establish an uniform Rule of Naturalization" (U.S. Const., art. I, § 8, cl. 4) and the Necessary and Proper Clause. *Chadha v. Immigration & Naturalization Serv*., 634 F.2d 408, 418 (9th Cir. 1980).  Indeed, "[t]he regulation of aliens is so intimately blended and intertwined with responsibilities of the national government that where it acts, and the state also acts on the same subject, 'the act of Congress, or the treaty, is supreme; and the law of the State, though enacted in the exercise of powers not controverted, must yield to it.'"  *Hines v. Davidowitz*, 312 U.S. 52, 66 (1941) (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 22 U. S. 211 (1824)).

Here, Congress took action to discourage (but not prohibit) states from offering benefits to unlawfully present aliens.  It did so because it realized that eligibility for such benefits can encourage activity—illegal immigration—that federal law prohibits.  In discouraging states from

enacting policies that directly contradict federal immigration policy, Congress was well within its Constitutional authority.  UNT provides no case citation or argument to the contrary.

## II.      YCT HAS STANDING TO CHALLENGE SECTION 54.051(d)

For a litigant to have standing, it usually must show "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (cleaned up).  When these requirements are met, a plaintiff may sue on its own behalf.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1992).

An association, like YCT, may also "have standing to assert the claims of its members even where it has suffered no injury from the challenged activity." *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 504 (5th Cir. 2021) (alteration and quotation omitted).  To establish associational standing, the association must show that (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

UNT does not argue that prong two is not met here—*i.e.*, UNT does not dispute that the interests YCT seeks to protect are germane to the organization's purpose.  And with good reason: this Court has already recognized that YCT likely meets this burden.  *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *7 n.1; see also, *Ass'n of Am. Physicians & Surgs. v. Tex. Med. Bd., (TMB)*, 627 F.3d 547, 550 n.2 (5th Cir. 2010) ("the germaneness requirement is 'undemanding' and requires 'mere pertinence' between the litigation at issue and the organization's purpose.").

Instead, UNT objects that: (1) YCT has failed to provide sufficient evidence that its members have been injured by Section 54.051(d); and (2) even if YCT's members have been injured, such claims require that the members themselves be made parties.  Both of these arguments fail.

### A.   YCT's members have been injured by Section 54.051(d)

To establish associational standing YCT need only provide evidence that "at least one" of its members is injured by Tex. Educ. Code § 54.051(d).  *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).  The law is unclear on what evidence is required to meet this burden. *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (discussing the lack of clarity).  Some courts have held that the name of an injured member is, eventually, necessary.  *Id*.  Others have held that uncontested sworn declarations of association leadership regarding its membership, even without naming specific members, are sufficient.  *Id*.; *Marszalek v. Kelly*, No. 20-cv-04270, 2021 U.S. Dist. LEXIS 107613 (N.D. Ill. June 9, 2021) (uncontested declarations of leadership were sufficient); *see also Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976) (doubting the relevance of membership information when members were not seeking damages and "Appellees had ample discovery means and opportunity, as provided by the Federal Rules, to depose the chief officer…")

Either way, YCT has met its burden.  At the outset of this case, YCT provided the uncontroverted declaration of YCT's state chairman, swearing that YCT had members at UNT that had been required to pay nonresident tuition.  Ex 2.  UNT chose not to depose YCT's chairman and has never produced *any* evidence conflicting with his sworn statements.

Additionally, after this Court entered a protective order protecting the identity of YCT's members (and well before UNT filed its response), YCT also provided UNT with the names *and* sworn declarations of two YCT members who are U.S. Citizens that paid nonresident tuition at

UNT.  Ex. 3, 4.  YCT has since learned that one of those members was dropped from her classes at UNT on January 18th, 2022, because she was unable to afford tuition, only further aggravating her injuries.  Ex. 6 (student declaration 3).[6]  These injuries to YCT members are sufficient to establish standing.  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977) (an association has standing if "its members, or any one of them, are suffering immediate or threatened injury…").

Desperate to avoid the merits of this case, UNT argues that YCT must show that "all" or "many" of its members are injured by the challenged law.  Dkt #52, p. 13, 44.  But the law only requires evidence that at least *one* member is injured.  YCT has already exceeded that burden.

### B.   YCT's individual members need not be parties to this case

UNT next argues that YCT does not have associational standing because the nature of its claims allegedly requires that YCT's individual members be made parties.  But this Court has already rejected that argument.  *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *7 n.1.

This Court's ruling is well supported.  YCT has brought a facial challenge to a state law. A "facial challenge generally is not fact intensive and does not require individual members to participate."  *NetChoice, LLC v. Paxton*, No. 1:21-CV-840-RP, 2021 U.S. Dist. LEXIS 233460, at *16 (W.D. Tex. Dec. 1, 2021).  Moreover, YCT is seeking only declaratory and injunctive relief. When, as in this case, a party is seeking injunctive relief and has "adduced evidence that its members were affected by the implementation of the [challenged law,] [f]urther participation by [its] members [is] not necessary, and [it] ha[s] associational standing to challenge the [law]."  *Tex.*

---

[6]   Despite best efforts, YCT has not yet received the signed declaration from this student, but was informed today that it will be signed and provided by tomorrow 2/9/2022. YCT intends to supplement this brief with that exhibit as soon as it is received. YCT notified UNT's counsel of the circumstance. However, even without this additional exhibit, YCT has done more than enough to establish standing.

*Entm't Ass'n v. Hegar*, No. 20-50262, 2021 U.S. App. LEXIS 24871, at *11 (5th Cir. Aug. 19,
2021); see also, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (when an
"association seeks a declaration, injunction, or some other form of prospective relief, it can
reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of
the association actually injured.").

UNT objects that YCT's individual members must be made public parties, so that it can
engage in a "fact-intensive" inquiry into *the degree* in which they are injured by Section 54.051(d).
Dkt #52, p. 46.  But the circumstances of YCT's individual members are relevant in this case solely
to determine whether at least one has suffered an injury sufficient for Article III standing.[7]  In that
inquiry, the *degree* of YCT's members is irrelevant.  The "injury in fact requirement under Article
III is qualitative, not quantitative, in nature."  *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612
(5th Cir. 2017).  An Article III "injury-in-fact need not be substantial."  *Id*.  Indeed, 'it need not
measure more than an 'identifiable trifle.'"  *Id*.  When, as here, a plaintiff is an object of a
regulation, "'there is ordinarily little question that the action or inaction has caused him injury, and
that a judgment preventing or requiring the action will redress it.'"  *Contender Farms, L.L.P. v.
United States Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015).

YCT has provided sufficient evidence to show that it has members subject to the higher
tuition mandated by Section 54.051(d).  As this Court has already recognized, being subject to this

---

[7]     UNT points to *Prison Justice League v. Bailey*, 697 F. App'x 362, 363 (5th Cir. 2017).  But
in that case, the cause of action itself turned on the member's individual circumstances.  In that
case, the Prison Justice League (a prisoners advocacy group) sought to represent various members
who had allegedly suffered excessive force or retaliation at the hands of various prison officers.
Because both excessive force and retaliation are "necessarily fact-intensive" claims that depend
on "the facts and circumstances of each particular case" –*e.g.*, the level of force used, and the
motive of the individual officer are essential elements of the claim—the court held that
associational standing was not appropriate.  *Id*. at 364.  Here, the elements of YCT's challenge to
state tuition laws do not turn on individual circumstances.

higher tuition requirement is a real injury sufficient to establish associational standing.  *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *8.  No further member involvement is necessary.

## III.    UNT'S PROCEDURAL AND EVIDENTIARY ARGUMENTS FAIL

Because UNT knows that its merits and standing arguments are weak, UNT spends the majority of its brief on various tangential objections.   As explained below, many of these objections have already been rejected by this Court.  The remainder fail.

### A.    This Court has already ruled that YCT's claims arise in equity under *Ex parte Young* and no statutory cause of action is necessary

UNT first argues that YCT's claims should be rejected because YCT has failed to cite a cause of action.  Dkt #52, p. 27 -30.  But this is just a rehash of UNT's Motion to Dismiss, which this Court already rejected.  *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *10.  As this Court recognized, YCT's claims arise in equity and therefore no statutory cause of action is required.  *Id*. at *11.  This is in accord with binding precedent from the Supreme Court.  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).

For the same reason, two more of UNT's objections fail.  First, UNT objects that the Supremacy Clause does not create a cause of action.  Dkt #52, p. 28.  This is true, but irrelevant.  As this Court has already recognized, YCT never claimed that that the Supremacy Clause creates a cause of action.  Rather, YCT brings its claims pursuant to *Ex parte Young*, which the Supreme Court has noted "gives life to the Supremacy Clause."  *Green v. Mansour*, 474 U.S. 64, 68 (1985).

Second, UNT spends multiple pages explaining why it does not believe YCT has a valid equal protection claim under 42 U.S.C. 1983.  Dkt #52, p. 28-30.  But as this Court has already recognized, YCT did not bring an equal protection claim under 42 U.S.C 1983.   *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *10 n.3.  Nor was YCT required to establish an

equal protection violation or other independent constitutional right for its preemption claims to go forward. *Id.* at *14 (citing *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 472, 475 (5th Cir. 2020) (en banc) (noting that the case could proceed against state officials because the plaintiff had "a cause of action against them *at equity*, regardless of whether it [could] invoke § 1983"). It is well established that preemption claims *are* constitutional claims and *Ex parte Young* is the proper vehicle for bringing them. *Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*, 475 U.S. 282, 286 n.4 (1986).

UNT provides no new arguments that would justify this Court departing from its previous holdings. Accordingly, UNT's attempt to relitigate its failed Motion to Dismiss should be rejected.

## B. The Named Defendants are not protected by sovereign immunity because YCT has properly established a claim under *Ex parte Young*

UNT next argues that YCT's claims are barred by sovereign immunity. But, again, this Court has already largely rejected this claim. "[T]his lawsuit is a classic application of *Ex parte Young*: Young Conservatives seeks prospective injunctive relief that would prevent UNT officials from enforcing a state law against its members that allegedly runs counter to federal law." *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *21. Accordingly, sovereign immunity does not bar relief. *Green*, 474 U.S. at 68.

UNT argues in its Response that *Ex parte Young* does not apply. But, these arguments have either already been rejected by this Court, are waived, or fail on their own merits.

### 1. This Court has already rejected UNT's argument that the application of *Ex parte Young* is precluded by *Armstrong*

UNT argues that two factors from *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015), preclude the application of *Ex parte Young* here. In particular, UNT argues that: (1) 8 U.S.C. § 1103 grants the Secretary of Homeland Security exclusive authority for enforcing

Section 1623, thus precluding private equitable relief; and (2) the statutes at issue are too complex for this court to craft a judicially administrable remedy.  Dkt #52, p. 41, 42.  But this Court has already fully evaluated these arguments and rejected them.

With regard to UNT's first argument, this Court rightly held that an exclusive remedy was "nowhere to be found in the text of 8 U.S.C. § 1103.  And UNT does not cite any other provision of IIRIRA indicating that Congress provided a 'sole remedy' for violations of Section 1623(a)." *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *18.  UNT's response presents no new evidence or argument that would justify the Court departing from this holding.  Indeed, it does not present any new evidence or argument on this point at all.

With regard to UNT's arguments on complexity and judicial administrability, this Court held that:

> Unlike the claim at issue in *Armstrong*, Young Conservatives' preemption challenge to Section 54.051(d) would not require application of a 'judicially unadministrable' standard.  Section 1623(a) of IIRIRA is not 'judgment-laden,' 'broad,' or 'unspecific.'  To the contrary, it sets forth a simple rule: If a university provides an educational benefit based on residence to an alien who lacks lawful immigration status, then that university must provide the same benefit to a United States citizen regardless of the citizen's residency…***it is 'difficult to imagine' a more straightforward requirement***…

*Id.*, at *20-21 (emphasis added, citations and brackets omitted).

UNT has provided no new argument or evidence that would justify a departure from this Court's prior ruling.  Its attempt to relitigate its Motion to Dismiss should be rejected.

### 2.    Defendants Smatresk and Goodman are proper defendants

UNT next claims that Defendants Smatresk and Goodman do not have a sufficient connection to the application of Section 54.051(d) to be proper parties for relief under *Ex parte*

*Young*.  Dkt #52, p. 34-39.  To the extent this argument has not been waived[8], it fails.  To be a proper defendant under *Ex parte Young* a public official need only have "*some connection* with the enforcement of the [challenged law]."  *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017) (emphasis added).  That burden is met if the defendant has taken or can take "specific action predicated on the [challenged] statute" or has "authority to oversee" a system predicated on the challenged statute.  *Id*. at 518, 520.

This Court has already noted that both Named Defendants appear to meet that burden.  *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *12-13.  Further discovery has confirmed that presumption to be true.

Defendant Goodman is the Vice President of Enrollment at UNT.  Mr. Goodman admits that he oversees all departments which cover matters pertaining to the charging and payment of student tuition at UNT.  Ex. 5 at p. 9-10, 15-17.  Mr. Goodman admits that the officials he oversees at UNT comply with state law, including Section 54.051(d), when assessing tuition.  *Id*. at p. 16-

---

[8]      Any argument that Defendants Smatresk and Goodman do not have a sufficient connection to Section 54.051(d) has likely been waived.  In response to UNT's motion to dismiss, YCT explicitly argued that both Smatresk and Goodman apply Section 54.051(d) and therefore have a sufficient connection to the challenged law, and "**UNT [did] not argue otherwise**."  *Young Conservatives*, 2021 U.S. Dist. LEXIS 207787, at *13 (emphasis added).  Later, in response to this Court's order to show cause (Dkt #36) YCT once again provided evidence that both Smatresk and Goodman apply Section 54.051(d) and are proper parties under *Ex parte Young*. Dkt #37, p 3-4.  In its reply to that brief, UNT again did not provide any evidence to the contrary. *See* Dkt #42, p 4.  Furthermore, throughout the duration of this litigation, YCT's counsel has repeatedly requested that UNT comply with FRCP 26(f) by explaining any argument or theory that it had as to why Smatresk and Goodman may not be proper parties, and UNT repeatedly refused. *See, e.g.,* Dkt #37, p. 4; Dkt #37-3.  Because UNT has repeatedly refused to address this argument when raised in prior briefing, any argument it seeks to raise here is waived.  *See CardSoft, LLC v. VeriFone, Inc.*, 807 F.3d 1346, 1353 (Fed. Cir. 2015); *Pratt v. Mut. of Omaha Ins. Co.*, No. 4:15-CV-00009-DMB-JMV, 2016 U.S. Dist. LEXIS 40228, at *27 n.19 (N.D. Miss. Mar. 28, 2016) (cursory argument in response brief resulted in waiver); *Yassine v. United States*, No. A-16-CV-105-LY, 2016 U.S. Dist. LEXIS 178988, at *14 (W.D. Tex. Dec. 27, 2016) (failure to brief issue in response resulted in waiver).

17, 19-20.  He further admits that Section 54.051(d) requires a different rate of tuition for resident and nonresident students (*Id*. at p. 13) and that if the officials he oversees did not comply with state law, including Section 54.051(d), he would have the authority to take action to correct them.  *Id*. at p. 16-17.  If a student wishes to contest their tuition or residency determination, that appeal would be handled by a committee, which is also in the department Mr. Goodman oversees.  *Id*. at 28-29.  Accordingly, Mr. Goodman is a proper defendant for injunctive relief because he can take "specific action predicated on" Section 54.051(d) and has "authority to oversee" a system predicated on Section 54.051(d).  *Air Evac EMS*, 851 F.3d at 518, 520.

Defendant Smatresk is likewise a proper defendant.  Mr. Smatresk is the President of UNT.  In that role he is "ultimately accountable for what happens at the University, in most cases."  Ex. 1, p. 12.  Mr. Smatresk also directly oversees the work of Mr. Goodman and his department, which covers all issues pertaining to tuition.  Ex 1, p. 11.  Mr. Smatresk admits that if Mr. Goodman failed to comply with state law, including Section 54.051(d), while performing his duties, Mr. Smatresk could take action to correct him.  *Id.* at p. 11-12.  Mr. Smatresk also directly oversees Clay Simmons, the University's Chief Compliance Officer, who ensures that the University complies with state law, including Section 54.051(d).  *Id.* at p. 12.  Accordingly, Mr. Smatresk can take "specific action predicated on" Section 54.051(d) and has "authority to oversee" a system predicated on Section 54.051(d).  He is therefore a proper party for injunctive relief.  *Air Evac EMS*, 851 F.3d at 518, 520.

UNT objects that neither Defendant *calculates* the annual nonresident rate which UNT faithfully applies on its campus.  This is true.  Under state law, the Texas Higher Education Coordinating Board (the "Coordinating Board") calculates the base tuition rate that must be applied for nonresident tuition at UNT and other universities across the state.  But the formula for

27

calculating the rate is set by statute, and state law specifically tasks *the University's "governing board"*—not the State Coordinating Board—with the application and enforcement of those rates. In particular, Tex. Educ. Code Sec. 54.051 (b) requires that the University's governing board "shall cause to be collected from students registering at the institution tuition or registration fees at the rates prescribed in this section."  Tex. Educ. Code, Sec. 54.051(b).  And UNT's governing board has delegated its authority to collect tuition to Defendants Smatresk and Goodman.[9]  In this regard, this case is virtually identical to *Ex parte Young*.

In *Ex parte Young,* the plaintiffs challenged the application of certain statutorily mandated rates for merchandise moved by railroad.  *Ex parte Young*, 209 U.S. 123 (1908).  Like the statute at issue here, the statute in *Ex parte Young* mandated that the challenged rates be set and calculated by a state-created body—the "Railroad and Warehouse Commission"—or were otherwise specified by statute.  *Id*. at 142 (syllabus).  Like the statute at issue here, the Commission that calculated the rates did not apply or enforce the rates but instead, left the enforcement to others. *Id*.  The plaintiffs, who were subject to the challenged rates, sued the Attorney General.  Like the Defendants in this case, the Attorney General did not calculate the rates, but merely had authority to ensure that others complied with the rules.  Nonetheless, the Supreme Court held that the Attorney General was a proper party for injunctive relief because he had authority to take action

---

[9]      Tex. Educ. Code 61. 003 (9) defines the "governing board" of a university as "the body charged with policy direction of any public technical institute, public junior college, public senior college or university…" At UNT, authority for policy making "vests in the Board of Regents, chancellor, *and the president*" (emphasis added). *Shared Governance and the Role of Advisory Committees    and    the    Academic    Administration,*  Univ. North Tex., https://policy.unt.edu/policy/06-047 (last visited Feb. 3, 2022).  The "president [Defendant Smatresk] may delegate authority to other members of the university administration as allowed by state law and Regents Rules; however, authority rests only with individuals - who are directly accountable for the decisions they make - *and may not rest with a committee*." *Id*.  Mr. Smatresk admits that he is "ultimately accountable for what happens at the University, in most cases."  Ex. 1, p. 12. And UNT has delegated authority over tuition issues to Mr. Goodman.  Ex. 5 p. 9–10.

to ensure compliance with the law.  *Id*. at 160, 161.  Similarly here, the Defendants may not calculate the base tuition rate, but they directly apply it and ensure that their subordinates do as well.  That is sufficient to make them proper defendants under *Ex parte Young*.

UNT points to two cases, neither of which apply.  First, UNT points to *Morris v. Livingston*, 739 F.3d 740, 742 (5th Cir. 2014), where an inmate attempted to sue the Governor for failures of prison officials to comply with the law. Because the Governor neither applied the laws at issue nor directly supervised those that did, he was not a proper party.  But, unlike the Governor in *Morris*, Tex. Educ. Code Sec. 54.051 (b) specifically tasks UNT with applying the challenged rates, and Defendants admit that they do so.

Second, UNT points to the Supreme Court's recent decision in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021).  In that case, the Court held that state court clerks docketing petitions were not proper parties for injunctive relief under *Ex parte Young*, because court officials are generally not adverse to those filing petitions.  But that case is inapposite for at least two reasons.  First, *Whole Women's Health* came out the way it did because *Ex parte Young* has always had an explicit exception for court officials.  *Id.* at 532.  To apply that exception outside of the court officer context goes beyond the four corners of the case and would radically limit the viability of *Ex parte Young*.

Second, unlike the court clerks in *Whole Women's Health*, Defendants are not disinterested parties with no concern about the application of Section 54.051(d).  UNT claims that enjoining the application of Section 54.051(d) at UNT would cost the university "approximately $25,000,000 per semester." Dkt #52, p. 64.  Defendants have all fought hard in this case to preserve that unlawful income stream.  Moreover, UNT generally, and Smatresk in particular, actively encourages unlawfully present aliens to apply for resident tuition—the very activity that triggers

the pre-emption in this case.  Neal Smatresk, *Support for DACA and undocumented students — A Message from the President*, UNIV. OF NORTH TEX., https://www.unt.edu/notices/support-daca-and-undocumented-students-message-president (last visited Feb. 3, 2022).  In other words, the evidence shows that Defendants have an active desire to continue to provide the benefit of resident tuition to unlawfully present aliens while simultaneously denying that benefit to United States citizens on the basis of residency.  Defendants are therefore sufficiently adverse to be parties in this case.

### 3.    An injunction in this case would prevent the application of the challenged law

UNT next argues that an injunction would not be effective, because Defendants do not set the rate for nonresident tuition and could not make a new rate even if they wanted to.  Dkt #52, p. 40.  But executive officials enjoined under *Ex parte Young* seldom write the laws they are enjoined from enforcing.  That does not mean those officials cannot be enjoined.

Moreover, contrary to its assertions, UNT has ample authority to set a new rate for nonresident students that complies with federal law.  In particular, Tex. Educ. Code Sec. 54.0513 makes clear that in addition to amounts set by Section 54.051, the university may charge "any student an amount designated as tuition" that its governing board "considers necessary for the effective operation of the institution."  Accordingly, in the absence of a clear mandate from Section 54.051(d), Section 54.0513 would provide ample authority to set new rates that comply with federal law.

But UNT's objection fails for a better reason.  At its core, UNT's argument presupposes that this Court cannot enjoin the application of an unconstitutional law unless it explains how to replace it.  This is a blatant call for judicial activism.  The Texas Supreme Court, for example, has

struck down Texas's funding model for public schools on multiple occasions.  And as that court explained:

> [a]lthough we have ruled the school financing system to be unconstitutional, we do not now instruct the legislature as to the specifics of the legislation it should enact; nor do we order it to raise taxes.  The legislature has primary responsibility to decide how best to achieve an efficient system.  We decide only the nature of the constitutional mandate and whether that mandate has been met.

*Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391, 399 (Tex. 1989).  Similarly, this Court need not explain the best way for UNT to manage its budget or construct a tuition model that complies with federal law in order to enjoin the current application of an unconstitutional law.

### C.   The Entity Defendants cannot reestablish sovereign immunity that was specifically waived by statute by removing a case to this Court

UNT next argues that even if *Ex parte Young* provides a waiver of immunity for the named Defendants, no such waiver exists for the Entity Defendants—the University of North Texas and the University of North Texas System.  But YCT fully responded to this argument in its response to this Court's Order to Show Cause (Dkt #37) and UNT did not offer any substantive response.  *See* Dkt #42 (failing to respond *at all* to YCT's immunity waiver argument regarding *Lapides* or *Wei-Ping Zing*).

YCT originally filed this lawsuit in state court under the Uniform Declaratory Judgment Act (UDJA).  As the Texas Supreme Court has repeatedly explained, "for claims challenging the validity of statutes, the Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity."  *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 76 (Tex. 2015) (cleaned up) (citing, *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994); *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621-22 & n.3 (Tex. 2011).

Because the UDJA waived immunity for YCT's claims in state court, UNT may not circumvent that waiver by voluntarily removing the case to this Court.  When "the State has explicitly waived sovereign immunity from state-court proceedings…" the government may not re-establish immunity by "remov[ing] a case from state court to federal court."  *Wei-Ping Zeng v. Tex. Tech Univ. Health Sci. Ctr.*, 836 F. App'x 203, 207 (5th Cir. 2020) (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 620 (2002)).

Despite multiple opportunities, UNT has never even attempted to explain how its claim of immunity is not precluded by these cases.  UNT's assertion of immunity fails.

**D.   YCT's summary judgment evidence is properly before this Court**

Next, UNT raises three objections to YCT's summary judgment evidence.  First, UNT argues that paragraphs 5 and 6 of UNT Chairman Will Dominguez's declaration are inadmissible under Federal Rule of Evidence 602, because he allegedly provides "no testimony to support the basis for his personal knowledge" that YCT has members at UNT that have paid nonresident tuition. Dkt #52, p 27.

But this is refuted by simply reading the Declaration.  Mr. Dominguez is the state chairman of YCT.  Dkt #6-1, p. 1.  He swears that he "oversees" the UNT chapter and knows its roster.  *Id* at p. 1-2.  Mr. Dominguez's declaration also includes a sworn statement that his claims regarding YCT's student roster are based on "personal knowledge."  *Id*., at p 1 (emphasis added).  That is sufficient to comply with Rule 602.

UNT's objection, at bottom, is that *it thinks* that it is unlikely that the state chairman of YCT would have any "personal knowledge" of whether the UNT chapter he oversees has members that paid nonresident tuition.  Dkt #52, p. 27.  But UNT provides no basis for these doubts.  Moreover, Mr. Dominguez's declaration was submitted over a year ago.  If UNT doubted the

veracity of Mr. Dominguez's sworn statements, it had over a year to depose Mr. Dominguez or seek other discovery to establish the basis of his statements.  It did not do so.  Its failure to avail itself of the discovery process is not a basis to exclude Mr. Dominguez's testimony.

Nor does UNT's eleventh-hour, conclusory statement that it does not trust Mr. Dominguez create a factual dispute sufficient to preclude summary judgment.  A litigant opposing summary judgment "may not rest upon conclusory allegations or denials" but instead "must present affirmative evidence" contradicting the movant's theory of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  As the Supreme Court has explained, at a minimum, "the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

Second, UNT objects to paragraphs 8-12 of Mr. Dominguez's declaration (Dkt #6-1, p. 2) where he explains YCT's mission and gives examples of various issues YCT has advocated for. Dkt #52, p. 26.  But, again, there is no basis to doubt that the state chairman of YCT has personal knowledge of YCT's mission and advocacy, and UNT has had more than sufficient time to conduct discovery if those claims were in question.

Finally, UNT objects to Exhibits A–L of the Dominguez declaration which were provided as examples of YCT's advocacy on various issues.  UNT objects that these Exhibits are hearsay and unauthenticated.  Dkt #52 at p. 26–27.  But these objections fail.

First, even if the exhibits were excluded, it would have no effect on the outcome of this case.  Mr. Dominguez is fully competent as the state chairman of YCT to testify as to YCT's policy positions, and his testimony as presented is sufficient without the added exhibits.

Second, the exhibits are not hearsay as they are not presented for the truth of the matter asserted, but rather to simply note that YCT has spoken on these topics.  Fed. R. Evid. 801; *United States v. Sanders*, 639 F.2d 268, 270 (5th Cir. 1981) ("if the statement was offered on a non-assertive basis, *i.e.*, for proof only of the fact that it was said, the statement would not be subject to the hearsay objection.").

Finally, as for authentication, each of these documents is publicly available and subject to judicial notice.  Fed. R. Evid. 201.  UNT's objections should therefore be denied.

### E.    YCT has established the factors for injunctive relief

To establish entitlement to injunctive relief, a plaintiff must show: "(1) success on the merits; (2) the failure to grant the injunction will result in irreparable injury; (3) the injury outweighs any damage that the injunction will cause the opposing party; and (4) the injunction will not disserve the public interest."  *United Motorcoach Ass'n, Inc. v. City of Austin*, 851 F.3d 489, 492–93 (5th Cir. 2017).

If this Court has reached this portion of the analysis, it is because it has already concluded that elements (1) and (2) are met—*i.e.*, that Section 54.051(d) is unconstitutional and injures YCT's members.  Faced with these conclusions, UNT leans heavily on the equitable public interest considerations from elements (3) and (4).  In particular, UNT argues that even if Section 54.051(d) is unconstitutional, this Court should not grant an injunction because it would allegedly cost UNT $25,000,000 per semester and create a "patchwork of tuition rates across the state."  Dkt #52, p. 64.

But "[i]t is not [this Court's] role to weigh such tradeoffs*." Nat'l Fed'n of Indep. Bus. v. DOL*, Nos. 21A244, 21A247, 2022 U.S. LEXIS 496, at *11 (Jan. 13, 2022) (risk to "over 6,500 lives and …hundreds of thousands of hospitalizations" was not sufficient to preclude stay of

unlawful mandate).   Indeed, even at the preliminary injunction phase, once a constitutional violation has *likely* been established, the other preliminary injunction factors largely collapse. Why?   Because: (1) "A violation of the Constitution 'for even minimal periods of time . . . unquestionably constitutes irreparable injury.'" *BST Holdings*, 2021 U.S. App. LEXIS 33698, at *24; and (2) There is no public interest in enforcing an unconstitutional law.  *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (citation omitted) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012); *N.Y. Progress & Protection PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) ("[T]he Government does not have an interest in the enforcement of an unconstitutional law.") (cleaned up).

Here, UNT is opposing injunctive relief *after* a constitutional violation has been established as a matter of law.  The fact that UNT's budget may be affected is not sufficient to justify leaving an unconstitutional law in place.[10]  Indeed, the public interest is "served by maintaining our constitutional structure …even, or perhaps *particularly*, when those decisions frustrate government officials."  *BST Holdings*, 2021 U.S. App. LEXIS 33698, at *26.

Five semesters have passed since this lawsuit was filed.  That is five semesters that YCT's members and countless other students have been unlawfully forced to pay nonresident tuition. None of that money is recoverable.  For some, no doubt, that unlawfully high tuition has forced them to forgo semesters of education.  Those opportunities cannot be replaced.  Enough is enough.

---

[10]     To be sure, if UNT believes the equities are truly on its side, it could ask that this Court stay its injunction pending appeal.   But to argue that this Court should leave in operation indefinitely a law held unconstitutional because the government disagrees with the policy implications of following the Constitution is a call for lawlessness.

### F.    YCT's request for injunctive relief complies with Rule 65

Finally, UNT objects that YCT's request for injunctive relief is not sufficiently clear to allow this Court to comply with Rule 65.  But the burden Rule 65 places on this Court is low.  An injunction must only "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1)(C).

Here, YCT requests that UNT officials be enjoined from applying Section 54.051(d) to United States citizens at UNT, because as written and as historically applied by UNT, Section 54.051(d) requires United States citizens pay more in tuition than the lower rate made available to unlawfully present aliens on the basis of residency.  Unlike UNT, YCT is confident that this Court can craft an injunction based on that request that meets the modest requirements of Rule 65.

UNT's real complaint is that it will have hard policy decisions to make about its tuition rates and budget if it is enjoined from unlawfully charging out of state tuition to United States citizens.  This is not unusual.  Complying with the law often involves hard policy tradeoffs that policymakers would rather not make.  But this Court need not tell UNT how to make those tradeoffs in order to tell UNT to stop violating the law.

### CONCLUSION

For the forgoing reasons, UNT's cross motion for summary judgment should be denied in full, and YCT's motion for summary judgment should be granted.

Respectfully submitted,

*/s/Chance Weldon*
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com

CHRISTIAN TOWNSEND
Texas Bar No. 24127538
ctownsend@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:     (512) 472-2700
Facsimile:      (512) 472-2728

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on February 8, 2022, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Exhibits were filed with redactions as previously approved by this Court's protective order Dkt #51, and will be filed later under seal.  The unredacted versions of these exhibits have been provided to Defendant's Counsel per the rules of this Court's protective order.

/s/Chance Weldon
CHANCE WELDON