IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| YOUNG CONSERVATIVES OF TEXAS FOUNDATION §§§§<br>*Plaintiff*, §§<br>v. §§<br>THE UNIVERSITY OF NORTH TEXAS, THE UNIVERSITY OF NORTH TEXAS SYSTEM, NEAL SMATRESK, PRESIDENT OF THE UNIVERSITY OF NORTH TEXAS and SHANNON GOODMAN, VICE PRESIDENT FOR ENROLLMENT OF THE UNIVERSITY OF NORTH TEXAS; §§§§§§§§§§<br>*Defendants*. § | CIVIL ACTION NO. 4:20-CV-973<br><br>JUDGE SEAN D. JORDAN |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY THIS COURT'S PERMANENT INJUNCTION PENDING APPEAL**

TO THE HONORABLE SEAN D. JORDAN:

Plaintiff the Young Conservatives of Texas Foundation ("YCT") files this response in opposition to Defendants' (collectively "UNT") motion to stay this Court's permanent injunction pending appeal.

### INTRODUCTION

On April 8, 2022, this Court entered a final judgment declaring UNT's application of tuition rates mandated by TEX. EDUC. CODE § 54.051(d) to United States Citizens unconstitutional and enjoined that law's continued enforcement at UNT. By UNT's own admission, the University has already invested the time and administrative effort necessary to comply with this Court's Order and successfully enrolled students this semester in full compliance with Federal law. As a result, potentially thousands of UNT students are no longer required to pay an unconstitutional tuition rate that was over nine-times as high as what federal law allows.

Over one month later, with the briefing schedule already set at the Court of Appeals, UNT asks this Court to stay its injunction. But, tellingly, UNT's motion does not argue that Texas's tuition laws are constitutional. As this Court rightly noted, federal preemption in this case is clear. Instead, UNT argues that a stay is warranted because: (1) YCT allegedly lacked standing to bring this claim; (2) this Court's injunction is allegedly not tailored to address the challenged action; (3) UNT will allegedly be irreparably harmed by a 0.68% reduction in annual revenues; (4) YCT's members are allegedly not injured by higher tuition rates; and (5) putting the challenged law back in place pending appeal allegedly serves the public interest.

Because these arguments are meritless and a stay would irreparably harm YCT's members, UNT's motion to stay this Court's permanent injunction pending appeal should be denied.

## ARGUMENT

"A stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'" *Nken v. Holder*, 556 U.S. 418, 427, 129 S.Ct. 1749, 173 L.Ed. 2d 550 (2009). In deciding whether to grant a stay, the Court must consider whether: (1) the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) the applicant will be irreparably injured absent a stay; (3) the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) the stay is in the public interest. *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016).

In reviewing these factors, the "party seeking the stay bears the burden of showing its need." *Tex. League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 143 (5th Cir. 2020). UNT has not carried this heavy burden.

## I. UNT'S APPEAL DOES NOT HAVE A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS

First, UNT has not established that it has a strong likelihood of success on appeal. To prevail on a motion to stay, it is not enough to show "a mere 'possibility' of relief," *Nken*, 556 U.S. at 434. The likelihood of prevailing on appeal must be "strong." *Id*.

UNT cannot carry that burden here. As this Court rightly recognized, Texas's tuition laws are preempted by federal law and thus unconstitutional. ECF 64, Page ID #: 1149. And UNT, tellingly, does not affirmatively dispute the unconstitutionality of UNT's tuition rates in its motion.

Instead, UNT argues that it has a strong likelihood of success on appeal because: (1) YCT allegedly lacks standing, and (2) this Court allegedly enjoined the wrong provision of state law. Both of these arguments are meritless.

### A. This Court rightly held that YCT has standing

UNT's motion begins by attempting to relitigate YCT's standing. But as this Court previously noted, standing in this case is straightforward. ECF 34, Page ID. # 550. For a litigant to have standing, it usually must show: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014). Here, YCT challenged § 54.051(d)—a statute that requires YCT's members to pay tuition rates over nine-times higher than those allowed by federal law. As this Court rightly recognized, YCT has standing to challenge that statute because: (1) its application to YCT's members causes economic injuries to those members; (2) those injuries are directly traceable to the higher tuition rate in § 54.051(d); and (3) those injuries would be redressed by an injunction prohibiting the UNT officials from enforcing Section 54.051(d). ECF 34, Page ID. #: 550; *see also*, *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) ("If a plaintiff

is an object of a regulation there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." (quotation omitted).

Rather than address the claims actually pled by YCT, UNT once again objects that YCT does not have standing to challenge *separate* statutes which make "certain undocumented students eligible for in-state tuition." ECF 69, Page ID #: 1202, 1203. But YCT did not challenge the statutes that make "certain undocumented students eligible for in-state tuition." Indeed, YCT has made clear over[1], and over[2] that UNT remains free to charge unlawfully present aliens resident tuition. YCT challenges solely § 54.051(d), which unlawfully requires YCT's members to pay higher tuition rates.

As with prior pleadings, UNT's motion does not explain how YCT's alleged lack of standing to challenge other laws that YCT *did not challenge* is relevant to this case.[3] UNT's standing arguments therefore fail and are not sufficient to show a strong likelihood of success on appeal.

---

[1]     ECF 31, Page ID. # 536-37 (rejecting this same argument, explaining that YCT does not challenge UNT's ability to charge unlawfully present aliens resident tuition, and noting that "UNT may continue to charge unlawfully present aliens whatever it wants.").

[2]     ECF 53, Page ID # 963 ("But YCT has never argued that UNT, or Texas, or anyone else is preempted from granting benefits to unlawfully present aliens. Rather, YCT has always stood by the text of Section 1623—UNT may provide such benefits if it chooses, but *only if* it meets the other requirements of the statute.")

[3]     UNT, once again, points to the Tenth Circuit's non-binding decision in *Day v. Bond*, 500 F.3d 1127 (10th Cir. 2007). But in *Day*, the plaintiffs challenged solely the provision of state law granting resident tuition to unlawfully present aliens (§ 76-731a) and expressly "disclaimed on appeal…*any* remedy *other than the presumptive annulment of § 76-731a.*" *Id*. at 1136. The court therefore held that the plaintiffs lacked standing because they challenged and sought to enjoin a provision that, while allegedly unlawful, did not directly injure them; it merely made aliens eligible for cheaper tuition. *Id*. Unlike the plaintiffs in *Day*, YCT did not challenge or seek to enjoin the provisions of Texas law making aliens eligible for resident tuition. Rather, YCT challenged the actual provision that injures its members—§ 54.051(d). *Day* is therefore inapplicable. *Day* is also distinguishable on other grounds. *See* ECF 28, Page ID. #: 509-10 (further distinguishing *Day*).

> **B.      This Court did not err by enjoining the unlawful provision of state law that actually injured YCT's members, rather than enjoining other provisions of state law that do not injure YCT's members and were not challenged**

Next, UNT challenges the scope of this Court's injunction. After full consideration of the merits, this Court held that § 54.051(d) was preempted by federal law and thus unconstitutional. ECF 64, Page ID #: 1149. Because the ongoing application of this unlawful provision would cause significant injuries to YCT's members, this Court rightly enjoined its application at UNT. *Id*. at 1187. This approach is in accord with more than 100 years of precedent. *See Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (enjoining state official from applying unlawful railroad rates).

UNT objects that this Court's order is overbroad because it does not "tailor[] the injunctive relief to the allegedly preempted conduct." ECF 69 Page ID #: 1205. But this Court enjoined *solely* the application of the provision of state law it found to be preempted—§ 54.051(d). It is difficult to imagine a more straightforward "tailoring [of] the injunctive relief to the allegedly preempted conduct."

In an attempt to avoid this straightforward conclusion, UNT appears to argue that the only portion of Texas law that can be preempted by Section 1623—and therefore the only portion that may be enjoined—is the portion which provides resident tuition to unlawfully present aliens. See ECF 69, Page ID #: 1202 ("Section 1623 does not prescribe a benefit for U.S. citizens. Rather, it proscribes a benefit for aliens not lawfully present in the United States…"); *Id*. at Page ID #: 1205. But UNT cannot justify this one-way reading of the statute. Section 1623 neither "proscribes" benefits to unlawfully present aliens nor "prescribes" benefits to United States citizens. The text is agnostic on the point. Rather, as this Court rightly recognized, Section 1623 creates a neutral conditional: *if* a benefit is provided to an unlawfully present alien on the basis of residence, *then*

5

that benefit must also be provided to United States citizens, regardless of residence. ECF 64, Page ID #: 1171.[4]

Here, Texas law makes unlawfully present aliens eligible for resident tuition. It must therefore make resident tuition available to United States citizens, regardless of residence. 8 U.S.C. § 1623. Because § 54.051(d) directly conflicts with this mandate, it was rightly enjoined. UNT's objections to the scope of this Court's injunction therefore do not have a strong likelihood of success on the merits on appeal.

## II. UNT AND ITS STUDENTS ARE NOT IRREPERABLY HARMED BY LEAVING THIS COURT'S INJUNCTION IN PLACE

To prevail on its stay motion, UNT must also establish that it would be irreparably harmed by a failure to grant the stay. *Nken*, 556 U.S. at 433. Here UNT raises four claims of alleged irreparable harm, none of which hold up under scrutiny.

### A. UNT is not injured by the injunction of an unconstitutional law

The Fifth Circuit has made clear that when "Congress [has] expressly preempted [an] area of regulation, the states are not injured by [an] injunction" of conflicting state laws. *Trans World Airlines v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990). In the face of this direct precedent, UNT claims that it is nonetheless irreparably harmed by this Court's order, because any injunction of a state law is allegedly a *per se* irreparable injury. ECF 69, Page ID. #: 1206. This argument fails.

---

[4] UNT objects to this Court's simplification of Section 1623 into a straightforward "*if* A, *then* B" conditional. ECF 69, Page ID #: 1202. According to UNT, "Section 1623 does not *pre*scribe a benefit for U.S. citizens. Rather, it *pro*scribes a benefit for aliens not lawfully present in the United States, *unless* the same benefit is given to U.S. citizens." *Id*. (emphasis in original). But this is a distinction without a difference. As anyone whose studied for the LSAT knows, "*Not* A, *unless* B" is logically equivalent to "*if* A, *then* B." See, https://www.alphascore.com/post/quick-lsat-tip-unless-statements-simplified. UNT provides no reason why the rules of formal logic should apply differently to immigration statutes.

While it is true that some Fifth Circuit cases have suggested that a government can be irreparably harmed by the injunction of its laws, those cases must be squared with others which hold that the government is not injured by the injunction of an *unconstitutional* law. *See, e.g.*, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (U.S. 5th Cir. 2021); *see also*, *Mitchell v. Pidcock*, 299 F.2d 281, 287 (5th Cir. 1962) (explaining that a permanent injunction requiring compliance with federal law does not constitute a hardship because it only "requires the defendants to do what the Act requires anyway—to comply with the law"). Read together, these cases require at least some showing by the government that a challenged law is constitutional before a state can claim that enjoining the application of that law is an irreparable harm.

Here, this Court has already ruled as a matter of law that Texas's tuition laws are contrary to federal law and therefore unconstitutional. UNT makes no attempt in its motion to argue otherwise. Accordingly, UNT may not claim *per se* irreparable injury simply because the application of a state law has been enjoined. *See Trans World Airlines*, 897 F.2d at 784 (injunction of preempted state law does not injure the state).

### B. An alleged 0.68 % decrease in UNT's projected annual budget does not supersede constitutional demands

UNT next argues that it is irreparably harmed in the absence of a stay because this Court's injunction will have minor impacts on UNT's budget. ECF 69, Page ID. #: 1206-1211. But as this Court rightly held "[b]udgetary constraints do not absolve constitutional violations." ECF 64, Page ID. #: 1186; *see also, id.* (citing *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab. OSHA*, 142 S.Ct. 661, 666, 211 L.Ed.2d 448 (2022) (per curiam).

UNT points to several cases for the proposition that monetary injuries can give rise to irreparable harm. ECF 69, Page ID. #: 1208–09. But each of those cases involved the sort of institution-ending losses not at issue here. For example, in *United States v. Baylor Univ. Med. Ctr.*,

7

a hospital faced the loss of *all* Medicare and Medicaid funds. 711 F.2d 38, 40 (5th Cir. 1983). Likewise, in *Texas v. U.S. EPA,* the potential imposition of "$2 billion in costs on power companies businesses, and consumers" would have "endanger[ed] the reliability of power" to consumers. 829 F.3d 405, 433 (5th Cir. 2016).

By contrast, UNT claims that continuing to comply with this Court's order will result in annual revenue losses of approximately $5.7 million. ECF 69-1, Page ID #: 1232. But these losses would account for only 0.68% of UNT's total budgeted revenue for FY 2022. ECF 69-1, Page ID #: 1234. Unlike the parties in the cases it cites, UNT makes no showing that a less than one-percent reduction in its proposed budget will undermine UNT's institutional mission. To the contrary, UNT currently plans to spend $91,595,585 more in 2022 than it did in 2021. ECF 69-1, Page ID #: 1234. UNT could therefore completely absorb the $5.7 million loss in revenue allegedly caused from this Court's judgment, and it would still be spending approximately $85,000,000 more than it did last year. An eighty-five million dollar *increase* in spending is hardly the sort of crippling financial loss that would justify a finding of irreparable harm.

### C. UNT's administrative costs have already been incurred and would be exacerbated by granting a stay

Next, UNT claims that complying with this Court's permanent injunction will require updating systems and processes for tuition. ECF 69, Page ID #: 1210. UNT claims that these increased administrative burdens are irreparable harm warranting a stay. *Id*. But as noted above, these sorts of government injuries are typically not irreparable harm in preemption cases. *Trans World Airlines*, 897 F.2d at 784.

Moreover, even if transition costs could constitute irreparable harm, it is unclear how that helps UNT in this case. UNT claims that it fully complied with this Court's order when assessing tuition for the summer semester. ECF 69, Page ID #:1207. Any transition has therefore already

occurred. If anything, a stay at this late date would require that UNT spend substantial time and money transitioning back to the old, unlawful tuition model. UNT's claim of irreparable harm therefore fails.

### D.  UNT's out-of-state students are not injured by paying cheaper tuition

Finally, UNT claims that out-of-state students now receiving substantially cheaper tuition under this Court's order are somehow injured because there is "uncertainty" about whether this Court's judgment will hold up on appeal. ECF 69, Page ID. #: 1211. But that "uncertainty" is present anytime an injunction is appealed. If that were sufficient to justify a stay, then every injunction of an unconstitutional law would be on shaky footing.

Moreover, UNT presents no evidence that a single student believes that this alleged "uncertainty" outweighs the current benefits of paying nine-times less in tuition. UNT's claim that some hypothetical student might experience stress due to paying thousands of dollars less in tuition this semester does not meet the high bar of establishing irreparable harm warranting a stay.

### III.  A STAY WOULD IRREPERABLY HARM YCT'S MEMBERS

Granting a stay would also irreparably harm YCT's members. First, as this Court rightly held, "the loss of constitutional freedoms for even minimal periods of time unquestionably constitutes irreparable injury." ECF 64, Page ID #: 1185 (quoting, *BST Holdings, L.L.C. v. Occupational Safety & Health Admin.*, 17 F.4th 604, 618 (5th Cir. 2021) (cleaned up)). UNT objects that cases finding irreparable harm for violating the Constitution are limited to those rights enumerated in the Bill of Rights. ECF 69, Page ID #: 1212. But the Fifth Circuit has not taken this approach. See *Trans World Airlines*, 897 F.2d at 784 (5th Cir. 1990) (federal preemption case holding that violation of the Supremacy Clause was an irreparable injury); see also, *BST Holdings*,

17 F.4th at 618 (potential Commerce Clause, statutory, or non-delegation violation constituted irreparable harm).

Second, it is undisputed that the impact of a stay on YCT's members would be significant. A stay would require YCT's member to continue paying unlawful tuition rates for at least two more semesters.[5] This is no small burden. As this Court recognized, the high rate of non-resident tuition was sufficient to force one of YCT's members to be dropped from her classes. ECF 64, Page ID #: 1166.[6]

UNT has never meaningfully grappled with the serious nature of the injuries caused by high tuition. ECF 69, Page ID #: 1212 (devoting exactly one conclusory sentence to the harm of higher tuition, claiming that "[t]here has been no showing that two students' obligation to pay out-of-state tuition rates while the appeal proceeds…is a substantial injury."); ECF 34, Page ID #: 550 (this Court noting that "UNT has not acknowledged—much less meaningfully grappled with—the alleged economic injuries of Young Conservatives' members."). But the irreparable injuries to YCT's members from paying unlawful tuition rates are real and provide further grounds for denying UNT's motion to stay this Court's injunction.

---

[5] See, Fifth Circuit Practitioners Guide, p. 4 (noting that the median decision time on an appeal is 10.6 months). Available at: http://www.ca5.uscourts.gov/docs/default-source/forms-and-documents-clerks-office/documents/practitionersguide.pdf

[6] UNT argues that YCT's members could conceivably recover any unlawfully collected tuition after the fact under Tex. Gov't Code § 403.202. Assuming, arguendo, that § 403.202 applies to tuition—an unclear proposition UNT does not prove—UNT fails to explain how that provision helps students who cannot afford the higher priced tuition on the front end.

## IV. THE PUBLIC INTEREST DOES NOT FAVOR LEAVING AN UNCONSTITUIONAL LAW IN PLACE

Finally, UNT cannot show that a stay serves the public interest. As this Court has rightly recognized, it is always in the public interest to uphold the structural limitations in the Constitution. ECF 64, Page ID #: 1187.

Moreover, even if some balancing of the equities were required, that balance tilts in favor of leaving this Court's permanent injunction in place. By UNT's own admission, staying this Court's injunction would result in a dramatic increase of tuition for thousands of students. ECF 64, Page ID #: 1207. By contrast, UNT complains that complying with this Court's order would impact its projected budgeted revenues by 0.68 percent, which would still allow UNT to spend approximately $85,000,000 more than it did last year. ECF 69-1, Page ID #: 1234.

Additionally, a stay would disrupt the status quo. UNT admits that it has already complied with this Court's order and instituted lawful tuition policies for the summer semester. ECF 69, Page ID #:1207. A stay would result in a rush to re-institute the old, unlawful policy creating the very administrative costs and confusion that UNT claims are irreparable harms.

The public interest therefore favors leaving this Court's permanent injunction in place while this case proceeds through the appellate process.

## CONCLUSION

For the forgoing reasons, UNT's motion to stay this Court's permanent injunction pending appeal should be denied.

Respectfully submitted,

*/s/Chance Weldon*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON

Texas Bar No. 24076767
cweldon@texaspolicy.com
CHRISTIAN TOWNSEND
Texas Bar No. 24127538
ctownsend@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:     (512) 472-2700
Facsimile:       (512) 472-2728

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on May 25, 2022, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Chance Weldon*
CHANCE WELDON