**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **YOUNG CONSERVATIVES OF TEXAS FOUNDATION,** | § § § | |
| *Plaintiff*, | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:20-cv-00973** |
| **THE UNIVERSITY OF NORTH TEXAS, THE UNIVERSITY OF NORTH TEXAS SYSTEM, NEAL SMATRESK, PRESIDENT OF THE UNIVERSITY OF NORTH TEXAS, AND SHANNON GOODMAN, VICE PRESIDENT FOR ENROLLMENT OF THE UNIVERSITY OF NORTH TEXAS,** | § § § § § § § § § | |
| *Defendants*. | § § | |

**REPLY IN SUPPORT OF MOTION TO STAY**
**PERMANENT INJUNCTION PENDING APPEAL**

I.      **The UNT Officials are likely to succeed on appeal because this Court's misreading of the federal statute fatally undermines all of the conclusions that follow.**

This Court read §1623 as a *grant* of rights to U.S. citizens. But §1623 does not grant rights. It is restrictive, *limiting* a state's ability to provide an educational benefit to certain aliens based on residency, unless non-resident U.S. citizens are included.[1] Mot. 3. YCT's reasoning warps the statutory text, converting the "unless" clause—a condition precedent to granting a benefit to aliens—into an *affirmative grant* of rights. The plain text refutes that reading. Section 1623 states that certain aliens "shall not be eligible" for benefits "unless" a U.S. citizen also "is eligible." 8 U.S.C. § 1623. Thus, logically, if a U.S. citizen is *in*eligible, so is an alien. At YCT's invitation, and despite the black-letter command that "where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms," *U.S v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) (citation and quotation omitted), the Court rewrote §1623 to provide that if an alien is eligible based on residency, a U.S. citizen must also be eligible regardless of residency. What Congress wrote as a rights-*limiting* statute, this Court has rewritten as a rights-*creating* statute. This counter-textual interpretation is contrary to a Tenth Circuit holding that §1623 "imposes a *limit* on the authority of postsecondary educational institutions." *Day v. Bond*, 500 F.3d 1127, 1139 (10th Cir. 2007).

YCT does not refute this textual truth. It refuses even to quote §1623, instead simply repeating what the UNT Officials have shown is a flawed understanding of the statute's meaning:

---

[1] Section 1623 is what its title states: a "limitation."

> Notwithstanding any other provision of law, *an alien* who is not lawfully present in the United States *shall not be eligible* on the basis of residence…for any postsecondary education benefit *unless* a citizen or national of the United States is eligible for such a benefit…without regard to whether the citizen or national is such a resident.

8 U.S.C. §1623 (emphasis added).

"if a benefit is provided to an unlawfully present alien on the basis of residence," then U.S. citizens must receive the same benefit. Resp. 5-6. But "if" appears nowhere in §1623. "Unless" does.

Unable to salvage the Court's incorrect interpretation of §1623, YCT harps on an irrelevant technicality: that it challenges only the Texas statute obligating its members to pay nonresident tuition, not the separate statute defining certain aliens as residents. *E.g.*, Resp. 4. But even if YCT could detach its preemption claim from the residency definition, §1623 is still an immovable impediment to its claim. The allegedly preemptive, controlling federal statute does not bestow the right the Court created. To the extent §1623 preempts, it merely precludes a benefit for aliens; it does not *grant* U.S. citizens an *affirmative* right to that benefit.

Without an affirmative right to resident tuition, YCT has no standing, its preemption claim fails, and the injunction is impermissibly broad. Injury in fact is the "invasion of a legally protected interest." *Ne. Fla. Chap. of Assoc. Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 663 (1993). Section 1623 does not extend YCT members a right to resident tuition, which means they lack injury in fact. Traceability and redressability are also absent because no injury can be traced to the UNT Officials, and YCT cannot obtain resident tuition through a claim based on §1623.

For the same reasons, the UNT Officials dispute that the Texas statute is preempted, and any suggestion otherwise is a canard. Section 1623's plain text defeats YCT's preemption claim.

Moreover, the Court's injunction—premised on a right for U.S. citizens that does not exist—is overbroad, overreaching into policy-making untethered to any legislative text. At most, §1623 might be read to preclude a resident-tuition benefit for certain aliens, but it cannot not justify the Court's overhaul of the Texas Legislature's tuition structure.

## II.   The injunction will cause UNT, its students, and employees irreparable harm; YCT shows no irreparable injury.

### A.   YCT does not refute the irreparable harm to the UNT Officials.

A state's "inability to enforce its duly enacted plans clearly inflicts irreparable harm on the

State." *Abbott v. Perez*, 138 S.Ct. 2305, 2324 n.17 (2018).[2] YCT dismisses these authorities because the Court found preemption, Resp. 6-7, but such an exception would swallow the rule. Given the UNT Officials' high probability of success on appeal, *see* Section I, and the injunction's significant financial harm to UNT, its employees, and students, irreparable harm is satisfied.

YCT observes that $5.7 million is but a small percentage of UNT's annual revenue. Resp. 8. That is not how harm is quantified; indeed, that sum, standing alone, could benefit countless students, research projects, and faculty. Nor does YCT address the expense side of UNT's ledger: as UNT's revenue drops, its costs do not. The revenue shortfall will take UNT from a $2.9 million surplus to a $2.8 million deficit—forcing decisions on cuts in programs, capital expenditures, faculty recruitment, and student financial aid.[3]

YCT wrongly contends that only "institution-ending" harm is irreparable. Resp. 7-8. The case law establishes no such standard. Mot. 9-10. The substantial financial harm that this injunction will inflict on UNT is irreparable. *See, e.g., BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (treating serious costs and financial penalties as irreparable harm for a stay).

**B.      Irreparable harm is inferred only from violations of *personal* constitutional rights, which are not at issue here.**

YCT relies on a constitutional violation to claim irreparable harm. But the Fifth Circuit, like other circuits,[4] treats only impairment of *personal* constitutional rights as per se irreparable

---

[2] *See also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (when State is enjoined "from effectuating statutes enacted by representatives of its people, it suffers…irreparable injury") (quotation omitted); Mot. 7.

[3]Likewise, YCT speculates that UNT has already completed the transition to new tuition rates. *Id.* at 8-9. That is incorrect. *See* Stay Mot. Ex. 1 ¶6, Ex. 5 ¶3.

[4] *See, e.g., Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (right to vote); *Ezell v. City of Chi.*, 651 F.3d 684, 699 (7th Cir. 2011) (Second Amendment right); *Nat'l People's Action v. Vill. of Wilmette*, 914 F.2d 1008, 1013 (7th Cir. 1990) (First Amendment); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (Eighth Amendment right); *but see Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989) (explaining that not all constitutional harms are synonymous with irreparable harm, and assertion of First Amendment right does not automatically require irreparable-harm

harm. Courts have not inferred irreparable harm from *structural* constitutional violations. *See, e.g., Live365, Inc. v. Copyright Royalty Bd.*, 698 F.Supp.2d 25, 30, 45 (D.D.C. 2010) (no irreparable harm based on violation of Appointments Clause).  In *Elrod v. Burns*, a plurality wrote that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 373 (1976) (plurality op.). And the Fifth Circuit has recognized irreparable harm for First Amendment claims, a *personal* constitutional right. *See, e.g., Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *7-8 (5th Cir. Feb. 17, 2022).[5]

YCT's authorities do not support extension of *per se* irreparable harm to a structural violation like preemption. *See* Resp. 9-10. In *BST*, for example, the court cited "liberty interests of reluctant individual recipients" and "the free religious exercise of certain employees." 17 F.4th at 618 & n.21. And in *Trans World Airlines, Inc. v. Mattox*, the Fifth Circuit recognized a "federally created right to have only one regulator in matters pertaining to rates, routes, and services," not irreparable harm based on a Supremacy Clause violation. 897 F.2d 773, 784 (5th Cir. 1990). More importantly, on review, the Supreme Court's finding of irreparable harm stemmed from the imminent State enforcement of state law rather than a Supremacy Clause violation. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381-83 (1992). Neither case inferred irreparable harm from a structural constitutional violation, such as YCT's preemption claim.

### C.     YCT can recover tuition overpayments if it succeeds on appeal.

An injury is "irreparable only if it cannot be undone through monetary remedies." *Dennis*

---

finding); *Pub. Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir. 1987) (rejecting argument that violation of constitutional rights per se establishes irreparable injury).

[5] *See also, e.g., U.S. Navy Seals v. Biden*, 27 F.4th 336, 348 (5th Cir. 2022); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012); *see also Sheffield v. Bush*, No. 3:21-CV-122, 2022 WL 1638205, at *14 (S.D. Tex. May 23, 2022) (homeowners' allegation that "their constitutional rights have been violated is not enough, taken alone, to establish an irreparable injury" and observing that Fifth Circuit has not extended *Elrod* beyond First Amendment).

*Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). Texas law provides an avenue for overpayment—a fact not denied by YCT; thus, YCT cannot rely on payment of out-of-state rates for irreparable harm. *See* 11A FED. PRAC. & PROC. §2942 (3d ed.) (irreparable harm asks whether the "plaintiff is being threatened by some injury for which he has *no adequate legal remedy*") (emphasis added). YCT's asserted harm, for which a legal remedy exists, is far different from the unrecoverable financial impacts to UNT. This consideration favors a stay.

## III.    A stay would serve the public interest.

YCT invokes "the status quo," Resp. 11, but the status quo can be preserved only by maintaining the *existing law that preceded the injunction. E.g., Tex. All. for Retired Americans v. Hughs*, 976 F.3d 564, 568 (5th Cir. 2020). Substantial harm to UNT's programs and staffing are inevitable. A considerable drop in revenue will prevent UNT from funding its academics, infrastructure, and operations at previous levels. The public interest favors UNT's continued ability to retain academic services, faculty, and staff.  The funds UNT has already expended to comply with the injunction for summer classes pale in comparison to the upcoming negative financial impacts. Texas's longstanding policy is to charge differing tuition rates according to residency, among other factors. The Court has now imposed its own tuition structure that is at odds with the public interest. Mot. 14-15.

YCT touts this Court's conclusion that the public interest is always to enforce the Constitution. But whether Texas's scheme offends the Constitution is very much in question. *See* Section I. Moreover, UNT's stay request seeks a return to the status quo while the appeal runs its course—to avoid the irremediable impact to a state university, its students, and its faculty.

### CONCLUSION

For these reasons, and those in the motion, the UNT Officials respectfully request a stay of the permanent injunction until the Fifth Circuit finally decides the appeal and issues its mandate.

Respectfully submitted,

/s/ Wallace B. Jefferson
Wallace B. Jefferson
State Bar No. 00000019
wjefferson@adjtlaw.com
Amy Warr
State Bar No. 00795708
awarr@adjtlaw.com
Melanie D. Plowman
State Bar No. 24002777
mplowman@adjtlaw.com
**ALEXANDER DUBOSE & JEFFERSON LLP**
515 Congress Avenue, Suite 2350
Austin, Texas 78701-3562
Telephone: (512) 482-9300
Facsimile:  (512) 482-9303

/s/ Andy Taylor
Andy Taylor
State Bar No. 19727600
ataylor@andytaylorlaw.com
**ANDY TAYLOR & ASSOCIATES, P.C.**
2628 Highway 36 South #288
Brenham, Texas 77833
Telephone: (713) 222-1817
Facsimile:  (713) 222-1855

/s/ Sandy Hellums Gomez
Sandy Hellums-Gomez
State Bar No. 2403670
Sandy.Gomez@HuschBlackwell.com
Jeff Nobles
State Bar No. 15053050
Jeff.Nobles@HuschBlackwell.com
**HUSCH BLACKWELL LLP**
600 Travis Street, Suite 2350
Houston, Texas 77002
Telephone: (713) 647-6800
Facsimile:  (713) 647-6884

Scott Schneider
State Bar No. 24054023
Scott.Schneider@HuschBlackwell.com
**HUSCH BLACKWELL LLP**
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Telephone: (512) 472-5456
Facsimile:  (512) 479-1101

**ATTORNEYS FOR DEFENDANTS NEAL SMATRESK, PRESIDENT OF THE UNIVERSITY OF NORTH TEXAS, AND SHANNON GOODMAN, VICE PRESIDENT FOR ENROLLMENT OF THE UNIVERSITY OF NORTH TEXAS**

7

**CERTIFICATE OF SERVICE**

I certify that on May 31, 2022, this Reply was served on all counsel of record via the CM/ECF system of the Court.

*/s/ Wallace B. Jefferson*
Wallace B. Jefferson